**No. 24-1261**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DAVID M. KISSNER, an individual,

*Plaintiff-Appellant*,

v.

LOMA PRIETA JOINT UNION SCHOOL DISTRICT; ET AL.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California, San Francisco
No. 5:22-cv-00949-CRB
Hon. Charles R. Breyer

**APPELLANT'S OPENING BRIEF**

WILLIAM J. BECKER, JR., ESQ.
Bill@FreedomXLaw.com
FREEDOM X
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Attorneys for Appellant
DAVID M. KISSNER

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................1

TABLE OF AUTHORITIES ........................................................................3

INTRODUCTION ........................................................................................5

JURISDICTIONAL STATEMENT ............................................................10

STATEMENT OF REVIEWABILITY ......................................................11

STANDARD OF REVIEW ........................................................................11

ISSUES PRESENTED ...............................................................................11

STATEMENT OF THE CASE ...................................................................12

    I.    Kissner Was A Tenured, Permanent 6th-Grade Middle School
        Teacher For Nine Years....................................................................12

    II.   Kissner's Opposition To A 2018 Anti-Gun Student Walkout
        Generates Controversy......................................................................13

    III.  The District Retaliates Against Kissner By Conducting Two
        Inconclusive Investigations Following The Walkout
        Controversy.......................................................................................14

    IV.  Kissner Publicly Opposes The District's School Funding
        Measure..............................................................................................15

    V.   The District Issues A Notice Of Intent To Dismiss Kissner
        Shortly After Measure N's Defeat ....................................................16

    VI.  The District Issues A Layoff Notice One Month To The Day
        After The Dismissal Notice ..............................................................17

    VII. The District Amends Its Board Policy For The First Time In A
        Decade In Order To Justify Disciplinary Action Against Kissner ......19

    VIII. Kissner Seeks Hearings To Contest His Termination And
        Layoff................................................................................................19

    IX.  The District Court Issues An Order Granting Defendant's
        Motion For Summary Judgment As To Kissner's First Amended
        Retaliation Claim ..............................................................................20

1

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT ............................................................................22

THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT
WHERE A TRIABLE ISSUE CONCERNS WHETHER THE DEFENDANTS
HARBORED A RETALIATORY MOTIVE IN TERMINATING KISSNER ........22

I.      Introduction.................................................................22

II.     The District Court Erred In Resolving The Disputed Fact Of
        Motivation At The Summary Judgment Stage....................................25

III.    The District Court Erred In Granting Summary Judgment By
        Determining, As A Matter Of Law, That Kissner Was Required To
        Prove That Administrative Law Panel Members—Not The School
        Defendants—Had A Retaliatory Motive For Terminating Him..........26

IV.     The District Court Erred In Granting Summary Judgment
        Because It Improperly Found Plaintiff's Circumstantial Evidence
        Of Pretext "Unpersuasive" While Failing To Offer Any Critical
        Analysis ....................................................................28

V.      The District Court Erred In Granting Summary Judgment Where
        Defendants Failed To Meet Their Burden Of Proof By A
        Preponderance Of The Evidence Showing That, Under The *Mt.
        Healthy* Mixed Motive Analysis, They Would Have Reached The
        Same Decision Even In The Absence Of The Kissner's Protected
        Conduct......................................................................39

VI.     The District Court Erred In Granting Summary Judgment Where
        The Defendants Failed To Meet Their Burden Of Proof By A
        Preponderance Of The Evidence That, Under The *Pickering*
        Balancing Test, Their Legitimate Administrative Interests
        Outweighed Kissner's First Amendment Rights ...............................41

CONCLUSION ...........................................................................41

CERTIFICATE OF COMPLIANCE ...........................................................43

CERTIFICATE OF SERVICE...............................................................44

# TABLE OF AUTHORITIES

## Cases

*Allen v. Iranon*
    283 F.3d 1070 (9th Cir. 2002) ....................................................23, 25, 28, 30

*Buckley v. Valeo*
    424 U.S. 1 (1976)........................................................................................23

*Citizens United v. Fed. Election Comm'n*
    558 U.S. 310 (2010)...................................................................................23

*Eu v. S.F. Cnty. Democratic Cent. Comm.*
    489 U.S. 214 (1989)...................................................................................23

*Furnco Const. Corp. v. Waters*
    438 U.S. 567 (1978)...................................................................................26

*Godwin v. Hunt Wesson, Inc.*
    150 F.3d 1217 (9th Cir. 1998) ...................................................................29

*Guz v. Bechtel Nat. Inc.*
    24 Cal.4th 317 (2000) ................................................................................29

*Hunt v. Cromartie*
    526 U.S. 541 (1999)...................................................................................25

*Huskey v. City of San Jose*
    204 F.3d 893 (9th Cir. 2000) .....................................................................23

*Johnson v. U.S.*
    333 U.S. 46 (1948).....................................................................................32

*Keyser v. Sacramento City Unified Sch. Dist.*
    265 F.3d 741 (9th Cir.2001) ......................................................................30

*McDonnell Douglas Corp. v. Green*
    411 U.S. 792 (1973)...................................................................................29

*McRae v. Dept. of Corrections & Rehab.*
    142 Cal. App. 4th 377 (2006)......................................................................29

3

*Morgan v. Regents of U. of Cal.*
  88 Cal. App. 4th 52 (2000)....................................................................31

*Pool v. VanRheen*
  297 F.3d 899 (9th Cir.2002) ...............................................................23

*Reeves v. Sanderson Plumbing Prods., Inc.*
  530 U.S. 133 (2000)............................................................................29

*Riley's Am. Heritage Farms v. Elsasser*
  32 F.4th 707 (9th Cir. 2022) ...............................................................10

*San Jose Christian Coll. v. City of Morgan Hill*
  360 F.3d 1024 (9th Cir. 2004) ............................................................11

*Sanders Cnty. Republican Cent. Comm. v. Bullock*
  698 F.3d 741 (9th Cir. 2012) ..............................................................24

*Soranno's Gasco, Inc. v. Morgan*
  874 F.2d 1310 (9th Cir.1989) .............................................................28

*St. Mary's Honor Ctr. v. Hicks*
  509 U.S. 502 (1993)............................................................................25

*Texas Dept. of Community Affairs v. Burdine*
  450 U.S. 248 (1981)............................................................................29

*U.S. Postal Serv. Bd. of Governors v.* Aikens
  460 U.S. 711 (1983)............................................................................25

*Ulrich v. City and County of San Francisco*
  308 F.3d 968 (9th Cir. 2002) .......................................................passim

*Universal Health Servs., Inc. v.* Thompson
  363 F.3d 1013 (9th Cir. 2004) ............................................................11

**Statutes**

28 U.S.C. § 1291 ....................................................................................10

28 U.S.C. § 1331 ....................................................................................10

28 U.S.C. § 1343 ....................................................................................10

42 U.S.C. § 1983 ................................................................................10

Cal. Educ. Code § 44943................................................................20

Cal. Educ. Code § 44944.........................................................19, 20, 27

Cal. Educ. Code § 44955................................................................19

Cal. Educ. Code § 44956................................................................18

**Rules**

Fed. R. App. P. 32(a)(5)..............................................................43

Fed. R. App. P. 32(a)(6)..............................................................43

Fed. R. App. P. 32(a)(7)(B)........................................................43

Fed. R. App. P. 32(a)(7)(C)........................................................43

## INTRODUCTION

Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent. Accordingly, <u>it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal</u>.

*Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 572 (1968) ("*Pickering*".) (Emphasis added.)

*Pickering* makes a bold declaration, asserting that teachers must be free to express their opinions on school funding without fear of retaliatory dismissal. However, in reality, teachers who question their school district's funding decisions often lack genuine protection from retaliation. And in this case, under the trial court's unsound logic, a teacher waives his right to assert a First Amendment retaliation claim the moment he requests and submits to a hearing.

Appellant David M. Kissner ("Kissner") became an unpopular figure with the school community of Los Gatos, California, when he made national news by protesting the school district's decision authorizing students to skip classes during a nationwide wave of student walkouts in the aftermath of the mass shootings in Parkland, Florida. He was poked and prodded by school officials determined to find evidence of his unfitness to teach. Their efforts fizzled out, but in 2020, Kissner's highly publicized opposition to a school-funding tax measure coveted by the district put him back in the spotlight. School officials orchestrated a series of redundant proceedings to punish him, searching for any pretext to use against him. He was simultaneously fired and laid off. That fact alone is enough to raise suspicions of retaliation, but an administrative quasi-judicial hearing panel gave it no quarter. When Kissner attempted to present a circumstantial case of retaliation, the administrative law and justice systems neglected to consider the fundamental importance of his right to speak freely and just how the district defendants might be capable of concealing their actual motives for terminating him. This appeal is likely Kissner's last hope of convincing jurists that he was denied due process when the lower tribunals refused to take his circumstantial case seriously.

In 2021, after nine years of employment teaching 6th-grade math and science at CT Middle School, one of two schools in the Loma Prieta Joint Union School District, located in Los Gatos, California, Kissner was simultaneously dismissed and

laid off from his tenured position. (III ER 78, 328, 368.) Kissner had been outspoken in opposing a school funding measure and petitioned against a board appointment. (III ER 364-367.) The timing of the school district's adverse actions and the coupling of dismissal and layoff proceedings raises serious and genuine questions concerning the district defendants' motives. Yet the district court brushed them away.

A few years earlier, in 2018, Kissner faced significant backlash both within and outside the school community for opposing a district-sponsored student walkout organized around a nationwide anti-gun campaign in the aftermath of the Parkland, Florida, mass shootings. (III ER 338-351.) Resentment toward his opposition never abated.

Kissner alleges that he was singled out because of these activities: first, because school officials had a long memory of the 2018 walkout controversy and resented him for drawing adverse, nationwide attention to their school district, and second, because the defeat of the 2020 funding measure imposed significant budgetary constraints on the district. Direct evidence of these allegations is unavailing. But a triable issue is raised because indirect evidence exposes the district defendants' inconsistent and implausible reasons for terminating Kissner.

In *Pickering*, *supra*, and *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) ("*Mt. Healthy*"), the U.S. Supreme Court established tests for determining whether a public school teacher has a viable First Amendment

retaliation claim. Under *Mt. Healthy*, a court scrutinizes the motives of school officials. Under *Pickering*, the court focuses on whether the public school district's interests override the teacher's protected speech.[1]

On September, 8, 2023, the district court granted defendants' summary judgment motion in part, dismissing Kissner's first cause of action for violation of the First Amendment free speech clause in retaliation for plaintiff's protected speech.

In their motion, defendants offered a notably unique theory: that once an administrative agency was asked to review its decisions to dismiss and lay off Kissner, their liability under Kissner's retaliation claim dropped out of the picture. In other words, defendants claim their motivation is irrelevant, because an administrative law tribunal ultimately agreed with their decisions.

Adopting this exotic reasoning, the district court found that "the matter of termination was decided by a **disinterested**, three-member administrative panel"[2] (emphasis added) and plaintiff had presented "no evidence that any of the panel members had a retaliatory motive to recommend plaintiff's termination." (I ER 18 (16:16-19).) Offering no supporting legal precedent, and seemingly unconvinced of its own reasoning, the court nonchalantly concluded, "Defendants' Commission-

---

[1] Neither the defendants nor the district Court presented a *Pickering* analysis.
[2] The Court did not refer to the layoff, which was decided by a single administrative law judge.

based argument is **probably adequate**…. Kissner has identified no evidence indicating that the Commission's decision was politically motivated." (Emphasis added.) (I ER 19 (17:8-11).)

In making a claim of retaliation in violation of the First Amendment, a public employee must demonstrate that (1) he was subjected to adverse employment action, such as being denied a benefit or privilege by school district officials, (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern, and (3) the protected expression was a substantial motivating factor for the adverse action.

Under the standard summarized in *Mt. Healthy*, the case principally cited by both the defendants and the court as "the default rule for First Amendment retaliation claims," once a plaintiff has met this burden, the defendant can defeat the plaintiff's claim by showing that it would have reached the same decision even in the absence of the plaintiff's protected conduct.

There is no established precedent that the motivations of a "disinterested" quasi-judicial administrative tribunal, when hearing a public employee's appeal, can substitute for the employer's motivations in such proceedings. If that were the case, public employees would be left with no incentive to have their appeals heard by such agency panels because they would effectively be waiving their retaliation claims. A neutral panel, by definition, acts impartially. Since the agency panel is

"disinterested," it inherently cannot be influenced by bias. Under the *Mt. Healthy* rule, a terminated employee could never prove retaliation, and in this case, the district court's expectation that Kissner prove that the "disinterested" Commission's decision was politically motivated was unreasonable.

Defendants presented no evidence from the administrative record tending to deflect the claim that <u>they</u> were motivated to retaliate. Their sole "evidence"—the basis for the court's decision—was the agency panel's self-serving declaration of impartiality. Adopting the defendants claim that a "disinterested" impartial panel lacked a retaliatory motive for dismissing Kissner and that the defendants' reasons for dismissing him were irrelevant, the court erroneously concluded that defendants had met their burden by a preponderance of the evidence. This decision should be reversed and remanded for trial.

## JURISDICTIONAL STATEMENT

This action arises under the First and Fourteenth Amendments to the United States Constitution and is authorized pursuant to 42 U.S.C. § 1983 to remedy Respondents' deprivation of Appellant's constitutional rights. Accordingly, the district court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

The Court of Appeal has jurisdiction to hear this appeal as from a final judgment pursuant to 28 U.S.C. § 1291 disposing of all parties' claims. The district

court entered the judgment on January 30, 2024. Pursuant to Fed. R. App. P., rule 4(a)(1)(A), Appellant timely filed his notice of appeal on February 28, 2024.

## STATEMENT OF REVIEWABILITY

Kissner's First Amendment Retaliation claim was raised in the summary judgment briefing (II ER 52-54, 74-80,  255-57) and ruled upon in the trial court's summary judgment order (I ER 36).

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo, using the same standard applied by the trial court. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 719 (9th Cir. 2022); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1029–1030 (9th Cir. 2004). In reviewing the trial court's decision, the appeals court must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

## ISSUES PRESENTED

1.     Whether the district court erred in resolving the disputed fact of motivation at the summary judgment stage.

2.     Whether the district court erred in granting summary judgment on Kissner's First Amendment Retaliation claim by requiring that he prove the administrative agency hearing panel (Commission on Professional Competence)—

11

and not the school district's governing board—had a retaliatory motive for dismissing him.

3. Whether the district court abused its discretion in failing to find a triable issue of material fact based on circumstantial evidence that the district defendants had a retaliatory motive in dismissing and laying off Kissner.

4. Whether the district court erred in granting summary judgment where the district defendants failed to meet their burden of proof by a preponderance of the evidence that, under the *Mt. Healthy* mixed motive analysis, they would have reached the same decision even in the absence of Kissner's protected conduct.

5. Whether the district court erred in granting summary judgment where the defendants failed to meet their burden of proof by a preponderance of the evidence that, under the *Pickering* balancing test, their legitimate administrative interests outweighed Kissner's First Amendment rights.

## STATEMENT OF THE CASE

## I.  <u>Kissner Was A Tenured, Permanent 6th-Grade Middle School Teacher For Nine Years</u>

Kissner was a tenured (i.e., permanent) 6th-grade math and science teacher employed by the Loma Prieta Joint Union School District ("district") for nine years. The district serves over 400 students in grades TK-8 and administers just two schools, Loma Prieta Elementary School (grades K-5) and CT Middle (grades 6-8.) (III ER 332 (¶ 29).) Kissner was hired in 2012 specifically to teach 6th-grade math

12

and science in a "core" model at CT Middle (II ER 89), and he continued to teach math and science as a tenured ("permanent") employee until February 12, 2021, when he was placed on administrative leave pending his dismissal proceedings. (III ER 370 (¶ 196).)

## II.    Kissner's Opposition To A 2018 Anti-Gun Student Walkout Generates Controversy

Following the Parkland, Florida, school shootings in 2018, students across the nation staged political protests calling for stricter gun legislation and the district allowed CT Middle School students to attend assemblies as well. Kissner opposed the district's support of the planned walkouts believing they violated California truancy laws and would set a bad precedent, while additionally indoctrinating students and exposing members of the school community opposed to the ideological message of the walkout to disparate treatment. (III ER 327 (¶¶ 5, 54-69, 61-62, 238-39).) His position was supported by legal guidance from two counties. (III ER 340 (¶ 59).)

On March 14, 2018, three students skipped Kissner's class for the walkout, and he gave them failing grades on his annual Pi Day quiz. (III ER 334 (¶¶ 74, 82-86).) A parent's public complaint led to media attention and false accusations of Kissner being a child groomer. (III ER 347 (¶¶ 89, 91-101, 110-112).)

**III.**     <u>**The District Retaliates Against Kissner By Conducting Two**</u>
<u>**Inconclusive Investigations Following The Walkout Controversy**</u>

Kissner's actions were upsetting to some community members, one of whom wrote an anonymous letter to the school accusing Kissner of child "grooming." (*Id.*) In response to this letter and Kissner's opposition stance to the walkouts, the district conducted two investigations, one into his decision to fails three students who skipped class to participate in the student walkout and the other into his conduct around minors. (III ER 353 (¶¶ 112, 123,125,130).) Both investigations resulted in inconclusive findings, and, in the most egregious allegation of "grooming," no finding at all. (II ER 122-127; 3 ER 362 (¶ 148); 3 ER 363 (¶ 152).) The district ultimately took no disciplinary action against Kissner between 2018 and 2021. (*Id.*)

The report additionally touched on a 2016 incident mentioned by the anonymous author of the letter involving Kissner giving a teenager who was not enrolled in the district a sip of alcohol on a non-school-related camping excursion. (III ER 336 (¶¶ 50-51).) Although the incident had occurred two years earlier, Kissner had acknowledged to the teenager's mother exercising poor judgment at that time, and nothing came of it, the investigator sought to inflate its significance in her report.

The school's then-superintendent, Defendant Lisa Fraser ("Fraser") improperly interpreted the reports' inconclusive findings to be conclusive and made them the basis of a disciplinary letter in 2018, warning Kissner that any "reports" of

"similar misconduct in the future"—rather than actual evidence of misconduct—would be grounds for dismissal. (II ER 97.) Kissner sharply criticized the warning letter and refuted the accusations leveled against him. He condemned the investigations and Fraser's warning as acts of retaliation. (II ER 99.) No further action was taken against Kissner regarding the matter. (III ER 363 (¶ 152).)

## IV.   <u>Kissner Publicly Opposes The District's School Funding Measure</u>

During the 2019-2020 school year, the district struggled with budget deficits and declining reserves. (II ER 137-139 (16:7-18:18).) Fraser convened a Budget Advisory Committee ("BAC") to assist in planning for program cuts for the following year. (*Id.*) As part of the strategy for addressing its budget woes, Fraser recommended to the board that the district pursue a new parcel tax to replace one that was expiring. (*Id.* (18:5-13).) The board unanimously voted to pursue the ballot measure, Measure N. (II ER 168 (125:9-21).) The measure was backed by district board members and administrators who actively campaigned for its support. (*Id.*; 3 ER 365 (¶ 169).)

Plaintiff led the campaign opposing the tax measure and advocated for transparency, accountability, and responsible use of public funds. (III ER 364-366.) The district was aware of his efforts to publicly oppose the measure (*id.*), and Kissner notified Fraser in December 2019 of his intent to campaign in opposition. (II ER 194.) The district suffered a major setback on December 1, 2020, when the measure

was defeated, and it was forced to plan for much deeper budget cuts than it had hoped. (II ER 139 (18:7-13); 3 ER 366 (¶ 171).)

## V.    The District Issues A Notice Of Intent To Dismiss Kissner Shortly After Measure N's Defeat

On February 12, 2021, Superintendent Fraser issued Kissner a Notice of Proposed Intent to Dismiss him and Statement of Charges  (II ER 264-288) based, in part, on allegations of "[p]otential grooming behavior, such as: singling out a minor and being alone with a minor … asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet… failing to maintain professional boundaries, including via technology and sharing private texts/messages with minors/students." (II ER 267-270.) On March 22, 2021, Kissner's attorney sent a letter to district counsel demanding the unsubstantiated allegations be removed from the Statement of Charges:

> These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS.… Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable.

(II ER 226.) The district never responded to counsel's letter and did not remove the offensive allegations from either the initial Statement of Charges or an amended version of it. (III ER 368 (¶ 187).)

16

Fraser later admitted that she had no evidence to support the grooming allegations. (II ER 103-120 (103:11-106:6, 110:2-6, 114:19-115:6, 121:11-123:18, 135:9-15, 135:24-136:3, 140:1-141:25, 142:1-143:19, 144:7-21)).

The district voluntarily dropped the allegations of grooming and associated conduct before the dismissal proceedings began and the allegations did not appear in the heavily redacted statement of charges presented to the Commission. (III ER 290-323.)

## VI.    The District Issues A Layoff Notice One Month To The Day After The Dismissal Notice

On March 12, 2021, one month to the day from the district's dismissal notice, the district served Kissner with a layoff notice. (II ER 174-175). (II ER 172-173.) Despite teaching mandatory subjects at a secondary school, he was ostensibly laid off because the district (1) viewed his "particular kind of service" (PKS) to fall under a "4.0 FTE K-8 Classroom Teaching" category and (2) claimed his single-subject math credential disqualified him from teaching 6th-grade science in a core classroom.

Remarkably, Kissner, a permanent (tenured) 6th-grade math and science teacher employed for nine years with the district, was the only teacher laid off. (II ER 177; 2 ER 185.) The district explained that he was laid off for budgetary reasons. But the district's chief business official (CBO) determined that the proposed budget cut purporting to implicate Kissner's position had no effect on teaching positions or

17

budget savings. (II ER 150 (220:1-221:4, 223:7-224:2, 229:22-230:4, 238:13-15, 252:24-253:21, 257:10-12).) While at first the district had budgetary concerns and sought to reduce four positions district-wide, the CBO emailed Fraser that she had determined that Kissner's position could not be eliminated and that no savings could be realized. (II ER 169-171.) In fact, it wasn't eliminated. The resolution had not specified the reduction or elimination of any service related to 6th-grade math or science instruction. (II ER 172.) Fraser and Martin even reassured parents that there would be no significant changes to the 6th-grade curriculum. (II ER 172; ("[T]he curriculum is not in flux, [but] who's teaching it is.") 2 ER 164 (28:14-15).)

Kissner's position was not eliminated, but he was replaced with a more junior teacher possessing less experience. (II ER 176; 2 ER 166-167 (55:7-56:3).) By June, 2021, all the noticed layoffs, except Kissner's, were rescinded. (*Id*.) The district received adequate funding in Spring 2021 and did not implement any budget cuts or reduce or eliminate teaching positions for the 2021-2022 school year. (II ER 189-192 (Board Presentation, Slide 2 (no budget cuts), Slide 23 (did not cut 4.0 FTE).) Kissner's layoff had nothing to do with the district's budget priorities or the Board resolution authorizing layoffs.

Because Kissner was not laid off due to budget priorities, he is entitled to be reappointed to his former job (Cal. Educ. Code Ann. § 44956), but the current superintendent, Grier, has failed to reappoint him.

18

**VII.** **The District Amends Its Board Policy For The First Time In A Decade In Order To Justify Disciplinary Action Against Kissner**

Soon after notifying Fraser of his intent to oppose her parcel tax in December 2019 (II ER 194 (52:4-15)), Fraser brought a new proposed amendment to Board Policy 4119.21 to the Board for approval in February 2020. (II ER 195-205.) The amended version (II ER 206-208), added specific language to already unconstitutionally vague language in the original version (II ER 209-213), proscribing broadly-described conduct. Once the Amended Policy was approved, Fraser promptly wrote Kissner <u>two</u> unprecedented disciplinary letters, citing only the new policy, and inexplicably used the language for two different statutory causes for dismissal. (II ER 218-220 (March 31, 2020 Warning of Unprofessional Conduct); 2 ER 221-223 (Warning of Unsatisfactory Performance).) Neither of these charges were upheld by the commission. The district would cite this Amended Policy as the only policy basis for Kissner's dismissal in its lengthy Statement of Charges. (ER 267.)

**VIII.** **Kissner Seeks Hearings To Contest His Termination And Layoff**

On April 22, 2021, Kissner timely filed a request for hearing in connection with the dismissal charges pursuant to Cal. Educ. Code § 44944. (II ER 370.) In March 2021, Kissner timely requested a hearing related to the layoff notice pursuant to Educ. Code § 44955. The layoff hearing took place on April 26-27, 2021. (II ER 136, 163.) A single administrative law judge employed by the Office of

19

Administrative Hearings ("OAH") heard evidence and issued a Proposed Decision in the matter on May 3, 2021, recommending Kissner be laid off. A Commission on Professional Competence (Commission) consisting of a three member panel heard the dismissal appeal between October 4 and 28. A Decision was issued against Kissner on December 7, 2021. (II ER 259.) Kissner unsuccessfully argued First Amendment Retaliation in both proceedings.

In its Decision, the Commission's obscure logic detailed at length its neutrality argument for declining to uphold Kissner's retaliation claim, claiming, *inter alia*:

> [T]he District cannot dismiss respondent unilaterally. Rather, under Education Code sections 44943 and 44944, because respondent requested a hearing, this Commission—comprising by law persons who have no prior relationship with respondent, with the District's administrators and elected officials, or with the events at issue—must decide whether or not the District should dismiss respondent from employment.

(II ER 260-263.)

## IX. <u>The District Court Issues An Order Granting Defendant's Motion For Summary Judgment As To Kissner's First Amended Retaliation Claim</u>

On September 8, 2023, the district court dismissed all the defendants and issued its order granting summary judgment as to claim 1, the First Amendment Retaliation claim, and as to all claims as they pertain to the layoff decision. The court reasoned that "the matter of termination was decided by a disinterested, three-member administrative panel" and that "Kissner has presented "no evidence that any

of the panel members had a retaliatory motive to recommend [Kissner's] termination."(I ER 18 (16:12-17:18).) However, the court qualified this legal error, stating, "Defendants' Commission-based argument is **probably adequate**…." (Emphasis added.)(I ER 19 (17:8).)

## SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment in favor of the school officials on the plaintiff's First Amendment Retaliation claim. A genuine issue of material fact remains as to whether the district defendants—not the Commission on Professional Competence—terminated Kissner's employment due to a retaliatory motive. Defendants did not establish by a preponderance of the evidence that (1) they lacked a retaliatory motive in deciding to terminate Kissner in either or both dismissal and layoff proceedings, (2) they would have terminated Kissner regardless of his protected speech, or (3) their legitimate administrative interests outweighed Kissner's First Amendment speech rights.

First, the district court erred in resolving the disputed fact of motivation at the summary judgment stage when questions of fact should be left to be decided at trial.

Second, the district court clearly erred in determining, as a matter of law, that Kissner was required to prove his First Amendment Retaliation claim with evidence that a "disinterested" administrative tribunal made the decision to terminate him based on a retaliatory motive and that the defendants' motives were irrelevant.

Third, the district court erred in rejecting Kissner's circumstantial evidence as "unpersuasive" without evaluating it in the context of the defendants' implausible and inconsistent arguments and their failure to produce relevant evidence. This oversight undermines the thorough consideration required to assess the credibility and significance of the evidence in First Amendment Retaliation claims.

Fourth, the district court erred in granting summary judgment where defendants failed to meet their burden of proof by a preponderance of the evidence showing that, under the *Mt. Healthy* mixed motive analysis, they would have reached the same decision <u>in both the dismissal and the layoff</u> even in the absence of the plaintiff's protected conduct.

Fifth, the district court erred in granting summary judgment where the defendants failed to meet their burden of proof by a preponderance of the evidence that, under the *Pickering* balancing test, their legitimate administrative interests outweighed appellant's First Amendment rights.

## ARGUMENT

### THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE A TRIABLE ISSUE CONCERNS WHETHER THE DEFENDANTS HARBORED A RETALIATORY MOTIVE IN TERMINATING KISSNER

### I.  <u>Introduction</u>

To succeed on a claim of retaliation in violation of the First Amendment, a public employee must demonstrate that (1) he was subjected to adverse employment

22

action, such as being denied a benefit or privilege by school district officials, (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern, and (3) the protected expression was a substantial motivating factor for the adverse action. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 979–980 (9th Cir. 2002) ("*Ulrich*"); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir.2000); *Pool v. VanRheen*, 297 F.3d 899, 906 (9th Cir. 2002); and *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002). Once a plaintiff has met this burden, the defendant can show that it had legitimate reasons for terminating an employee under *Mt. Healthy* and/or *Pickering*:

> Upon these showings, the burden shifts to the public employer to demonstrate either that, under the balancing test established by *Pickering* [ ], its legitimate administrative interests outweighed [the employee plaintiff's] First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy* [ ], it would have reached the same decision even in the absence of the plaintiff's protected conduct. [Citations.]

*Ulrich* at 976–77.

It is undisputed in this case that Kissner was subjected to adverse employment action and that he engaged in speech that was constitutionally protected because it touched on a matter of public concern. Kissner campaigned against the district's ballot measures while organizing and signing petitions opposing the district's board appointments. As recognized by the Supreme Court, the First Amendment holds its highest significance and urgency concerning speech during political campaigns.

23

"The First Amendment " 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)); *see also Buckley v. Valeo*, 424 U.S. 1, 48 (1976) ("Advocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally or advocacy of the passage or defeat of legislation.".) "Thus, political speech—including the endorsement of candidates for office—is at the core of speech protected by the First Amendment." *Sanders Cnty. Republican Cent. Comm. v. Bullock* 698 F.3d 741 (9th Cir. 2012).

It remains disputed, however, that Kissner's protected expression was a substantial motivating factor for the adverse action. Applying the *Mt. Healthy* burden-shifting test, the district court implausibly concluded that defendants did not terminate Kissner because "the matter of termination was decided by a disinterested, three-member administrative panel and Kissner presented no evidence that any of the panel members had a retaliatory motive to recommend his termination" and erroneously concluded that Kissner's pretext arguments were "unpersuasive" and defendants had established they would have terminated Kissner even in the absence of his political activities.

24

## II. __The District Court Erred In Resolving The Disputed Fact Of Motivation At The Summary Judgment Stage__

A genuine issue of material fact exists concerning whether defendants terminated Kissner in retaliation for his protected speech, thereby precluding summary judgment. The district court gave scant and inadequate explanation for rejecting Kissner's circumstantial evidence of discriminatory motive. As in cases of impermissible racial motivation, "outright admissions of impermissible motivation based on [First Amendment protected speech] are infrequent and plaintiffs often must rely upon other evidence." *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult…. There will seldom be 'eyewitness' testimony as to the employer's mental processes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). "As with proof of motive in other contexts, [the motive element] of a First Amendment retaliation suit may be met with either direct or circumstantial evidence…." *Ulrich* at 979–980, citing *Allen* v. *Iranon*, 283 F.3d., *supra*, at 1074. Such cases "involve[ ] questions of fact that normally should be left for trial." *Id*., citing *Hunt v. Cromartie*, 526 U.S., *supra*, at 552 ("[I]t was error in this case for the District Court to resolve the disputed fact of motivation at the summary judgment stage.")

Indeed, it was error in this case for the district court to resolve the disputed fact of motivation at the summary judgment stage. Kissner raised an inference of

discrimination through proof of his prima facie case, and such circumstantial proof of retaliation can also be used by to show pretext. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 536 (1993). "Such proof is merely strengthened by showing, through use of further evidence, that the employer's articulated reasons are false, since 'common experience' tells us that it is 'more likely than not' that the employer who lies is simply trying to cover up the illegality alleged by the plaintiff." *Id*., citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). (Emphasis added.)

**III.**    **The District Court Erred In Granting Summary Judgment By Determining, As A Matter Of Law, That Kissner Was Required To Prove That Administrative Law Panel Members—Not The School Defendants—Had A Retaliatory Motive For Terminating Him**

The district court credulously accepted defendants' improbable claim that the California Office of Administrative Hearings (OAH) Commission on Professional Competence (Commission), an administrative agency tasked with hearing employment appeals at the secondary stage of the termination process as a matter of due process afforded the employee, lacked a retaliatory motive for upholding the district defendants' decision to terminate Kissner. The court reasoned that "the matter of termination was decided by a disinterested, three-member administrative panel" and that "Kissner has presented "no evidence that any of the panel members had a retaliatory motive to recommend [Kissner's] termination."(I ER 18 (16:12-17:18).) In so doing, the trial court was willing to adopt the Commission's sophistic rationale for rejecting Kissner's retaliation claim without scrutinizing its underlying

26

logic. Even the court, though, harbored doubts about this legal error: "Defendants' Commission-based argument is **probably adequate**…. Kissner has identified no evidence indicating that the Commission's decision was politically motivated." (Emphasis added.)(I ER 19 (17:8-10).) Its "probably adequate" theory of summary judgment has no place in this circuit's jurisprudence.

The OAH in California operates under the authority provided by the California Government Code. Specifically, the establishment and functions of the OAH are primarily outlined in the California Government Code, beginning with Section 11370. According to the OAH's website:

> The Office of Administrative Hearings (OAH) is a quasi-judicial tribunal that hears administrative disputes. Established by the California Legislature in 1945, OAH provides independent Administrative Law Judges (ALJs) to conduct hearings for over 1,500 state and local government agencies. OAH provides both adjudication and alternative dispute resolution services.

https://www.dgs.ca.gov/en/OAH/About.

The Commission is a sub-agency of the OAH restricted in its powers to deciding employee dismissals under Cal. Educ. Code § 44944. Although its decisions are deemed to be the final decision of the governing board of the school district (*Id*., subd. (d)(4)), its authority is quasi-judicial. The Commission's task is to hold a hearing and to determine through the evidence presented whether school officials based their decision to terminate Kissner on a retaliatory motive, then to make findings of fact.

27

Attributing motives to members of a quasi-judicial panel who were not present during the events in question is unprecedented and leads to an illogical conclusion. Kissner would need to prove that the Commission members harbored a retaliatory motive in affirming the school district's decision. However, it is unreasonable to expect the Commission to possess such a motive, as it is inherently composed of "disinterested" members. Moreover, an employee's purpose in exercising his right to a hearing—a matter of due process—is to appeal the governing board's decision, not to forfeit a retaliation claim. Under the Commission's contorted logic, an employee pursuing a retaliation claim is deemed to waive it because he can never prove the Commission is motivated by retaliatory interests under *Mt. Healthy.* The inherent nature of the Commission as a "disinterested" body logically precludes any proof of a retaliatory motive. Additionally, the trial court did not explain how, during the layoff proceedings, a single ALJ (who only makes a recommendation) could make findings of fact by substituting her neutrality for the defendants' motives, especially when the district ultimately makes the final decision regarding Kissner's layoff.

## IV. The District Court Erred In Granting Summary Judgment Because It Improperly Found Plaintiff's Circumstantial Evidence Of Pretext "Unpersuasive" While Failing To Offer Any Critical Analysis

Kissner made an argument showing evidence of pretext sufficient to satisfy both his initial burden and his burden on the third step of the *Mt. Healthy* mixed

motive analysis. "Evidence of pretext has a place in the *Mt. Health*y analysis." *Allen*
v. *Iranon*, 283 F.3d, *supra*, at 1075. "Courts determining whether a plaintiff has met
his burden under *Mt. Healthy* often look to evidence that the employer's proffered
reasons for the challenged decision were pretextual." *Id*., citing *Soranno's Gasco,
Inc. v. Morgan*, 874 F.2d 1310, 1315-16 (9th Cir.1989) and *Reeves v. Sanderson
Plumbing Prods., Inc*., 530 U.S. 133, 147 (2000) (in a discrimination case, "[p]roof
that the defendant's explanation is unworthy of credence is simply one form of
circumstantial evidence that is probative of [an impermissible motive], and it may
be quite persuasive.".)

A "plaintiff may establish pretext either directly by persuading the court that
a discriminatory reason more likely motivated the employer or indirectly by showing
that the employer's proffered explanation is unworthy of credence." *Godwin v. Hunt
Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir. 1998), as amended (Aug. 11, 1998),
quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981), in
turn citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Proof that an
employer's proffered reasons for adverse employment action are unworthy of
credence may considerably assist a circumstantial case of discrimination, because it
suggests the employer had cause to hide its true reasons." *Guz v. Bechtel Nat. Inc*.,
24 Cal.4th 317, 361 (2000). (Internal quotation marks omitted; citation omitted.)
"For purposes of making a prima facie showing, the causal link element may be

established by an inference derived from circumstantial evidence." *McRae v. Dept. of Corrections & Rehab.*, 142 Cal. App. 4th 377, 388 (2006).

Where it is shown that the employer knew of the speech, which is not disputed here, circumstantial evidence showing motive may fall into three, nonexclusive categories: "(1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) **other evidence** that the reasons proffered by the employer for the adverse employment action were false and pretextual." *Ulrich* at 980, citing *Allen*, 283 F.3d at 1077; *accord Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir.2001). (Emphasis added.) Kissner set forth evidence in all three categories. Kissner presented sufficient evidence of a retaliatory motive that, if accepted by a jury, would meet the causation element of a First Amendment retaliation claim.

The district court stated that Kissner "conflated" his prima facie burden of demonstrating pretext with his ultimate burden of demonstrating the insufficiency of defendants' evidence of the legitimacy of their proffered explanations. (I ER 16 (p. 14, n. 12).) Nothing in Kissner's argument demonstrates this assertion. Rather, the court resisted its duty to determine whether Kissner's evidence identified weaknesses in the district defendants' proffered reasons for terminating him. That evidence was, at minimum, sufficient to raise a triable issue.

(1) **<u>Proximity in time</u>**. The evidence showed that Kissner participated in the campaign to defeat Measure N in the last quarter of 2020 and notified the Board that he sought a special election to fill a Board vacancy in December 2020 and January 2021. In February 2021, roughly one month after these activities and after the defeat of Measure N, the district notified him of its intent to dismiss him. During the early months of 2021, and having lost the revenue anticipated from Measure N, the district set about to formulate its reduction in force needs. The revenue expected from the passage of Measure N was a critical factor in developing a budget for the prospective school year. (II ER 139 (18:5-13) (Fraser: "[O]ur budget advisory committee was guiding the Measure N parcel tax as a means of … revenue. And so when we … were budgeting, we were budgeting in two different scenarios: One would be if Measure N passed, and one would be if Measure N did not pass. Either way, we needed to make $100,000 budget cuts if Measure N were to pass, and approximately $400,000 in cuts were it to fail…. [B]oth of those factors played into the need for layoffs.").)

Having obviously opposed Kissner's speech on Measure N, and understandably upset about Kissner's contribution to the loss of funding, the district laid him off, citing budgetary reasons. But, as described above and below, district officials admitted that Kissner's layoff resulted in no impact on the budget or staffing levels.

31

These facts demonstrate the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the district defendants' proffered legitimate reasons for terminating Kissner [such] that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that defendants did not act for the asserted non-discriminatory reasons." *See Morgan v. Regents of U. of Cal.*, 88 Cal. App. 4th 52, 75 (2000). The district court explored none of these facts and thereby gave them no credence even though they show that Kissner's campaign success in defeating Measure N would have significantly troubled school officials and that they opposed his political campaign advocacy. And this was particularly true because school officials had for years resented Kissner's opposition to its sanctioned student walkout, subjecting him to multiple investigations over unproven accusations of misconduct. Rather than balance the arguments the evidence invites, the district court reduced its analysis to a single legal axiom ("Proximity is not enough to establish pretext."(I ER 19 (p. 17, n. 17).) Such analytical reductionism enabled the court to dismiss and ignore Kissner's "other evidence" of pretext.

For example, Kissner showed that the district defendants dismissed him (for cause) and laid him off (ostensibly for budgetary reasons) within a few short months of each other. Using two separate statutory procedures to terminate him was unusual by any standard, not something a tenured employee commonly undergoes. Such an inference can be made without the necessity of evidence because it depends on

human experience. *See*, *e.g.*, *Johnson v. U.S.*, 333 U.S. 46, 49 (1948) (uncontradicted testimony for unexplained reason permitted inference under res ipsa loquitur rule) ("No act need be explicable only in terms of negligence in order for the rule of res ipsa loquitur to be invoked. The rule deals only with permissible inferences from unexplained events.")

Kissner showed that he was tenured and held a permanent position, and that he had been employed for nine years, a lengthy stretch of time to suddenly be found unfit to teach under dismissal proceedings and incapable of teaching 6th-grade math and science under layoff proceedings. The court stubbornly refused to acknowledge these facts. But Kissner additionally argued that it is "<u>indisputable</u> that prior to Kissner, no employee had ever been terminated through both the dismissal and layoff processes" and "it is <u>indisputably</u> unprecedented that an employee is dismissed and laid off within the same year." (II ER 79 (16:3-5).) (Emphasis added.) These indirect assertions were purposely framed to avoid the direct assertions that no employee had ever been terminated through both the dismissal and layoff methods and that it was unprecedented that an employee was ever dismissed and laid off within the same year. The district defendants were capable of disputing these claims as framed. They did not, and the court was unsuspicious of their reason for ignoring them. Had employees ever been terminated under both procedures in a given year, the defendants would have been capable of saying so.

33

(2) **<u>Timing of the Amended Board Policy</u>**. Kissner additionally presented evidence that for the first time in 10 years, in early 2020, the district amended a Board policy addressing employee misconduct commensurate with disciplinary warnings issued to him regrading unsubstantiated allegations of misconduct. The district amended a board policy in early 2020, proscribing broadly-described conduct, to support unproven allegations against Kissner, and made it the sole basis for charges brought in 2021 against Kissner immediately after Kissner's protected political actions. The language added is unconstitutionally vague and the policy itself could not be applied retroactively. Nevertheless, this was the only policy the charges and the Commission relied upon to identify a standard Kissner was alleged to be guilty of violating. The added language read in part:

> The Board expects all employees to exercise good judgment and maintain professional standards and boundaries when interacting with students both <u>on and off school property</u>. Inappropriate employee conduct shall include, but not be limited to, engaging in harassing or discriminatory behavior; engaging in inappropriate socialization or fraternization with a student; soliciting, encouraging, or establishing an inappropriate written, verbal, or physical relationship with a student; <u>furnishing</u> tobacco, <u>alcohol</u>, or other illegal or unauthorized substances to a student; or engaging in child abuse.

(Emphasis added.)

The underlined portions represent language that appears unmistakably to have been specifically designed to take advantage of the findings of the two-year-old conduct investigation report. As argued above, Fraser proposed to the board the

34

language be added to the existing BP 4119.21 in February 2020 immediately after Kissner informed her that he would be opposing Measure N. These facts, standing alone, might not be enough to raise a reasonable inference that Fraser and the board sought to retaliate against Kissner, except that, in unprecedented action, Fraser made unfounded allegations of unprofessional conduct and unsatisfactory performance against Kissner alleging he had used racially-charged language with an Asian student and profanity with another student. Neither of these claims were ever proven and Kissner specifically denied them. (II ER 218-223.) This was the first time in Kissner's eight years of employment to that point he had ever received complaints of this type. Yet, Fraser's evidence of these alleged improprieties came not from the purported victims themselves but from third parties. *Id.*

The timing of Fraser's authorship of the proposed language suggests that she sought a policy basis for disciplining and dismissing Kissner that did not exist at the time Kissner notified her of his intent to oppose Measure N. Fraser withheld serving the first warning letter on Kissner for an unprecedented five months until after the amended policy was adopted by the board and, in her letter to him, applied it retroactively. (II ER 218-220). The district's Statement of Charges adopted this retroactive application. The policy became effective, however, just in time for Fraser to issue the second letter to Kissner regarding the use of profanity. Never proven, the allegations nevertheless made their appearances in the Statement of Charges. These

facts raise a reasonable inference that the district defendants attempted to create a policy basis to dismiss Kissner, and that negative evaluations of Kissner's conduct were manufactured to provide them with a pretext for dismissing him.

The district court summarily dismissed this argument, instead giving credence to baseless accusations of misconduct contained in such demonstrably unreliable evidence as warning letters and the statement of charges for which no supporting evidence—none!—exists in the record. Indeed, the court's unskeptical "analysis" accepts the truth of false allegations simply because they appear on paper generated by a public authority. This is precisely the type of uncritical analysis *Mt. Healthy* forbids and is not unlike accepting the allegations of an indictment as evidence of a crime.

(3) **Reliance On Stale Allegations Of Misconduct**. The district relied upon a five-year-old accusation of misconduct (2016), a three-year-old anonymous letter (early 2018), and a two-and-a-half-year-old report (late 2018) prepared in reaction to Kissner's opposition to the 2018 student walkout and grading decision as bases for dismissal charges brought against him in 2021 conspicuously just after his protected political activity. By basing dismissal charges on belated allegations that had not resulted in disciplinary or other adverse employment action in the past, a reasonable inference, and therefore, a triable issue of fact, exists as to whether the

2018 allegations used to justify Kissner's dismissal in 2021 served as a pretextual basis for his termination.

The district court consistently compounded its legal errors by accepting unproven, false allegations as truth. These were, in fact, fabricated innuendos from hostile actors intent on removing Kissner due to his political opposition to district policies.

(4) **Conflicting Reasons For Layoff**. The district gave conflicting, contradictory, and implausible reasons for Kissner's layoff, abandoning claims based on budget savings or declining enrollment in favor of unclear claims of program benefits and potential future flexibility. The district court concluded:

> Kissner includes only a string cite to different testimony by Fraser about the need for a layoff, [ ], and while it includes multiple explanations of the layoff, they are <u>not obviously contradictory</u>.

I ER 20 (p. 18, n. 21) (Emphasis added.)

> Although Kissner argues that his job "was neither targeted for budgetary reductions nor resulted in any," Opp'n. at 10 [II ER 73], and his SAC is even more incendiary on this point, see SAC at 49 [III ER 373] ("Dismissing Kissner Would Not Be Enough, [sic] Belt [sic] and Suspenders Were Needed So The District Simultaneously Eliminated Kissner Through An Unlawful Reduction In Force"), <u>he point [sic] to no evidence that the Board was not truly motivated by budgetary concerns.</u>

I ER 36, n. 40) (Emphasis added.)

The court is incorrect. The evidence shows that chief business official (CBO), Vance, contradicted school superintendent Fraser's reasons for the layoff with

conflicting explanations. On the one hand, Fraser attributed the layoff to budgetary concerns and declining enrollment ("declining enrollment and also issues with budget—need for budget reductions." (II ER 137 (16:21)); ("District's needs to make significant budget reductions and due to declining enrolment") (II ER 230); (Kissner's layoff relates "solely … to the given economic realities of the District." (II ER 174).)   Contradicting Fraser, Vance testified that there was no net budget benefit to the change in 6th-grade programming and, thus, no economic justification for the layoffs:

> Q: So those savings are not realized –
> A: Correct. –
> Q: by a change in sixth-grade programming?
> A: Correct.
> Q: So there is no net budget benefit to the change in sixth-grade programming?
> A: That's true.

(II ER 159 (253:15-21).)

> Q: Okay. So, Cathy, I'm going to have to relay the foundation I already laid. We've been talking a long time about sixth grade cost savings, and in every way we shape it, the net FTE is 0; correct?
>
> A: For sixth grade, yes.
>
> Q: Yes. If we look at sixth grade, the net FTE is 0; correct?
>
> A: Yes.
>
> Q: So there is no cost savings realized by any change in programming at sixth-grade level?
>
> A: Correct.

(II ER 160 (254:2-12).)

The evidence shows further that it is implausible that Kissner was laid off due to budgetary concerns because almost immediately after Kissner was laid off—and was the only teacher laid off, and a tenured one—the district received adequate funding for the upcoming school year and made no budget cuts. (II ER 189-192 (Board Presentation, Slide 2 (no budget cuts), Slide 23 (did not cut 4.0 FTE).)

The district then argued that a shift to a core teaching model precluded Kissner from teaching 6th-grade math and science any longer, as he had done for nine years, because he was not properly certificated. However, evidence showed that not only was he qualified and certificated to teach 6th-grade math and science in a core model, he was hired specifically to teach that very program. (II ER 89.)

The above circumstantial evidence of close proximity in time, implausible timing of amended board policies, the stale nature of charges, and contradictory and conflicting accounts to justify his layoff, all present triable issues of fact for a jury to decide.

## V.    <u>The District Court Erred In Granting Summary Judgment Where Defendants Failed To Meet Their Burden Of Proof By A Preponderance Of The Evidence Showing That, Under The *Mt. Healthy* Mixed Motive Analysis, They Would Have Reached The Same Decision Even In The Absence Of The Kissner's Protected Conduct</u>

In the third step of a *Mt. Healthy* mixed motive analysis, defendants shoulder the burden of establishing by a preponderance of the evidence that they would have reached the same decision to terminate and lay off Kissner even in the absence of

his protected conduct. As discussed above (*see Ulrich* at 976–77), this is one of two methods by which defendants can justify Kissner's termination to weaken his retaliatory motive claim.

In its summary judgment motion, defendants presented no evidence explaining their motives for terminating him. Indeed, as explained above, the district defendants asserted an unprecedent argument in which they claimed that an administrative tribunal adjudicating Kissner's employment appeal lacked a retaliatory motive for its decision. The court departed from legitimate *rationes decidendi* in finding that defendants have no duty to produce evidence that they would have reached the same decision to terminate Kissner even in the absence of his protected conduct. Indeed, the court's reasoning effectively relieves the defendants of this evidentiary burden.

The district court improperly relied on the Statement of Charges' unproven allegations of misconduct for the purpose of showing that the district defendants had met their burden of proof by a preponderance of the evidence that they would have terminated Kissner even if he had not engaged in protected speech activities. The Statement of Charges was a litany of allegations, not evidence of misconduct. The district court, however, accepted the Statement of Charges' allegations as proven, rather than as manufactured or pretextual reasons defendants used to support Kissner's termination, thus avoiding any attempt to scrutinize their validity (or

invalidity.) The court's reluctance to scrutinize the validity of the defendants' allegations stood in stark contrast to its readiness to invalidate Kissner's circumstantial evidence. The court's willingness to accept defendants' novel theory of the relevancy of administrative law panel members' motivation and irrelevance of the defendants' motivation for terminating Kissner, while uncritically dismissing Kissner's circumstantial evidence was clear error.

**VI.** **The District Court Erred In Granting Summary Judgment Where The Defendants Failed To Meet Their Burden Of Proof By A Preponderance Of The Evidence That, Under The *Pickering* Balancing Test, Their Legitimate Administrative Interests Outweighed Kissner's First Amendment Rights**

In addition to advancing a mixed motive analysis under *Mt. Healthy*, a second way the defendants could have fought Kissner's claim of retaliation, would have been to offer evidence showing that its legitimate administrative interests outweighed Kissner's First Amendment rights. *See Pickering*. Defendants made no such showing.

## CONCLUSION

A triable issue exists. Appellant respectfully requests that this Court reverse both the Judgment and the Order granting Respondent's Motion for Summary Judgment and remand the matter to the district court with directions to enter an order denying the latter and to proceed to trial on the issue of whether the district defendants terminated and laid off Appellant on the basis of a retaliatory motive.

41

Date: May 22, 2024     FREEDOM X

        /s/ William J. Becker, Jr.
        WILLIAM J. BECKER, JR.
        Bill@FreedomXLaw.com
        11500 Olympic Blvd., Suite 400
        Los Angeles, California 90064
        Telephone: (310) 636-1018

        Attorneys for Appellant,
        DAVID M. KISSNER

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,505 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii.)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date:  May 22, 2024

FREEDOM X


/s/ William J. Becker, Jr.
WILLIAM J. BECKER, JR
Attorneys for Appellant,
DAVID M. KISSNER

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: May 22, 2024

FREEDOM X


/s/ William J. Becker, Jr.
WILLIAM J. BECKER, JR
Attorneys for Appellant,
DAVID M. KISSNER