**No. 24-1261**

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID M. KISSNER,

*Plaintiff-Appellant,*

v.

LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, San Francisco
No. 3:22-cv-00949-CRB
Hon. Charles R. Breyer

## APPELLEES' ANSWERING BRIEF

Golnar J. Fozi (Cal. Bar No. 167674)
Daniel S. Modafferi (Cal. Bar No. 294510)
Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
Carlsbad, California 92008
Tel: 760-444-0039
Fax: 760-444-0130
Email: *gfozi@fdmattorneys.com*
  *dmodafferi@fdmattorneys.com*

Counsel for Appellees

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ............................................................... 1

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF ISSUES ..................................................... 2

STATEMENT OF THE CASE ................................................... 2

STANDARD OF REVIEW ...................................................... 5

SUMMARY OF ARGUMENT ................................................... 5

ARGUMENT .................................................................. 6

I.    PLAINTIFF WAIVED HIS APPEAL AS TO ALL CLAIMS OTHER THAN FIRST AMENDMENT RETALIATION ............................................ 6

II.   PLAINTIFF DID NOT PROVIDE ANY SUBSTANTIVE ARGUMENT OR ANALYSIS REGARDING THE DISTRICT COURT'S SUMMARY JUDGMENT RULING ON THE LAYOFF AND HAS THEREFORE WAIVED ANY APPEAL AS TO THOSE ISSUES ....................................................... 8

III.  EVEN IF PLAINTIFF HAD NOT WAIVED THE LAYOFF ISSUE (WHICH HE DID), SUMMARY JUDGMENT WAS CORRECTLY GRANTED ON THAT ISSUE ...................................................................... 9

   A.  The Layoff's Legality Has Already Been Conclusively Adjudicated by the California State Courts ............................................... 9

   B.  The Evidence Was Undisputed That Defendants Grier, Khandelwal, Martin, and Fraser Did Not Participate in the Decision to Lay Plaintiff Off .................... 10

i

C.  As He Did in the District Court, Plaintiff Again Misstates the Nature of Reductions in Force under the Education Code ....................................................14

D.  All of the Defendants Who Participated in the Layoff Are Entitled to Absolute Legislative Immunity....................................................................................16

IV.  *MOUNT HEALTHY* IS THE CONTROLLING STANDARD FOR PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM ..........................21

V.  THE EVIDENCE IS UNDISPUTED THAT LPJUSD WOULD HAVE TERMINATED PLAINTIFF DUE TO HIS EVIDENT UNFITNESS FOR DUTY, IRRESPECTIVE OF ANY PROTECTED ACTIVITY ..........................................22

A.  Plaintiff's Cat's Paw Theory of Retaliation Was Properly Considered and Rejected by the District Court .................................................................25

B.  Plaintiff Did Not Present Admissible Evidence of Defendants' Retaliatory Intent....................................................................................................29

C.  Plaintiff's Purported Evidence of Pretext Was Insufficient to Raise a Triable Issue of Fact as to Retaliatory Motive .................................................31

D.  Even if Plaintiff Had Raised a Triable Issue on Retaliatory Motive, the First Amendment Claim Fails under Step Three of the *Mount Healthy* Analysis Because the Commission's Reasons for Ordering Termination Were Non-Retaliatory ....36

E.  Plaintiff Is Misconstruing the District Court's "Probably Adequate" Comment and Blowing It out of Proportion..........................................................38

CONCLUSION ...................................................................................................40

STATEMENT OF RELATED CASES .................................................................41

CERTIFICATE OF COMPLIANCE ...................................................................42

CERTIFICATE OF SERVICE ............................................................................43

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Brown* (9th Cir. 2014) 768 F.3d 975, 981 ...........................................6

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ....................................................11

*Bello-Reyes v. Gaynor* (9th Cir. 2021) 985 F.3d 696 ...............................21

*Brnovich v. DNC* (2021) 594 U.S. 647 ....................................................27

*Cafasso, U.S. ex rel. v. Gen. Dyn. C4 Sys., Inc.* (9th Cir. 2011) 637 F.3d 1047 .....27

*Carroll v. Dutra* (9th Cir. 2014) 564 F. App'x 327 ....................................10

*EEOC v. BCI Coca-Cola Bottling Co. of L.A.* (10th Cir. 2006) 450 F.3d 476 .......27

*Erwin v. Ramos* (9th Cir. 2022) 2022 WL 541188 .......................................... 30, 31

*Gilbrook v. City of Westminster* (9th Cir. 1999) 177 F.3d 839 .............................26

*Hooker v. Parker Hannifin Corp.* (9th Cir. 2013) 548 F. App'x 368......................33

*Johnson v. Duffy* (9th Cir. 1978) 588 F.2d 740 ........................................27

*Jones v. Royal Administration Services, Inc.* (9th Cir. 2017) 866 F.3d 1100 ...........5

*Kaahumanu v. County of Maui* (9th Cir. 2003) 315 F.3d 1215 ....................... 18, 19

*Kissner v. Loma Prieta Jt. Union Sch. Dist.* (Mar. 15, 2024) 2024 WL 1132173 ....9

*Moran v. Screening Pros, LLC* (9th Cir. 2022) 25 F.4th 722...................................7

*Mount Healthy City School District Board of Education v. Doyle* (1977) 429 U.S. 274 ....................................................................................... passim

*Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Ill.* (1968) 391 U.S. 563 ....................................................................................22

*Poland v. Chertoff* (9th Cir. 2007) 494 F.3d 1174........................................... 26, 27

*San Jose Teachers Ass'n v. Allen* (1983) 144 Cal.App.3d 627 ...............................14

*Schmidt v. Contra Costa Cnty.* (9th Cir. 2012) 693 F.3d 1122 ...............................20

iii

*Sekiya v. Gates* (9th Cir. 2007) 508 F.3d 1198............................................8

*Staub v. Proctor Hosp.* (2011) 562 U.S. 411.........................................26

*Tenney v. Brandhove* (1951) 341 U.S. 367...........................................16

*Ventura Packers, Inc. v. F/V Jeanine Kathleen* (9th Cir. 2002) 305 F.3d 913 .........5

*Zalac v. Governing Bd. of Ferndale Unified Sch. Dist.* (2002) 98 Cal.App.4th 838

............................................................................................... 14, 15

**Statutes**

Ed. Code, § 44932............................................................... 22, 23

Ed. Code, § 44934............................................................... 23, 24

Ed. Code, § 44943....................................................................24

Ed. Code, § 44944............................................................... 24, 25

**Rules**

FRAP 28(a)(8)(A)......................................................................8

FRAP 3(c)(1)(B) .......................................................................7

iv

**INTRODUCTION**

Plaintiff David Kissner was fired from his employment at Loma Prieta Joint Union School District in 2021, after a three-member Commission on Professional Competence concluded plaintiff was unfit for service. Evidence of plaintiff's unfitness for service was cited throughout the written statement of charges against plaintiff (2 SER 138-392), as well as the Commission's 38-page statement of decision ordering the termination. (1 SER 33-70.) Plaintiff claims the defendant school board members and administrators who initiated his termination were actually motivated by a desire to retaliate against him due to plaintiff's political speech and activities, such as campaigning against a school-funding tax measure that the defendants supported. However, this argument was presented to the Commission, and they explicitly rejected it, instead finding that the evidence supported termination. Thus, the Commission was not a mere "cat's paw" whose members were duped into carrying out the alleged retaliatory intent of the defendants. On the contrary, the undisputed evidence clearly establishes that plaintiff was terminated for legitimate, non-retaliatory reasons. The summary judgment in favor of defendants should be affirmed.

**JURISDICTIONAL STATEMENT**

Defendants agree with plaintiff's jurisdictional statement. (See AOB 10.)

1

## STATEMENT OF ISSUES

This appeal presents only one issue for this Court to decide: Is there a genuine dispute of fact as to whether or not LPJUSD would have terminated plaintiff, even if plaintiff had not participated in his alleged protected activity? All other issues have been abandoned or waived.

## STATEMENT OF THE CASE[1]

Plaintiff was employed by the District as a middle school teacher from 2012 to 2021. In 2018, the District received an anonymous letter, accusing plaintiff of engaging in inappropriate behavior with minors, which the anonymous author of the letter described as "grooming." (2 SER 260.) The District retained outside counsel to conduct an investigation into the allegations of inappropriate behavior by plaintiff. Through the investigation, the District discovered that plaintiff had furnished alcohol to at least one minor. (2 SER 185-258.) After several months of investigation, the District concluded that plaintiff's conduct had had a negative impact on students. (2 SER 171-172.) The District did not terminate plaintiff as a result of the findings in the 2018 investigation, but the then-Superintendent, Lisa Fraser, issued plaintiff a written letter of warning, advising him that any further instances of inappropriate behavior could result in disciplinary action, up to and including termination. (*Ibid.*)

---

[1] This section provides an overview of the basic facts of the case. More detailed factual analysis is provided in the body of the brief.

Plaintiff's inappropriate behavior, insubordination, and deliberate refusal to comply with school rules and policies continued throughout 2020 and into early 2021. Finally, on February 12, 2021, Fraser issued plaintiff a written Notice of Proposed Intent to Dismiss with Statement of Charges. (2 SER 138-392.) The notice charged plaintiff with violations of the Education Code which the District alleged constituted grounds for termination. (*Ibid.*)

On March 25, 2021, the District Board of Trustees met in closed session to determine whether to proceed with termination proceedings against plaintiff. (1 SER 8-13.) Plaintiff and his counsel appeared at the Board meeting and presented their reasons why the Board should not move forward with termination. (*Id.*; 1 SER 83 (ln. 15) – 84 (ln. 1).) At the conclusion, the Board voted to move forward with termination proceedings. (*Ibid.*)

Plaintiff then requested a hearing before a three-member Commission on Professional Competence. In preparation for the hearing, plaintiff had the right to conduct formal discovery, subpoena witnesses, depose witnesses, request documents, and to be represented by counsel. Then, during the multi-day hearing, plaintiff had the right to call witnesses to testify, to present evidence in his defense, and to be represented by counsel.

After considering all of the evidence presented by both sides, as well as the arguments of counsel, the Commission on Professional Competence issued a written

3

decision on December 7, 2021, directing the District to terminate plaintiff's employment, based on plaintiff's evident unfitness for service. (1 SER 33-70.)

Meanwhile, in late 2020 and early 2021, the District's Budget Advisory Committee identified a budget shortfall and recommended that the District layoff four full-time teachers for the upcoming school year. In deciding which teachers to layoff, the District prioritized retaining teachers with multiple subject credentials. (1 SER 92-93.) Because plaintiff held only a single subject credential, his position was identified for layoff. (1 SER 98-99.)

On February 16, 2022, plaintiff filed this lawsuit. The operative second amended complaint originally alleged 19 causes of action, under both federal and state law. On June 9, 2022, however, plaintiff voluntarily dismissed all state law claims. (1 SER 2-3.) Furthermore, on August 25, 2022, plaintiff voluntarily dismissed all remaining claims against LPJUSD. (1 SER 4.) Therefore, the only remaining claims were: claim 1 for First Amendment retaliation; claim 3 for stigma-plus defamation; claim 16 for violation of the Fourteenth Amendment right to due process; claim 17 for violation of the Fourteenth Amendment right to equal protection; and claim 18 for civil rights conspiracy. The district court granted summary judgment in favor of defendants as to these federal claims. Plaintiff now appeals from the summary judgment ruling as to the First Amendment claim only.

## STANDARD OF REVIEW

An order granting or denying summary judgment is reviewed de novo. (*Jones v. Royal Administration Services, Inc.* (9th Cir. 2017) 866 F.3d 1100, 1104.) The reviewing court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. (*Ventura Packers, Inc. v. F/V Jeanine Kathleen* (9th Cir. 2002) 305 F.3d 913, 916.)

## SUMMARY OF ARGUMENT

Under *Mount Healthy City School District Board of Education v. Doyle* (1977) 429 U.S. 274, a plaintiff claiming retaliatory termination from employment in violation of the First Amendment must "show [1] that his conduct was constitutionally protected, and [2] that his conduct was a 'substantial factor' [or a] 'motivating factor' in the Board's decision not to rehire him"; then, if he did so, the school district, to defeat liability, would have to show [3] "by a preponderance of the evidence that it would have reached the same decision… even in the absence of the protected conduct." (*Id.* at p. 287.) Although plaintiff engaged in constitutionally protected conduct, he failed to present admissible evidence sufficient to create a triable issue of fact under steps two and three of the *Mount Healthy* analysis. There is no evidence in the record that the ultimate decisionmakers on the Commission on Professional Competence were mere "cat's paws" duped into carrying out retaliation

on behalf of the defendants. On the contrary, the Commission explicitly rejected plaintiff's argument to that effect. Moreover, even if there were a triable issue of fact on whether or not the defendants' alleged retaliatory animus was a substantial or motivating factor in plaintiff's termination, summary judgment was appropriate under step three, because the evidence is undisputed that the Commission would have ordered plaintiff's termination, even if he had not engaged in protected activity. Indeed, the Commission explicitly said as much. Therefore, the judgment of the district court must be affirmed.

## ARGUMENT

## I.  PLAINTIFF WAIVED HIS APPEAL AS TO ALL CLAIMS OTHER THAN FIRST AMENDMENT RETALIATION

At the district court level, plaintiff did not oppose defendants' motion for summary judgment as to the equal protection and civil rights conspiracy claims. (2 ER 88 (lns. 15-17).) In addition, plaintiff did not oppose dismissal of defendants Martin, Arnold, Abeln, Bourque, Khandelwal, or Asheghian as to the stigma-plus defamation claim. (*Id.* (lns. 18-20).) "[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." (*Armstrong v. Brown* (9th Cir. 2014) 768 F.3d 975, 981.) Therefore, these claims are not before this Court on appeal.

A notice of appeal must, among other things, "designate the judgment – or the appealable order – from which the appeal is taken." (FRAP 3(c)(1)(B).) Plaintiff's notice of appeal listed the final judgment, as well as three rulings which led up to the final judgment: (1) the September 8, 2023, order granting in part and denying in part defendants' motion for summary judgment; (2) the October 26, 2023, order granting defendants' ex parte application for leave to file a second motion for summary judgment; and (3) the January 30, 2024, order granting defendants' second motion for summary judgment. (3 ER 422.) Plaintiff's notice of appeal thus invoked this Court's jurisdiction as to the due process, stigma-plus defamation (as to defendants Fraser and Grier only), and First Amendment retaliation claims. In his opening brief on appeal, however, plaintiff waived any appeal from the summary judgment rulings on the due process and stigma-plus defamation claims, by failing to raise, let alone support, them in his opening brief. Issues must be argued distinctly and specifically in a party's opening brief to obtain review. (*Moran v. Screening Pros, LLC* (9th Cir. 2022) 25 F.4th 722, 728, fn. 6.) Because the opening brief addresses only the First Amendment retaliation claim, any appeal as to the remaining claims is waived.

## II.    <u>PLAINTIFF DID NOT PROVIDE ANY SUBSTANTIVE ARGUMENT OR ANALYSIS REGARDING THE DISTRICT COURT'S SUMMARY JUDGMENT RULING ON THE LAYOFF AND HAS THEREFORE WAIVED ANY APPEAL AS TO THOSE ISSUES</u>

To avoid waiver of a distinct issue, an appellant must not only raise the issue in his opening brief, he must provide his contentions, the reasons for his contentions, and citations to the authorities and relevant parts of the record that support his contentions. (FRAP 28(a)(8)(A); *Sekiya v. Gates* (9th Cir. 2007) 508 F.3d 1198, 1200 ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of case law fall far short of the requirement that counsel present appellant's contentions and the reasons for them.").) In this case, plaintiff's operative complaint alleged that he was subjected to First Amendment retaliation *both* when he was laid off *and* when he was terminated. Defendants raised a distinct argument in the district court that they were entitled to summary judgment as to any claims, or portions thereof, arising from plaintiff's layoff. The district court agreed with defendants' analysis regarding the layoff and therefore granted summary judgment in favor of all defendants, as to all claims, or portions of claims, arising from the layoff. (1 ER 29-36.) In his opening brief on appeal, plaintiff does not specifically address the district court's ruling with regard to the layoff or present any argument or analysis as to why that portion of the ruling ought to be reversed. Therefore, plaintiff has

8

waived any appeal as to the portion of his First Amendment retaliation claim arising from the layoff.

## III. **EVEN IF PLAINTIFF HAD NOT WAIVED THE LAYOFF ISSUE (WHICH HE DID), SUMMARY JUDGMENT WAS CORRECTLY GRANTED ON THAT ISSUE**

Even if plaintiff had not waived the layoff issue by failing to properly address it in his opening brief (which he did), this Court must affirm the judgment in favor of defendants on the layoff issue. That issue has now been conclusively adjudicated in favor of defendants by the California state courts. Moreover, plaintiff failed to present any evidence that defendants Grier, Khandelwal, Martin, or Fraser participated in the layoff. Finally, all defendants who did participate in the layoff are entitled to absolute legislative immunity.

### A. **The Layoff's Legality Has Already Been Conclusively Adjudicated by the California State Courts**

After the district court judgment was entered in this matter, the California Court of Appeal, Sixth Appellate District, issued an opinion in a related case, affirming the legality of Kissner's layoff. (*Kissner v. Loma Prieta Jt. Union Sch. Dist.* (Mar. 15, 2024) 2024 WL 1132173.) That appeal was taken from a ruling by the Santa Clara Superior Court, on January 23, 2023, denying plaintiff's petition for writ of administrative mandate. (See *id.* at pp. 2-3.) Because the appeal was pending

at the time of defendants' summary judgment motion, the Superior Court's judgment did not yet have conclusive effect. Now, however, the Court of Appeal has affirmed the layoff, and the California Supreme Court has denied plaintiff's petition for review. (See Cal. Supreme Ct. Disposition https://appellatecases.courtinfo.ca.gov/search/case/disposition.cfm?dist=0&doc_id =3046276&doc_no=S285007&request_token=OCIwLSEnXkw4WyBNSCNdSEN IUFg0UDxTKyNORzpSTDtPCg%3D%3D .)[2] Since the state courts' adjudication of the layoff's legality is now final, plaintiff cannot continue to litigate the layoff issue in this action. The judgment in favor of defendants as to all claims, or portions of claims, arising from plaintiff's layoff, must be affirmed.

B. **The Evidence Was Undisputed That Defendants Grier, Khandelwal, Martin, and Fraser Did Not Participate in the Decision to Lay Plaintiff Off**

Defendant Kevin Grier is the current Superintendent of LPJUSD. Grier took over as Superintendent in July 2021, after Lisa Fraser retired. By the time Grier joined the District, the Board had already adopted Resolution No. 21-XII on

---

[2] Defendants request that this Court take judicial notice of the actions taken by the Santa Clara Superior Court (denying plaintiff's petition for administrative mandate), the Sixth District Court of Appeal (affirming the Superior Court's judgment), and the California Supreme Court (denying review). (See *Carroll v. Dutra* (9th Cir. 2014) 564 F. App'x 327, 328 (granting parties' requests for judicial notice "set forth in their briefs").)

February 10, 2021, approving the procedure for determining the order of seniority of the District's employees during the layoff process (1 SER 92-93); the Board had also already adopted Resolution No. 21-VIV on March 10, 2021, recommending a reduction in particular kinds of services (1 SER 95-96); and the ALJ had already issued the decision recommending plaintiff's layoff on May 3, 2021. (1 SER 16-32.) Even plaintiff admits that Grier was not Superintendent at the time plaintiff was laid off (1 SER 73 (lns. 18-24)), was not employed at the District at the time plaintiff was laid off (1 SER 73 (ln. 25) – 74 (ln. 2)), and was not employed at the District at any time between the date plaintiff was hired by the District and the date plaintiff was laid off (1 SER 74 (lns. 3-9)). As a matter of law, no person can be held liable under section 1983 unless he or she personally participates in the deprivation of the plaintiff's rights. (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 676 ("Because vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").) Because Grier did not personally participate in the layoff decision, he cannot be liable for any constitutional claim arising from that decision.

Defendant Charlotte Khandelwal is a current member of the LPJUSD Board of Trustees. However, Khandelwal did not join the Board until *after* the layoff resolutions had been adopted. (1 SER 77 (lns. 5-11).) In particular, plaintiff

11

conceded that Khandelwal was not on the Board at the time that the Board adopted Resolutions 21-XII (1 SER 78 (lns. 3-7)) and 21-XIV (1 SER 78 (lns. 8-11).) Therefore, Khandelwal cannot be liable for any constitutional claim arising from the layoff decision, which predated her membership on the Board.

Defendant Billy Martin is the former principal of the school, and defendant Lisa Fraser is the former Superintendent of LPJUSD. Neither Martin nor Fraser was a member of the Board, at any time. The layoff was effected by means of two legislative actions adopted by the Board: Resolution No. 21-XII on February 10, 2021, approving the procedure for determining the order of seniority of the District's employees during the layoff process (1 SER 92-93); and Resolution No. 21-VIV on March 10, 2021, recommending a reduction in particular kinds of services (1 SER 95-96). Because neither Martin nor Fraser had the power to adopt the layoff resolutions or the authority to rescind the resolutions following adoption by the Board, they cannot be liable for any constitutional claim arising from the Board's layoff decision.

In his opposition to the summary judgment motion, plaintiff characterized Fraser as "the architect[ ] of Kissner's layoff." (2 ER 88 (lns. 2-3).) However, the only evidence plaintiff cited in support of this assertion is Fraser's testimony that, as Superintendent, her job was "to make sure that we follow the process." (*Id.* (citing 2 ER 137 (lns. 7-13).) Making sure that the District "follow[s] the process" is a far cry

from deciding which particular kinds of service to eliminate. The latter decision was made exclusively by the Board, when it adopted the layoff resolutions. Because plaintiff presented no evidence that Fraser participated in the adoption of those resolutions or had the authority to override them, she cannot be liable for plaintiff's layoff.

Finally, plaintiff's opposition to summary judgment argued Martin is liable for the layoff based on his response to a hypothetical question. During the administrative hearing on plaintiff's challenge to the layoff, plaintiff's counsel asked Martin if plaintiff "could teach 6th grade math and science in that core block," if he were still employed by the District. (2 ER 165 (lns. 5-6).) Martin responded that plaintiff "could" teach 6th grade math and science, but that "would not support [Martin's] core vision of the 6th grade model." (*Id.* (lns. 7-8).) Regardless of how Martin answered this hypothetical question, however, it did not change the fact that *plaintiff was laid off as a result of the Board's adoption of the layoff resolutions*. There is no evidence that the Board adopted the layoff resolutions in order to effectuate Martin's "core vision of the 6th grade model." No reasonable inference can be drawn from this response to a hypothetical question, on which a reasonable fact finder could conclude that Martin personally participated in the layoff decision. Therefore, summary judgment was properly granted in favor of Martin, as well.

**C.**   **As He Did in the District Court, Plaintiff Again Misstates the Nature of Reductions in Force under the Education Code**

As he did below, plaintiff again argues that the layoff was improper or pretextual because the position of six grade math teacher was never eliminated. However, this argument is based on a fundamental misstatement of how reductions in force work under California law. The Education Code provides that a school district may reduce its certificated staff because of a decision *by the school board* to reduce or discontinue a particular kind of service ("PKS"). (Ed. Code, § 44955, subd. (b); *San Jose Teachers Ass'n v. Allen* (1983) 144 Cal.App.3d 627, 631.) Classroom teaching *of any subject*, *regardless of grade level*, is recognized as a particular kind of service which can be reduced to the minimum level required by law. (*San Jose Teachers Ass'n v. Allen*, *supra*, 144 Cal.App.3d at pp. 637-638 ("a particular kind of service includes a service or curricular offering which cannot be eliminated, but can be reduced to the minimum level required by law").) "As long as there is a change in the method of teaching or in the particular kind of service in teaching a subject, a particular kind of service provided in excess of any statutorily mandated minimum can be reduced or eliminated pursuant to section 44955." (*Id.* at p. 637.)

In *Zalac v. Governing Bd. of Ferndale Unified Sch. Dist.* (2002) 98 Cal.App.4th 838, 854, the school board determined that it was necessary to reduce or eliminate certain particular kinds of services and that as a result it was necessary

14

to decrease the number of certificated employees of the district. The petitioner, a kindergarten teacher, challenged her layoff by arguing, in part, that the district made no reduction in a PKS because at the time of the hearing no determination had been made as to the number of kindergarten classes that would be taught in the following year, and subsequent developments had shown that there would still be two kindergarten classes, the same number as when the petitioner had been employed. In rejecting her argument, the court held:

> A school district facing an anticipated unbalanced budget has a variety of means of meeting its financial problems: It may, for example, reduce the number of permanent and probationary teachers pursuant to section [44955].… In PKS cases the determination of the amount by which a service is to be reduced is the determination of the number of positions to be eliminated. A school board may reduce services by determining that proffered services shall be reduced in extent because fewer employees are made available to deal with the pupils involved.

(*Id.* at pp. 853-854 (quotes and cites omitted).) Whether by larger classes, regrouping of other classes, or otherwise, where there is a PKS reduction, layoff is authorized under section 44955. (*Id.* at p. 854.)

In this case, the undisputed evidence clearly established that the Board adopted Resolution No. 21-XIV, approving the "reduction or elimination of particular kinds of service." (1 SER 95-96.) In particular, the Board resolution eliminated 4.0 full-time equivalent ("FTE") positions of grades K-8 classroom teaching, in accordance with Education Code, section 44955. (*Ibid.*) It was not necessary that the District eliminate the position of sixth grade math teacher in order

15

for the layoff to comply with California law. Rather, the Board properly exercised its legislative authority to reduce PKS in the form of 4.0 FTE of classroom teachers. Indeed, as detailed above, the Board's layoff resolutions have since been *upheld* as lawful by the California state courts, over plaintiff's objections.

## D. All of the Defendants Who Participated in the Layoff Are Entitled to Absolute Legislative Immunity

As detailed above, the layoff was effected by means of the Board's adoption of two legislative resolutions. Because the adoption of a reduction in force is inherently legislative in character, any and all defendants who participated in the layoff decision are entitled to absolute legislative immunity. Therefore, summary judgment was properly granted in favor of defendants as to all claims, or portions of claims, arising from the layoff.

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (*Bogan v. Scott-Harris* (1998) 523 U.S. 44, 54 (quoting *Tenney v. Brandhove* (1951) 341 U.S. 367, 376).) Whether an action is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." (*Ibid*.) "The privilege of absolute immunity would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." (*Id.* (quotes and brackets

16

omitted).) "[I]t simply is not consonant with our scheme of government for a court to inquire into the motives of legislators." (*Id.* at p. 55 (quotes omitted).)

The Supreme Court's decision in *Bogan* dictates that the reduction in force decision in this case was legislative in nature, and therefore, absolute legislative immunity applies in this case. The *Bogan* case arose from a similar internal dispute within a local government entity. Janet Scott-Harris was employed by the City of Fall River, Massachusetts, as administrator of the city's Department of Health and Human Services (DHHS). (*Id.* at p. 46.) Scott-Harris brought termination charges against a subordinate employee for allegedly making racial and ethnic slurs about her colleagues. (*Ibid.*) The subordinate used her political connections with members of the City Council to fight the termination, and ultimately, the Mayor, Daniel Bogan, substantially reduced the charges against the subordinate. (*Id.* at p. 47.)

While the charges against the subordinate were pending, Bogan prepared a budget proposal for the following fiscal year, calling for the elimination of DHHS, which would result in Scott-Harris being laid off. (*Ibid.*) The City Council approved an ordinance eliminating DHHS, and Bogan signed the ordinance into law. (*Ibid.*)

Scott-Harris alleged that the elimination of her position violated her rights to equal protection and free speech, as the decision was motivated by racial animus and a desire to retaliate against her for exercising her First Amendment rights in filing the complaint against the subordinate. (*Ibid.*) However, the Supreme Court held that

17

the city councilmembers and the Mayor were all protected by absolute legislative immunity, and therefore, Scott-Harris's claims were barred.

"[U]nlike the hiring or firing of a particular employee," the "termination of a position" has "prospective implications that reach well beyond the particular occupant of the office." (*Id.* at p. 56.) Thus, the Supreme Court held that the ordinance eliminating DHHS "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." (*Id.* at pp. 55-56.) The Court held that the alleged unconstitutional motives for the ordinance could not even be taken into account. Because the elimination of a position is legislative in nature, absolute immunity applies, irrespective of the alleged motive.

The district court applied the four factors from *Kaahumanu v. County of Maui* (9th Cir. 2003) 315 F.3d 1215, in concluding that the Board's adoption of the layoff resolutions was legislative in nature. The first *Kaahumanu* factor is "whether the act involves ad hoc decisionmaking, or the formulation of policy." (*Id.* at p. 1220.) Because the resolutions "involved a District-wide reduction to 'particular kinds of service' at the K-8 level" (1 ER 34 (lns. 16-17)), the district court concluded that the resolutions "that effectuated the layoff were not ad hoc." (1 ER 33 (ln. 19).) The second factor is "whether the act applies to a few individuals, or to the public at large." (315 F.3d at p. 1220.) Although the layoff was "felt most acutely by the

18

impacted teachers," the district court held that the reduction in force (impacted all of the students and families in the school district." (1 ER 34 (lns. 19-21).) Furthermore, as discussed above, the PKS that was reduced was K-8 classroom teachers, thus, the entire teaching force of the school district was affected. The district court also noted that neither of the resolutions mentioned Kissner. (*Id.* (lns. 21-25).) It therefore concluded that "the actions at issue did not only apply to a few individuals," within the meaning of factor two. (*Id.* (ln. 19).) The third factor is "whether the act is formally legislative in character." (315 F.3d at p. 1220.) The district court observed that the layoff was effectuated through the passage of two formal legislative resolutions (1 ER 34 (ln. 27) – 35 (ln. 2)) and also noted plaintiff's concession "that eliminating a position is 'clearly a legislative act.'" (1 ER 35 (lns. 3-13).) The district court also relied on the California law, discussed above, pertaining to reductions of PKS. (*Id.* (lns. 14-25).) The court therefore concluded that passing the layoff resolutions "is the kind of legislative act the Education Code envisioned." (*Id.* (lns. 24-25).) Finally, the fourth factor is "whether it bears all the hallmarks of traditional legislation." (315 F.3d at p. 1220.) An act bears all the hallmarks of traditional legislation where it reflects "'a discretionary, policymaking decision implicating the budgetary priorities of the [public entity] and the services the [entity] provides to its constituents.'" (*Id.* (quoting *Bogan v. Scott-Harris*, *supra*, 523 U.S. at p. 56).) The district court cited Resolution No. XII, in which the Board

"was explicitly trying to effectuate a 'reduction of the number of certificated employees for' the upcoming school year, 'solely on the basis of the needs of the District and the students.'" (1 ER 36 (lns. 1-4).) The court noted that plaintiff had presented "no evidence that the Board was not truly motivated by budgetary concerns." (*Id.* (fn. 40).) The court also observed that "schooling is one of the quintessential services a [school district] 'provides to its constituents.'" (*Id.* (lns. 10-12).) Therefore, the court correctly concluded that the two layoff resolutions "bear all the hallmarks of traditional legislation." (1 ER 35 (lns. 27-28).)

Furthermore, "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." (*Id.* at p. 55.) For example, in *Bogan*, *supra*, the Mayor's acts of proposing the budget to the city council which eliminated DHHS and signing the ordinance into law were both protected, because they were "integral steps in the legislative process." (*Ibid*.) Therefore, even if there were a dispute of fact regarding Martin or Fraser's (or any other defendant's) participation in the layoff by proposing the layoff criteria to the Board, they are each entitled to absolute legislative immunity to the same extent as the Board member defendants are.

Finally, legislative immunity bars *all* claims under section 1983 – not just claims for damages. (*Schmidt v. Contra Costa Cnty.* (9th Cir. 2012) 693 F.3d 1122, 1132.) Therefore, even plaintiff's claims for injunctive relief are barred to the extent

they arise from the layoff. The district court therefore correctly granted summary judgment as to all claims for damages and injunctive relief which arise from the decision to lay plaintiff off from his employment.

## IV. *MOUNT HEALTHY* IS THE CONTROLLING STANDARD FOR PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

In *Mount Healthy City School District Board of Education v. Doyle* (1977) 429 U.S. 274, a teacher alleged that a school district's decision not to rehire him was made in retaliation for the teacher's First Amendment protected speech. The Supreme Court in *Mount Healthy* held that the teacher had to "show [1] that his conduct was constitutionally protected, and [2] that his conduct was a 'substantial factor' [or a] 'motivating factor' in the Board's decision not to rehire him"; then, if he did so, the school district, to defeat liability, would have to show [3] "by a preponderance of the evidence that it would have reached the same decision… even in the absence of the protected conduct." (*Id.* at p. 287.)

*Mount Healthy* is "the default rule for First Amendment retaliation claims." (*Bello-Reyes v. Gaynor* (9th Cir. 2021) 985 F.3d 696, 702.) Therefore, the only relevant question for this Court to decide on appeal is if there is a genuine dispute as

to whether plaintiff would have been terminated even if he had not engaged in protected activity.[3]

## V. THE EVIDENCE IS UNDISPUTED THAT LPJUSD WOULD HAVE TERMINATED PLAINTIFF DUE TO HIS EVIDENT UNFITNESS FOR DUTY, IRRESPECTIVE OF ANY PROTECTED ACTIVITY

A school district's termination of a permanent certificated is strictly governed by statutory procedures set forth in the Education Code. Pursuant to Education Code, section 44932, a permanent employee may not be terminated except for one or more of the following causes: (1) immoral conduct; (2) unprofessional conduct; (3) criminal acts; (4) dishonesty; (5) unsatisfactory performance; (6) evident unfitness for service; (7) physical or mental unfitness; (8) persistent violation of or refusal to obey applicable laws and regulations; (9) conviction of a felony or a crime of moral turpitude; (10) indoctrinating students to support communism or advocating or being a member of the Communist Party or of an organization which advocates the overthrow of the federal and/or state governments ; or (11) alcoholism or other drug abuse. (*Id.*, subd. (a).) If the school district believes one or more of the statutory causes supports an employee's termination, the employee must be served with a written statement of charges, specifying "instances of behavior and the acts or

---

[3] Plaintiff's AOB also briefly addresses interest balancing under *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Ill.* (1968) 391 U.S. 563, 572. As plaintiff noted, however, *Pickering* is not a defense that was raised in the district court.

omissions constituting the charge so that the employee will be able to prepare his or her defense." (Ed. Code, § 44934, subd. (c).) The employee must also receive a notice of the school district's intention to dismiss or suspend him or her." (*Id.*, subd. (e).) In this case, LPJUSD served plaintiff with a notice of intent to dismiss, as well as a written statement of charges, on February 12, 2021. (2 SER 138-392.) The 19-page statement of charges alleged immoral conduct (Ed. Code, § 44932, subd. (a)(1)), unprofessional conduct (*id.*, subd. (a)(2)), unsatisfactory performance (*id.*, subd. (a)(5)), evident unfitness for service (*id.*, subd. (a)(6)), and persistent violation of or refusal to obey applicable laws and regulations (*id.*, subd. (a)(8)). (2 SER 141.) None of the charges against plaintiff pertained to his political advocacy or any other activity protected under the First Amendment.

On March 25, 2021, plaintiff and his legal counsel appeared before the LPJUSD Board of Education, to present plaintiff's responses to the charges against him. (1 SER 8-13.) At the same meeting, the Board also received written correspondence from members of the school community advocating for and against the proposed termination of plaintiff. (1 SER 12-13.) After considering the charges and plaintiff's responses to them, the Board voted unanimously to move forward with plaintiff's termination. (1 SER 10.)

Plaintiff requested an administrative review hearing regarding his termination. When a certificated employee who has been served with a notice, pursuant to

Education Code, section 44934, of the governing board's intention to dismiss or suspend him, and the employee requests a hearing, the governing board is divested of the authority to proceed with the employee's termination. Instead, pursuant to Education Code, section 44943, the governing board must either "(a) rescind its action, or (b) schedule a hearing on the matter." If the board does not rescind the termination and instead allows the matter to proceed, the authority to decide whether or not statutory cause supports termination is vested in a Commission on Professional Competence. (Ed. Code, § 44944, subd. (c)(1).) The members of the Commission on Professional Competence must, by law, have no prior relationship with the employee, the school district, or the events at issue. (*Id.*, subd. (c).)

After the administrative hearing, the Commission on Professional Competence is required to "prepare a written decision containing findings of fact, determinations of issues, and a disposition." (*Id.*, subd. (d)(1).) The disposition must be one of the following: (a) that the employee should be dismissed; (b) that the employee should be suspended for a specific period of time without pay; or (3) that the employee should not be dismissed or suspended. (*Ibid.*) Subdivision (d)(4) explicitly provides: "The decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board of the school district."

In this case, after a full evidentiary hearing, at which witnesses testified and documentary evidence was presented, the Commission on Professional Competence

24

issued a 38-page written decision. (1 SER 33-70.) The Commission's disposition was as follows: "Respondent David Kissner is dismissed from his position as a permanent certificated employee of the Loma Prieta Joint Union School District due to evidence unfitness for service." (1 SER 70.) Despite the fact that his termination was ordered by a disinterested Commission on Professional Competence, based on its finding that plaintiff was unfit for service as a teacher, plaintiff contends in this case that the true reason for his termination was defendants' desire to retaliate against plaintiff for his political advocacy. The undisputed evidence does not support plaintiff's First Amendment retaliation claim.

A. **Plaintiff's Cat's Paw Theory of Retaliation Was Properly Considered and Rejected by the District Court**

As noted above, the *Mount Healthy* analysis involves three steps. Defendants did not challenge plaintiff on the first step. As the district court observed, opposing student walkouts in support of gun control and opposing a parcel tax ballot measure are constitutionally protected activities. However, plaintiff failed to meet his burden under the second step to establish that his protected activity was a substantial or motivating factor in plaintiff's termination.

As a matter of law, none of the defendants were the final decisionmakers with regard to plaintiff's termination. Pursuant to Education Code, section 44944, the authority to order plaintiff to be terminated, suspended, or neither terminated nor

suspended was vested exclusively in the Commission on Professional Competence. Plaintiff conceded that his termination did not take place until the Commission issued its written decision on December 7, 2021, finding that there was statutory cause for termination. (1 SER 85 (lns. 10-14).) Instead, plaintiff is advancing a "cat's paw" theory, under which the Commission on Professional Competence was unwittingly effectuating the retaliatory intent of the defendants. This theory is not supported by the evidence, however, as the Commission actually considered, and explicitly rejected, plaintiff's theory of retaliation.

Contrary to plaintiff's assertions in the AOB that defendants' arguments were "unique," "exotic," and "improbable," the "cat's paw" doctrine is well-established in employment jurisprudence. (See, e.g., *Staub v. Proctor Hosp.* (2011) 562 U.S. 411, 419-420; *Poland v. Chertoff* (9th Cir. 2007) 494 F.3d 1174, 1182-1183.) In *Gilbrook v. City of Westminster* (9th Cir. 1999) 177 F.3d 839, this Court applied the "cat's paw" theory to a First Amendment retaliation claim, explaining that "when a [decisionmaker] makes a nonretaliatory decision…, such a decision does not automatically immunize a [nondecisionmaker] against liability for her retaliatory acts, which led ultimately to the dismissal." (*Id.* at p. 854.) Thus, with proper evidence, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would

cause others to inflict the constitutional injury." (*Johnson v. Duffy* (9th Cir. 1978) 588 F.2d 740, 743-744.) To prove retaliation under a "cat's paw" theory, a plaintiff must proffer admissible evidence not only that the defendant "set in motion" the ultimate decision to terminate the plaintiff but also that he or she "influenced or was involved in the decision or decisionmaking process." (*Cafasso, U.S. ex rel. v. Gen. Dyn. C4 Sys., Inc.* (9th Cir. 2011) 637 F.3d 1047, 1061 (citing *Poland v. Chertoff*, *supra*, 494 F.3d at p. 1182).) Plaintiff alleges just such a theory of liability against defendants: even though, as a matter of law, defendants were not the ultimate decisionmakers, plaintiff seeks to hold them liable for setting the termination in motion with retaliatory intent.

As the district court correctly concluded, however, the evidence does not support plaintiff's "cat's paw" theory. "A 'cat's paw' is a 'dupe' who is 'used by another to accomplish his purposes." (*Brnovich v. DNC* (2021) 594 U.S. 647, 689 (citing Webster's Dictionary).) "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." (*EEOC v. BCI Coca-Cola Bottling Co. of L.A.* (10th Cir. 2006) 450 F.3d 476, 484.) The undisputed evidence clearly establishes that the Commission on Professional Competence was not "duped" into unwittingly carrying out the alleged retaliatory intent of the defendants. On the contrary, the

27

Commission specifically considered, and explicitly rejected, plaintiff's claim of retaliation and disclaimed any retaliatory motive. (1 SER 67-70 (¶¶ 20-27).)

The Commission dealt with plaintiff's allegations of retaliation head on. It began by summarizing the argument: "Respondent contends that the District's effort to dismiss him from employment constitutes unlawful retaliation against him for exercising his rights under the California and United States Constitutions to express his personal views and to participate in his community's political life." (2 SER 67 (¶ 20).) However, the Commission observed that "[t]he totality of evidence" presented in the administrative hearing "does not establish an effort by the Board or by District administrators to discipline or to dismiss respondent because of his opinions or his political activity." (1 SER 69 (¶ 25).) The Commission then indicated that it had concluded that its factual findings "justify respondent's dismissal from employment regardless of his opinions or his participation in political activity within the District." (*Id.* (¶ 26).) Furthermore, the Commission concluded: "The Commission does not direct the District to dismiss respondent from employment to punish him, or to retaliate against him for having exercised his rights to express his opinions and to participate in the community's political life. The Commission directs the District to dismiss respondent from employment because a preponderance of the evidence before the Commission establishes his evident unfitness to continue

28

teaching District students." (1 SER 69-70 (¶ 27).) Thus, the undisputed evidence simply does not support plaintiff's "cat's paw" theory of liability.

The concerns plaintiff expresses in the AOB that every public employee who requests a pre-termination administrative hearing will be barred from pursuing a retaliation claim are overblown. The Commission in this case was actually presented with a retaliation defense to termination, considered it, and rejected it. It concluded that, notwithstanding any alleged retaliatory motive for initiating the termination proceedings, the evidence in the administrative record established that plaintiff was unfit for service. In contrast, an employee who could present admissible evidence that the administrative hearing officers who decided his fate were unwittingly duped into effectuating a nondecisionmaker's retaliatory motive might well raise a triable issue of fact as to a "cat's paw" theory. Plaintiff's evidence in this case simply was not sufficient to raise a triable dispute on that issue. On the contrary, the evidence in this case is undisputed that the Commission members were not "duped" into carrying out defendants' alleged retaliatory motive.

### B. Plaintiff Did Not Present Admissible Evidence of Defendants' Retaliatory Intent

In addition to failing to present evidence that the Commission members were carrying out retaliation on behalf of the defendants, plaintiff also did not present any admissible evidence that any of the defendants had a retaliatory intent in the first

place. In his opposition to summary judgment, plaintiff asserted that the defendants[4] were in favor of the parcel tax measure, as they believed it would help LPJUSD meet its budget shortfall. (1 ER 69.) Plaintiff also claimed in the opposition brief that "The District was aware of his efforts to publicly oppose the measure." (*Id.* (lns. 12-13).) In support, plaintiff cited defendant Fraser's testimony that plaintiff "made that very clear that that was his intention was to be – to promote opposition." (See *id.* (lns. 12 (citation equates to 2 ER 162 (lns. 3-6))).) Plaintiff also cited his own testimony that he told Fraser in December 2019 that he intended to oppose the parcel tax. (See *id.* (lns. 13-14 (citation equates to 2 ER 194 (lns. 11-12))).) However, plaintiff did not present any evidence that any of the defendants (let alone all of them) were so upset by plaintiff's opposition to a parcel tax ballot measure that they decided to fire him over it. Indeed, plaintiff presented no evidence at all that any of the defendants bore him ill will *because of* his opposition to the parcel tax. Evidence that defendants merely knew that plaintiff opposed the parcel tax is not evidence that any of the defendants sought to terminate him because of it.

As the district court noted, even if plaintiff had presented evidence that the defendants did not like him (which he did not present), that would not be sufficient to meet his prima facie burden to establish retaliatory intent behind his termination. In *Erwin v. Ramos* (9th Cir. 2022) 2022 WL 541188, there was evidence that the

---

[4] Presumably excluding Grier who was not even employed at the District at the time.

defendants considered the plaintiff "bottom-sucking" and "evil," and the record was "replete with evidence of hostility" toward the plaintiff. (*Id.* at p. *1.) However, there was no evidence "that the defendants disliked Erwin *because of* his protected speech." (*Id.* (emphasis in original).) This Court therefore affirmed summary judgment in favor of the defendants as to Erwin's First Amendment retaliation claim. (*Ibid.*) Similarly, because plaintiff presented no evidence that any of the defendants disliked him *because of* his political advocacy, there is no basis on which a reasonable jury could draw an inference that defendants' non-existent animus was a substantial or motivating factor for plaintiff's termination.

### C.  Plaintiff's Purported Evidence of Pretext Was Insufficient to Raise a Triable Issue of Fact as to Retaliatory Motive

As the district court correctly observed, "the record is replete with evidence of Kissner's errors in judgment, refusals to abide by school policy, and insubordination, escalating in late 2020 and early 2021." (1 ER 21 (lns. 2-4); see also 1 ER 21 (ln. 4) – 22 (ln. 23) (compiling evidence from record).) Plaintiff was issued written letters of reprimand in October 2018 (2 ER 97-98), March 2020 (2 ER 218-219), and April 2020 (2 ER 221). The 2018 letter warned that "should there be future incidents wherein students are negatively impacted by your use of ill-advised classroom practices and/or protocols, further corrective action may result, up to and including possible termination of your employment." (2 ER 98.) In August 2020,

plaintiff received an email from then-Superintendent Fraser about attending trips in conflict with school hours. (2 SER 313.) Plaintiff responded by refusing to discuss his whereabouts during work hours, indicating that he does not "share details of [his] personal life with school administrators." (2 SER 315.) In September 2020, then-Principal Martin emailed plaintiff regarding parent concerns over plaintiff's advertisement of a non-school-sanctioned math program. (2 SER 318-329.) Among other concerns, parents indicated plaintiff was incorrectly informing students they were not required to attend regular school classes if they attended plaintiff's personal tutoring sessions. (*Ibid*.) This issue continued into October 2020, when plaintiff responded to Martin's inquiries, in an indisputably insubordinate manner: "If you would like to clarify how YOUR specific alternative algebra assignments are ok for these kids, but MINE somehow are not, please put that in writing as well…. If you would like to continue this conversation, I proposed that we have a meeting. I will be represented by an attorney…. Your email below lists a lot of things… but you know what is conspicuously missing? Any mention of what is actually good for these kids. It's clearly not even a consideration. If you want to make any headway with me…" (2 SER 325-326.) The insubordination continued: "YES I have an ideas of how to best meet the educational needs of these students. I am currently doing just that. With absolutely no thanks at all to district leadership." (2 SER 329.) Throughout October, November, and December 2020, Kissner received numerous

complaints about tardy grading affecting parents' ability to stay on top of students' performance. (2 SER 337-350, 2 SER 361-367.) In December 2020, Martin issued plaintiff a written reprimand due to his "continued inability to provide timely progress reports regarding grades to [his] students and families." (2 SER 369-370.) The reprimand also addressed "inappropriate, disrespectful, and unprofessional" email communications between plaintiff and parents. (*Ibid*.) Parent complaints about Kissner persisted into late January 2021. (2 SER 374-383.) All of these matters were specifically addressed in the statement of charges on which plaintiff's termination was based. (2 SER 138-392.) It was therefore plaintiff's burden to demonstrate that the proffered reasons for his termination were pretextual and that the true reason was retaliation.

Plaintiff first contends that the temporal proximity between the parcel tax ballot measure's failure to pass in November 2020 and the notice of intent to terminate in February 2021 constitutes circumstantial evidence of pretext. As a matter of law, however, evidence of temporal proximity "is ordinarily insufficient to satisfy the… burden to provide evidence of pretext." (*Hooker v. Parker Hannifin Corp.* (9th Cir. 2013) 548 F. App'x 368, 370.) Furthermore, plaintiff's temporal proximity argument is woefully deficient in light of the ample evidence of legitimate grounds for termination. For example, plaintiff claims that his opposition to the parcel tax was made known to defendants in December 2019 – more than a year

33

before the termination process was initiated. During that time, Fraser and Martin made efforts to work with plaintiff and to get him to improve his performance, but plaintiff refused. Fraser and Martin attempted progressive discipline by issuing written warnings and counseled plaintiff on improving his performance. Plaintiff's insubordination and failure to comply with school rules and procedures continued to build throughout the latter part of 2020 and into early 2020. These events were much closer in time to the notice of intent to terminate than the alleged political disagreement over the parcel tax that had been ongoing for more than a year by that time.

Plaintiff also contends that pretext can be found based on the District's alleged use of a recently changed Board Policy as grounds for his discipline. However, this argument misstates the evidence. In reality, the statement of charges was based on the pre-existing, 2012 version of the Board Policy, not the version that was updated along with several other Board Policies in 2020. (See 2 SER 165-167 (May 9, 2012, version of BP 4119.21 attached to statement of charges).) And in any event, as the district court correctly observed, the conduct for which plaintiff was reprimanded was indisputably inappropriate, under either version of the Board Policy. (1 ER 20 (fn. 19) (citing, e.g., comment about Asian student's "slitty eyes").) Thus, the update to the Board Policy a year before the notice of intent to terminate does not create a triable issue of fact on pretext, either.

Next, plaintiff complains that the District relied on "stale allegations of misconduct" from 2016 and 2018. However, this entirely ignores the misconduct from 2020 and 2021 that was cited in the statement of charges. Moreover, as the district court again correctly observed, the 2018 investigation of the 2016 incident had resulted in the 2018 disciplinary letter, in which plaintiff was warned that future behavior that negatively impacted students could result in further discipline, up to and including termination. This background provided important context for the termination, as the misconduct in 2020 and 2021 came after the prior warning.

Finally, plaintiff contends that the District's "conflicting" reasons for his layoff evidence pretext. First, as detailed above, the layoff is not properly before the Court on appeal, as it has been conclusively adjudicated in state court, and plaintiff has waived any appeal from the summary judgment as to all claims arising from the layoff. Even if the layoff could properly be considered, however, the reasons for the layoff were not inconsistent or conflicting. Plaintiff again misrepresents how reductions in force work when discussing the fact that the six grade core model did not reduce the total number of FTE positions needed to teach six graders. That makes no difference. The 4.0 FTE reduction in force that was approved by the Board was across all K-8 classroom teaching positions. Clearly, reducing the total number of classroom teachers employed by the District was rationally related to addressing the budget shortfall. The District's reasoning for the layoff therefore was not arbitrary

or capricious such as would create a triable issue of fact regarding pretext for the termination.

**D.** **Even if Plaintiff Had Raised a Triable Issue on Retaliatory Motive, the First Amendment Claim Fails under Step Three of the *Mount Healthy* Analysis Because the Commission's Reasons for Ordering Termination Were Non-Retaliatory**

Even if plaintiff had presented evidence sufficient to raise a triable issue of fact under step two of the *Mount Healthy* analysis, however, the summary judgment must be affirmed under step three. The Commission on Professional Competence was, by law, the ultimate decisionmaker. Not only were its members not "duped" into going along with the defendants' alleged retaliatory motive, but the Commission actually offered its own non-retaliatory grounds for recommending termination. The Commission found that plaintiff's conduct had had an adverse impact on students and fellow teachers. (1 SER 65 (¶¶ 11-12).) In particular, the Committee highlighted the "rancor" between plaintiff and his superiors and the "damage to the District's educational community," as a result of what it described as plaintiff's "conflict-seeking behavior." (*Id.* (¶ 12).) The Commission also described plaintiff's "steadfast refusal to share information with Fraser and to follow Martin's instructions," which "exacerbated uncertainty and anxiety for Fraser and Martin as well as for parents and students." (1 SER 66 (¶ 14).) In addition, the Commission deemed plaintiff's

"dishonesty" an "aggravating factor" (1 SER 66 (¶ 15)) and placed blame on plaintiff for his "insistence on prolonging conflicts, and his refusal to accept partial victories." (*Id.* (¶ 17).) Based on the evidence presented to it, the Commission foresaw that "if the District retained respondent as a teacher, respondent would continue to stoke conflict within the District and to resist any efforts by District administrators to control or supervise his teaching." (1 SER 66-67 (¶ 18).) Most importantly, in rejecting plaintiff's claim of retaliation, the Commission members made clear that they were not recommending plaintiff's termination due to his political activities, but rather, because the Commission concluded that "all evidence in this matter shows that after significant conflict within the District in March and April 2018, the District in October 2018 offered respondent the opportunity to save face and move on. Respondent emphatically rejected this opportunity. Instead, between October 2018 and the hearing, respondent made repeated efforts to reopen and revisit the 2018 conflicts. He also responded to new potential and minor conflicts by amplifying them into major conflicts; he became increasingly insubordinate and uncommunicative regarding school activities, even during the novelty and uncertainty of the COVID-19 pandemic; and he continued to exercise very poor judgment outside school in circumstances involving his supervision of teenagers." (1 SER 69 (¶ 25).)

Thus, not only was the evidence undisputed that the Commission members did not have a retaliatory animus toward plaintiff, it was also undisputed that the Commission members would have recommended plaintiff's termination even if plaintiff had never engaged in political activity. They explicitly said as much: "The Commission finds the matters stated… to justify respondent's dismissal from employment regardless of his opinions or his participation in political activity within the District. (1 SER 69 (¶ 26).) Therefore, even if there were a triable issue of fact regarding the defendants' motives under step two, there is no dispute that, under step three, the termination would have been ordered irrespective of plaintiff's political activity. Summary judgment was properly granted under *Mount Healthy*.

E. <u>**Plaintiff Is Misconstruing the District Court's "Probably Adequate" Comment and Blowing It out of Proportion**</u>

Finally, plaintiff places outsized focus on a single sentence in the district court's 35-page summary judgment ruling. After analyzing plaintiff's evidence and finding that it was insufficient to raise a triable issue as to retaliatory motive, the district court indicated that "Defendants' Commission-based argument is probably adequate." (1 ER 19 (ln. 8).) Plaintiff argues on appeal that the district court's use of the phrase "probably adequate" must demonstrate that the court was unconvinced or equivocal. This argument misconstrues the comment.

38

When the comment is considered in the proper context of the entire ruling, it is clear that the court was indicating the defendants' argument regarding the lack of evidence of retaliatory motive was "probably adequate," in and of itself, to merit summary judgment. Because the Commission members were the ultimate decisionmakers on termination, and they were not duped into carrying out defendants' alleged retaliatory motive, plaintiff failed to meet his burden on step two of the *Mount Healthy* analysis. The court then went on to analyze whether plaintiff had even presented evidence of the defendants' own retaliatory motives, whether through direct evidence or indirect pretext evidence. (1 ER 19 (ln. 19) – 20 (ln. 8).)

Most tellingly, the court then wrote: "But even if Kissner had met his burden on the second step, Defendants would still escape liability if they could demonstrate 'by a preponderance of the evidence that [they] would have reached the same decision… even in the absence of the protected conduct.'" (1 ER 20 (lns. 9-12) (quoting *Mount Healthy*).) Thus, it is clear the court was not using the phrase "probably adequate" to describe the legal merit of defendants' argument, but rather, to delineate the various grounds for summary judgment. Plaintiff's failure under step two was "probably adequate" to justify summary judgment, without reference to step three. But even once the court proceeded to step three of the analysis, it also concluded that summary judgment was merited on those grounds, as well.

## CONCLUSION

Plaintiff was afforded notice, a hearing before the Board, representation by counsel, the right to conduct discovery, and a full evidentiary hearing before an impartial Commission. The Commission concluded that the evidence in the administrative record supported statutory cause for termination under the Education Code, and it did so while explicitly rejecting plaintiff's contention of retaliation. There is no evidence on which a reasonable jury could find that retaliation for plaintiff's political activity was the true driving factor behind plaintiff's termination. The judgment should be affirmed.

Dated: July 24, 2024      /s/ Daniel S. Modafferi
                Counsel for Appellees

## STATEMENT OF RELATED CASES

Defendants are unaware of any related cases pending in this Court.


Dated: July 24, 2024                    /s/ Daniel S. Modafferi
                                        Counsel for Appellees

41

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 9,347 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: July 24, 2024
/s/ Daniel S. Modafferi
Counsel for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

Participants in the case who are registered ACMS users will be served by the ACMS system.

Dated: July 24, 2024

/s/ Daniel S. Modafferi
Counsel for Appellees

43