No. 24-1261

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DAVID M. KISSNER,

*Plaintiff-Appellant,*

v.

LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of California, San Francisco
No. 3:22-cv-00949-CRB
Hon. Charles R. Breyer

---

## SUPPLEMENTAL EXCERPTS OF RECORD
## [Volume 1 of 2, Pages 1 through 136]

---

Golnar J. Fozi (Cal. Bar No. 167674)
Daniel S. Modafferi (Cal. Bar No. 294510)
Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
Carlsbad, California 92008
Tel: 760-444-0039
Fax: 760-444-0130
Email: *gfozi@fdmattorneys.com*
        *dmodafferi@fdmattorneys.com*

Counsel for Appellees

1  William J. Becker, Jr., Esq. (SBN: 134545)
   Bill@FreedomXLaw.com
2  Jeremiah D. Graham, Esq. (SBN: 313206)
   JeremiahDGraham@gmail.com
3  **FREEDOM X**
   11500 Olympic Blvd., Suite 400
4  Los Angeles, California 90064
   Telephone: (310) 636-1018
5  Facsímile: (310) 765-6328
6
7  Counsel for *David M. Kissner*
8
                    **UNITED STATES DISTRICT COURT**
9                   **NORTHERN DISTRICT OF CALIFORNIA**

10 **DAVID M. KISSNER**,                    Case No. 22-CV-00949-CRB

11                                          **NOTICE OF VOLUNTARY DISMISSAL**
                        vs.                 **WITHOUT PREJUDICE OF STATE**
12                                          **CLAIMS AGAINST THE DISTRICT AND**
                                            **DISTRICT DEFENDANTS ONLY**
13 **LOMA PRIETA JOINT UNION SCHOOL**
   **DISTRICT**, et al.,
14                                           Hon. Charles R. Breyer
                        Defendants.
15

16     NOTICE IS HEREBY GIVEN that pursuant to Federal. R. Civ. P. 41(a), Plaintiff

17 voluntarily dismisses the following claims for relief ("CFR") **without prejudice** against

18 Defendants Loma Prieta Joint Union School District, Lisa Fraser, Kevin Grier, Billy Martin, Deana

19 Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian **ONLY**:

20
       CFR 2 (California Constitution Free Speech (Art. I, § 2));
21
22     CFR 4 (Defamation Per Se);

23     CFR 5 (False Light Invasion of Privacy);

24     CFR 6 (Public Disclosure of Private Facts);

25     CFR 7 (Discrimination and Retaliation for Engaging in Protected Activity (Cal. Lab. Code

26 §§ 98.6 & 1101));

27

28

                                         1

**1 SER 2**

1   CFR 8 (Discrimination and Retaliation for Engaging in Protected Activity (Cal. Lab. Code

2   §§ 98.6 & 1102));

3   CFR 9 (Wrongful Termination);

4   CFR 10 (Wrongful Termination in Violation of Public Policy);

5

6   CFR 11 (Whistleblower Retaliation (Cal. Lab. Code § 1102.5));

7   CFR 12 (Civil Harassment (Cal. Code Civ. Proc. § 527.6));

8   CFR 13 (Intentional Infliction of Emotional Distress);

9   CFR 14 (Negligence (Emotional Distress));

10  CFR 15 (Negligence);

11  CFR 16 (California Constitution Due Process (Art. I, § 7) **only**);

12  CFR 17 (California Constitution Equal Protection (Art. I, § 7) **only**); and

13  CFR 19 (Breach of Contract).

14

15  Date: June 9 2022                                    FREEDOM X

16

17                                        By:   /s/ William J. Becker, Jr.
                                                William J. Becker, Jr.
18                                              Attorneys for Plaintiff, David M. Kissner

19

20

21

22

23

24

25

26

27

28

2

William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018
Facsímile: (310) 765-6328

Counsel for *David M. Kissner*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID M. KISSNER**, <br><br> vs. <br><br> **LOMA PRIETA JOINT UNION SCHOOL DISTRICT**, et al., <br><br> Defendants. | Case No. 22-CV-00949-CRB <br><br> **NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF STATE CLAIMS AGAINST THE DISTRICT AND DISTRICT DEFENDANTS ONLY** <br><br> Hon. Charles R. Breyer |

NOTICE IS HEREBY GIVEN that pursuant to Federal. R. Civ. P. 41(a), Plaintiff voluntarily dismisses the following claims for relief ("CFR") **without prejudice** against Defendant Loma Prieta Joint Union School District **ONLY**:

CFR #3: Civil Rights Defamation (42 U.S.C. §1983); and

CFR #18: Civil Rights Conspiracy (42 U.S.C. § 1983)

Date: August 25, 2022                           FREEDOM X

                                  By:   /s/ William J. Becker, Jr.
                                        William J. Becker, Jr.
                                        Attorneys for Plaintiff, David M. Kissner

1  Golnar J. Fozi (Cal. Bar No. 167674)
Daniel S. Modafferi (Cal. Bar No. 294510)
2  Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
3  Carlsbad, California  92008
Tel: (760) 444-0039; Fax: (760) 444-0130
4  Email:   gfozi@fdmattorneys.com
            dmodafferi@fdmattorneys.com
5
Attorneys for Defendants,
6  Lisa Fraser, Kevin Grier, Billy Martin, Deana
Arnold, Ben Abeln, Ron Bourque, Charlotte
7  Khandelwal, and Erin Asheghian

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  DAVID M. KISSNER,                    **Case No.:  3:22-cv-00949-CRB**
                                         **Assigned to: Hon. Charles R. Breyer**
12          Plaintiff,
                                         **REQUEST FOR JUDICIAL NOTICE**
13     v.                                **IN SUPPORT OF DEFENDANTS**
                                         **LISA FRASER, KEVIN GRIER,**
14  LOMA PRIETA JOINT UNION              **BILLY MARTIN, DEANA ARNOLD,**
    SCHOOL DISTRICT, et al.,             **BEN ABELN, RON BOURQUE,**
15                                       **CHARLOTTE KHANDELWAL, AND**
                                         **ERIN ASHEGHIAN'S MOTION FOR**
16          Defendants.                  **SUMMARY JUDGMENT OR, IN**
                                         **THE ALTERNATIVE, PARTIAL**
17                                       **SUMMARY JUDGMENT**
18
                                         **Date:   July 28, 2023**
19                                       **Time:  10:00 a.m.**
                                         **Ctrm:  6**
20
                                         **Case Filed:  February 16, 2022**
21                                       **Trial Date:  None Set**
22

23        TO THE HONORABLE COURT, ALL PARTIES AND THEIR

24  COUNSEL OF RECORD:

25        Pursuant to Federal Rule of Evidence 201, defendants Lisa Fraser, Kevin Grier,

26  Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and

27  Erin Asheghian respectfully request that the Court take judicial notice of the following

28  documents, true and correct copies of which are filed concurrently herewith:

                                    1

1    Exhibit A – Resolution No. 21-XIV, adopted by the Loma Prieta Joint Union

2            School District Board of Trustees, on March 10, 2021

3    Exhibit B – Resolution No. 21-XIV, adopted by the Loma Prieta Joint Union

4            School District Board of Trustees, on March 10, 2021

5    Exhibit C – Minutes of the Loma Prieta Joint Union School District Board of

6            Trustees March 25, 2021, Special Board Meeting

7    Exhibit D – Statement of Decision in the Matter of the Reduction in Force of

8            David Kissner, dated May 3, 2021, issued by Danette C. Brown,

9            Administrative Law Judge, Office of Administrative Hearings,

10           OAH No. 2021040076

11   Exhibit E – Statement of Decision in the Matter of the Dismissal of David

12           Kissner, dated December 7, 2021, issued by Juliet E. Cox,

13           Katherine Everett, and Scott Guagliardo, Commission on

14           Professional Competence, OAH No. 2021050291

## AUTHORITY

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it… can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (FRE 201(b)(2).) Among these, courts may take judicial notice of legislative enactments and regulations issued by any public entity in the United States. (*Demos v. City of Indianapolis* (7th Cir. 2002) 302 F.3d 698, 706; *Long Beach Area Peace Network v. City of Long Beach* (9th Cir. 2009) 574 F.3d 1011, 1025, fn. 1 (judicial notice taken of city ordinance and definition of special events contained in administrative regulation).)

"The court… must take judicial notice if a party requests it and the court is supplied with the necessary information." (FRE 201(c)(2).) The above-referenced documents are true and correct copies of enactments of legislative and quasi-judicial bodies authorized by California law. Moreover, the records are relevant to defendants'

2

1    motion for summary judgment, as they establish the procedures by which plaintiff's

2    layoff and termination were effected.

3    Dated: June 23, 2023                         Fozi Dwork & Modafferi, LLP

4

5                                        By:     /s/ Daniel S. Modafferi

6                                                Golnar J. Fozi
                                                 Daniel S. Modafferi
7                                                Attorneys for Defendants,
                                                 Lisa Fraser, Kevin Grier, Billy Martin,
8                                                Deana Arnold, Ben Abeln, Ron Bourque,
                                                 Charlotte Khandelwal, and Erin
9                                                Asheghian

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

REQUEST FOR JUDICIAL NOTICE                              3:22-cv-00949-CRB

**1 SER 7**

**Board Members**
Deana Arnold, President
Ron Bourque, Vice-President
Ben Abeln, Member
Erin Asheghian, Member
Charlotte Khandelwal, Member

**Superintendent**
Lisa Fraser



## SPECIAL BOARD MEETING – BOARD OF TRUSTEES
### March 25, 2021 - Thursday
### Video/Teleconference Meeting

Per Executive Orders, this meeting with be conducted via video and telephonically. In compliance with the Executive Order, interested parties and members of the public will be able to view and participate in the opening of this meeting at 6:00 p.m. on Thursday, March 25, 2021.

**How to connect to the meeting**:
Zoom meeting invitation: https://us02web.zoom.us/j/89717303380?pwd=SUNaU0xsNVFORWZhUzNnTmZoYStZUT09
Meeting ID: 897 1730 3380 - Passcode: 986610 and/or live stream on the Loma Prieta School District YouTube channel at: "Loma Prieta School District March 25, 2021 Board Meeting" or via telephone: 408-335-5226.

**Public Concern**:
For this special board meetings, members of the public may submit concerns regarding the item described on the agenda by email to: e.bevans@loma.k12.ca.us or via telephone to 408-455-9371. Public concerns is limited to three minutes per person. **The chat feature has been disabled on this YouTube channel due to inappropriate postings intercepted by YouTube at the September 23, 2020 meeting.**

For disability related accommodations and translation services, please contact Eileen Bevans-Franks at e.bevans@loma.k12.ca.us at least one workday prior to the scheduled meeting.

### Mission Statement:
Loma Prieta Joint Union School District, a partnership of schools, parents and community, is committed to providing each student with optimal learning opportunities in a safe, stimulating and supportive environment so that each student can reach their full academic and social potential.

---

*We welcome you to this meeting. The public may ask questions relevant to agenda items at the time those are under consideration. While not required, we would appreciate it if you would identify yourself with your name and address when addressing the Board. Complete a red Public Comment Card to address the board during this board meeting. Complete a green Public Comment Card to request a written response from the board. Fifteen minutes are allowed for the Public to address the Board on an item that is not on the agenda during the opportunity for Public Comment. Speakers are asked to limit remarks to three minutes. The Board will take no action at this time. The Board may put the issue on a future agenda for more discussion and/or action or may refer the issue to the administration for follow-up.

---

## AGENDA

1. **ROLL CALL TO ORDER** – 6:00 p.m.
   1.1 Roll Call
   1.2 Flag Salute
   1.3 Approval of Agenda
   1.4 Public Concerns (An opportunity for the public to comment or address the Board on issues to be discussed in Closed Session)

2. **RECESS TO CLOSED SESSION** – Personnel, Negotiations, Legal Matters
   (Pursuant to Gov't Code Section 54954.2, closed sessions are not open to the public and may only be held for negotiations discussion, employment or dismissal of an employee, disciplinary matters relative to student(s) or employee(s), meeting with legal counsel on pending or anticipated litigation, emergency situations and other exceptions as provided by the law, including Government Code sections 54957 and 54957.6.)
   2.1 Public Employee Discipline/Dismissal/Release/Resignation (Government Code § 54957)

3. **RECONVENE OPEN SESSION**

3.1    Closed Session Report

**4.    FUTURE MEETING DATES**

| | | |
|---|---|---|
| 4.1 | Sunday, March 28, 2021 | 12:00 p.m. – Special Session |
| 4.2 | Monday, March 29, 2021 | 4:00 p.m. – Special Session |
| 4.3 | Saturday, April 3, 2021 | 8:30 a.m. – Special Session |
| 4.4 | Wednesday, April 14, 2021 | 7:00 p.m. – Regular Session |
| 4.5 | Wednesday, May 5, 2021 | 6:30 p.m. – Budget Study Session |
| 4.6 | Wednesday, May 26, 2021 | 7:00 p.m. – Regular Session |
| 4.7 | Wednesday, June 16, 2021 | 7:00 p.m. – Regular Session |

**5.    ADJOURNMENT**

**LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT**
**SPECIAL BOARD MEETING**
March 25, 2021
Virtual Meeting

| | |
|---|---|
| BOARD MEMBERS: | Deana Arnold, President |
| | Ron Bourque, Vice President |
| | Ben Abeln, Member |
| | Erin Asheghian, Member |
| | Charlotte Khandelwal, Member |
| | |
| BOARD MEMBERS ABSENT: | None |
| | |
| SECRETARY PRESENT: | Lisa Fraser |
| | |
| ROLL CALL TO ORDER: | 6:00 p.m. |

**Approval of Agenda**                                                      **Approved 5-0**
A **MOTION** was made by Ms. Boisvert-Khandelwal and seconded by Ms. Asheghian to approve the agenda as presented.

**Public Concerns** – Please see attached.

**Recess to Closed Session**

**Reconvene Special Session**

**Closed Session Report** – Ms. Arnold stated the closed session topic was "Public Employee Discipline (Government Code 54957/Education Code Section 44932 et seq.) and reported that while in closed session, the Board **approved by a 5 - 0** vote to authorize moving forward with the dismissal of a certificated employee number 2591570821
based on a statement of charges and causes under Education Code 44932 et seq. The Board has directed the Superintendent or designee to provide all appropriate legal notices and otherwise effectuate this process. At this time, pursuant to law, the employee shall be given a period of thirty (30) days to request a hearing before the Commission on Professional Competence of the District related to the proposed actions. If no hearing is requested, the Board shall proceed with dismissal absent such hearing. This matter involves sensitive employment matters, given the need to respect personal privacies, the Board will not be able to comment further on this matter at this time.

**ADJOURNMENT** – 7:16 p.m.

7.9 encl. # 21                                                      **1 SER 10**

Submitted by:

Lisa Fraser
04/21

**Subject:** FW: Mr. Kissner
**Date:**     Monday, March 1, 2021 at 10:05:57 AM Pacific Standard Time
**From:**     Lisa Fraser
**To:**        e.bevans@loma.k12.ca.us

Written correspondence.

**From:** Juliet Vocal Morita <juliet.morita@gmail.com>
**Date:** Sunday, February 28, 2021 at 9:28 PM
**To:** Lisa Fraser <l.fraser@loma.k12.ca.us>, Board <Board@loma.k12.ca.us>
**Cc:** Kenji Morita <kenji.morita@gmail.com>
**Subject:** Mr. Kissner

Dear Dr. Fraser,

We are the parents of Misha Morita, 6th grade student at CT English. We are shocked and saddened over Mr. Kissner's leave of absence announcement. We are writing to inform you that Mr. Kissner has been an amazing Math teacher and has made a positive impact on our daughter's life.  Although, Misha has only known Mr. Kissner for six months, he is by far her favorite teacher. We learned from Misha that Mr. Kissner was an ex-Marine, biked across Asia for over 1.5 years, chased by a dog in one of his many bike rides throughout Asia, built a snow cave in Lake Tahoe and taught his son the art of sarcasm at a young age.  Mr. Kissner is her favorite teacher because he is extremely funny, explains math concepts very well and helps her understand how to solve problems Misha doesn't understand. Our daughter is a shy, bright, artistic, science and math loving girl who wants to be a Chemical Engineer someday. She attended Lakeside Elementary School from 1st-4[th] grade and St. Frances Cabrini for 5th grade. Although we loved the mountain community at Lakeside, the curriculum was not challenging enough for Misha especially around math. Misha has attended math enrichment courses like Kumon and Sylvan Learning throughout grade school to supplement the public school curriculum. We returned to public school for 6th grade due to the pandemic and distance learning. We enrolled Misha in Algebra 1 through Mountain Math Initiative led by Mr. Kissner because we believed (including Misha) that 6th grade math would be too easy since all of the 6th grade curriculum was covered at St. Frances Cabrini when she was in 5th grade.  Misha was scared taking Algebra 1 and struggled in the beginning, but she flourished under Mr. Kissner's guidance as an A+ student. Mr. Kissner trusted his students to correct their own homework, made learning fun, challenged Misha and continued to foster the love of math. Our dinner conversations are dominated by Algebraic concepts such as linear equations, exponents, factoring, radicals, imaginary numbers, etc. She discusses her other subjects as well, but not in the same volume and enthusiasm as math. We believe Misha's increased passion for math is a direct result by Mr. Kissner's infectious love of math and teaching style, which suited her. Lastly, we strongly urge you to reinstate Mr. Kissner at CT English. Changing math teachers a few weeks prior to the end of the quarter has been extremely disruptive for students and parents. Now, Misha has to attend and submit assignments which are complete waste of her time.  Please let me know if you want to discuss this matter further.  If there is a board agenda discussing Mr. Kissner's employment, I am requesting that this letter be read at the board meeting. Thank you for your time.

Sincerely,
Juliet & Kenji Morita

March 25, 2021

Dear LPJUESD Board & Superintendent Fraser,

I feel compelled to write this letter regarding the behavior of Mr. Kissner. I am deeply concerned about the welfare of our students and other children in our community. Events portrayed in public comments to the Board and on Social Media since the March 14, 2018 walk out have rarely been factual. Mr. Kissner has made himself out to be a victim since March 2018. This is grossly untrue. Mr. Kissner has not only bullied the district but also encouraged parents to make false claims on his behalf to the board, this has driven a huge wedge in our community. The bottom line is Mr. Kissner has been insubordinate on numerous occasions. He has bullied Administration over and over. Superintendent Fraser came into her position with hopes of reconciliation and renewal. She tried to get everyone to move on from the unfortunate events which occurred before she even came to the district. Mr. Kissner has consistently not helped but hindered this reconciliation process. Mr. Kissner continues to not do what is asked of him as a teacher. Mr. Kissner says he does things in the best interest of his students, so why would he continually ignore struggling students and only focus on those who excel? At this point I feel Mr. Kissner's actions are out of spite.

What impels me to write this letter are consistent disturbing accounts of Mr. Kissner's behavior. Misconduct by Mr. Kissner which has taken place both at school and on his many trips with children from our community. These accounts, if true have horrifying consequences for our youth. Mr. Kissner should not be allowed to teach anywhere ever again. The public and Mr. Kissner's supporters keep asking the district what it knows? Obviously with personnel matters, the district has to follow certain ethics and rules. The district has upheld these ethics and rules, however Mr. Kissner has not. Mr. Kissner continues to make false claims about the district, he is not and never has been a "Team Player".  Staff is tired of working with a teacher who only thinks of his own needs and not the needs of students or the team as a whole.

Mr. Kissner is very smart and has made himself out to the community as a hero who is here to support the needs of the children. What horrifies me the most is, if these allegations are true this is a huge red flag for our community, and we need to put a stop to it now.

I would encourage parents and students to come forward and share any information about what happened to them with the Board and local authorities.

I care about our students, school staff, and our community. I do not feel that Mr. Kissner's involvement with students in our district is safe. I also feel his presence is not conducive to a positive or productive learning and working environment where some staff feel intimidated by his actions.

It is for this reason I felt compelled to write to the Board.

Signed Roberta H.

March 25, 2021

Dear Loma Prieta Board of Trustees,

We, the CTA of Loma Prieta, would like to share our praise for Rebecca Setziol and the wonderful work she has been doing to support students and staff at Loma and CT during a year of much change.

Though she only joined our staff at the beginning of this year, Ms. Setziol embodies the Loma values and spirit that make our mountain school special.  Upon meeting her, students and staff can immediately sense her positive energy and form an instant connection.  Her presence is welcoming, and her experience and comfort working with students is apparent to anyone who visits her classroom.  She has developed a strong rapport with students and staff in her short time in our district.

Her subject matter expertise in math is equally an asset.  She stepped into a position teaching math at CT mid-year and mid-curriculum to serve students and provide continuity of learning.  This is a very challenging situation for any teacher, and Rebecca rose to the occasion. Adding to the difficulty of her task, she did this in the midst of a transition from distance learning format to hybrid in-person learning.

Ms. Setziol has demonstrated an important aspect of the "Loma way" in her flexibility and response to change and adversity.  The CTA thanks and praises Ms. Setziol and her impressive efforts this year.

Sincerely,
CTA of Loma Prieta



*Ms. Setziol welcoming students back into her classroom.*

**BEFORE THE**
**BOARD OF TRUSTEES OF THE**
**LOMA PRIETA JOINT UNION SCHOOL DISTRICT**
**STATE OF CALIFORNIA**

**In the Matter of the Reduction in Force of:**

**DAVID KISSNER, Respondent**

**OAH No. 2021040076**

**PROPOSED DECISION**

Danette C. Brown, Administrative Law Judge, Office of Administrative Hearings (OAH), State of California, heard this matter on April 26 and 27, 2021, by videoconference, from Sacramento, California.

Amanda Giorgino, Attorney at Law, Proactive Legal, The Bock Law Group, PC, represented the Loma Prieta Joint Union School District (District).

William J. Becker, Jr, Attorney at Law, Freedom X, and Jeremiah D. Graham, Attorney at Law, represented David Kissner (respondent).

Evidence was received, the record closed, and the matter was submitted for decision on April 27, 2021.

# FACTUAL FINDINGS

## Jurisdiction and District's Decision to Impose Layoffs

1.     Linda Fraser is the Superintendent of Loma Prieta Joint Union School District (District). The District has two schools and serves approximately 490 students. Loma Prieta Elementary School serves kindergarten through fifth grade students, and C.T. English Middle School serves students in grades six through eight. The actions of Superintendent Fraser, and those of the District's staff and Governing Board (Board) were taken solely in their official capacities.

2.     The District is facing a budget shortfall for the 2021-2022 school year and has projected declining middle school enrollment. The District's Budget Advisory Committee (BAC) is a broad-based group of certificated and classified staff, administrators, parents, and community members at-large, who advise the Superintendent on potential financial strategies, practice, and/or budgetary actions to help to ensure a sustainable, long-term financial model for the District. The BAC met on a monthly basis from September 2020 to February 2021. During the BAC's January 11, 2021 meeting, it discussed budget reductions, goals, and strategies. The BAC presented its recommendations to the Board on January 13, 2021, setting forth its goals for fiscal stability, strategic planning, current challenges, budget cuts, program impacts, and proposed program solutions. The BAC provided a final tally of potential budget cuts estimated to be $437,400.

3.     The BAC's recommended goals for the District's fiscal stability included maintaining a 12 percent reserve, balancing the budget, actively pursuing revenue-generating opportunities, and mitigating impacts of the recent Measure N defeat. Had Measure N passed, it would have authorized an annual parcel tax for seven years,

2

generating an estimated $328,000 for academic programs in the Loma Prieta Joint
Union Elementary School District.

    4.    The BAC included in its recommended solutions "[shifting] 6th grade
programming to self-contained English/history and math/science cores with PE and
music pullout." This shift in sixth grade programming directly affected respondent
because he held a single subject credential in math.

    Billy Martin, Ed.D, Principal of both schools in the District, testified that "the
main reason for the programming change [for the sixth grade] is reduced enrollment,"
amounting to "at least a 0.2 [Full Time Equivalent (FTE)] reduction in the sixth grade"
and a "reduction of 1.2 FTE over the whole system." Shifting to a core program
requires a multiple subject credential. It allows teachers to teach a broad range of
subjects and electives that a single subject-credentialed teacher cannot. "The driving
force is that a core program is a better model for kids. [Teachers] are expected to be
jacks of all trades in this core model." It provides "better support in transition from
elementary [to] middle school." Dr. Martin conceded that there are no teachers more
junior than respondent with more experience teaching sixth grade math and science.
However, Dr. Martin emphasized that "this is about their licensing," not the amount of
math teaching experience. The teachers that were skipped hold multiple subject
teaching credentials, authorizing them to teach math despite having less experience
than respondent.

    Superintendent Fraser testified that a core program "is pretty common in
middle school structures" and "allows the District extra flexibility" in utilizing multiple
subject credentialed teachers. Furthermore, "we have a math teacher who is single
subject [credentialed]; if you have two single subject math teachers, that would be 10

3

sections of math, but we don't have 10 sections of math, thus the ultimate layoff [of respondent]."

     5.     Cathy Vance, the District's Chief Business Official (CBO) and BAC member, is responsible for preparing the District's budget. She testified that the District has known over the past two years that it would have to make budget cuts for the 2021-2022 school year because "the ongoing expenses exceed[ed] the ongoing revenues for the past couple of years, [extending] to the 2021-2022 and 2022-2023 [school years]." "Once the voters did not pass the extension of the parcel tax in November, the District knew that the cuts would have to be larger." Ms. Vance determined the FTE reductions needed and "took it to the BAC." The BAC worked through a prioritization process to determine "which cuts they thought were less painful and the things they did not want to cut." The BAC recommended to cut 2.7 FTE at Loma Prieta Elementary School, and 1.4 FTE at C.T. English Middle School, which included the 1.2 FTE for declining enrollment. In addition, "administrators and confidential staff took a one percent salary rollback, [and there were] some cuts to the consulting budget."

Consequently, the District determined that it must make significant budget reductions, and believes it is necessary to eliminate respondent's certificated position, among other things, to address this budget shortfall.

     6.     On February 10, 2021, the Board adopted Resolution No. 21-XII, setting forth the criteria for the order of certificated layoff and reemployment for employees with equal seniority. The Board determined that, pursuant to Education Code section 44955, subdivision (b), the order of termination between employees who first rendered paid service to the District on the same date "shall be established on the basis of the following criteria in order to meet the needs of the District and students thereof:"

4

(1) Multiple Authorization Credentials;

(2) Experience teaching different subjects;

(3) Possession of a preliminary, clear, standard, or life teaching credential;

(4) Possession of a CLAD/BCLAD/CTEL certificate;

(5) Experience teaching at different grade levels;

(6) NCLB Teacher Requirement: Certificate of Compliance;

(7) Experience teaching in the District;

(8) Experience teaching outside the District[.]

The Board determined that the same criteria apply to determine the order of reappointment, and in the event of a tie.

7.      On March 10, 2021, the Board adopted Resolution No. 21-XIV, reducing or eliminating particular kinds of services (PKS) of the District, affecting 4.0 Full Time Equivalent (FTE) certificated positions. The Resolution states that it will be necessary to reduce the following PKS of the District, and to decrease a number of certificated employees in the District no later than the beginning of the 2021-2022 school year as follows: "4.0 FTE grades K-8 Classroom Teaching." The Board determined to retain the following PKS:

(1) Mild to Moderate and Moderate to Severe Special Education Services;

5

> (2) Language, Speech and Hearing Special Education
> Services;
>
> (3) Resource Specialist Special Education Services;
>
> (4) Multiple Subject Teaching Credential.

8.    The services set forth in the PKS Resolution are "particular kinds of services" that may be reduced or discontinued within the meaning of Education Code section 44955. The Board "considered anticipated certificated employee attrition (resignation, retirement, non-reelection, temporary teacher release, etc.)," and still found it "necessary to terminate the above-referenced certificated positions." There was no evidence that the Board's decision to reduce or discontinue the identified services was arbitrary or capricious. However, this is disputed by respondent, discussed below. The Board concluded that the PKS reductions were in the best interests of the students. The reduction or elimination of the services set forth in the PKS Resolution constituted a proper exercise of the Board's discretion, within the meaning of section 44955.

9.    As a result of the above PKS reductions and/or eliminations, the Board determined that it was necessary to decrease 4.0 FTE positions for certificated employees in the District at the close of the 2020-2021 school year, in accordance with Education Code section 44955. On March 10, 2021, Superintendent Fraser gave the Board written notice of her recommendation that notice be given to respondent that his services would not be required for the ensuing school year, and the reasons therefor.

10.    On March 12, 2021, Superintendent Fraser timely served a letter entitled "Notice of Intent to Layoff" (Notice) on respondent, a certificated employee affected

6

by the PKS reductions and/or eliminations set forth in the Resolution. The Notice advised that it had been recommended to the Board that respondent be given the Notice that his services might not be required for the 2021-2022 school year. Respondent timely filed a Request for Hearing to determine whether there was cause for not reemploying him for the 2021-2022 school year.

11.    On March 23, 2021, Superintendent Fraser made and filed the District's Statement of Reduction in Force and caused it to be served on respondent. Respondent timely filed a Notice of Participation requesting a hearing in this matter.

12.    Respondent is a certificated permanent employee of the District. Jurisdiction for the subject proceeding exists pursuant to Education Code sections 44949 and 44955.

## Implementation of Layoff Procedure

13.    In anticipation of the PKS reduction, Superintendent Fraser began updating the District's seniority list. She notified all certificated teachers requesting that they confirm the accuracy of their seniority dates and credentials on file with the District and provided them with an opportunity to correct such information prior to finalizing the seniority list. Superintendent Fraser identified four individuals serving in the positions affected by the PKS reductions. She used the updated seniority list to identify vacant positions and to identify the least senior persons occupying the positions affected by the PKS reductions. She considered known attrition and existing vacancies.

14.    When the least senior persons occupying the positions affected by the PKS reductions were identified, Superintendent Fraser looked at everyone's credentials to determine whether she could displace any less senior certificated employees. On

7

March 12, 2021, Superintendent Fraser served a Notice on respondent, identifying him as the most junior employee affected by the PKS reduction.

## Respondent's Challenges to District's Layoff

15.     Respondent holds a single subject math credential. Respondent has taught at C.T. English Middle School since his date of hire on November 29, 2012. In the current school year, he taught "all of the sixth-grade math, two sections of seventh grade math, and one section of eighth grade science." He taught science under a "Consent to Teach" waiver, allowing him to teach outside of his credential area.

16.     On February 12, 2021, the District served respondent with a Notice of Proposed Intent to Dismiss with Statement of Charges. He believes that the District is attempting to remove him by first initiating dismissal proceedings, then by making him the only tenured certificated teacher to be subject to layoff. Respondent asserts that the District cannot justify its layoff under Education Code sections 44955 and 44955.5 because there is no fiscal impact. Next, respondent asserts that the layoff is pretextual, in that the District's layoff is an excuse for its retaliatory motive of attempting to terminate him for his political activity.

### FISCAL IMPACT

17.     Petitioner works with his father as a financial advisor and understands budgets. He has studied the District's budget very closely. Respondent does not dispute that the District must reduce its workforce due to declining enrollment and "deficit spending." However, respondent disputes that the sixth-grade shift from a single subject model to a core model results in any savings. He asserts that the sixth-grade schedule has always been the same dating back to when respondent was first hired and will not change for the upcoming year. Thus, there is no room to cut any

8

sixth-grade sections. Respondent presented the District's master schedule for the current year and next year, and his own charts to illustrate his point that "it is physically impossible to realize any budget savings in the sixth grade absent replacing a senior teacher with a junior teacher." He asserts that CBO Vance was not able to provide an explanation for any savings realized through the sixth-grade shift to core programming.

18.    Respondent asserts that there is a very clear preference for a single subject math instruction because such credential holders are in short supply in California, and because C.T. English Middle School is a "high performing school and feeds into a high performing high school." Students can follow a "math pipeline to accelerated math in high school." "Math has been a priority; it always has been." Moreover, respondent asserts that the "nature of our District is that teachers have to teach outside of their credential and experience." Respondent is concerned with the quality of math instruction that the students will get next year under the core model.

19.    In addition, respondent asserts that the sixth-grade shift to a core model was never mentioned in any of the BAC's materials and agendas until January 2021, after Measure N was certified as defeated, and after respondent called for a special election to fill a Board vacancy. If the special election occurs, respondent asserts that it will cost the District a large sum of money, and it has generated outrage in the school community.

20.    Respondent also asserts that at the Board's March 10, 2021 meeting, the budget reduction line item showing the sixth-grade shift to a core program "disappeared immediately" after the District decided instead to dismiss him. The line item then reappeared during the Board's March 10, 2021 meeting, showing a budget reduction of $12,000 for the "Electives at CT (6th grade self-contained)." Respondent's

9

assertion that Superintendent Fraser, CBO Vance, and the Board President had no explanation for this line-item discrepancy, and their failure to explain how the sixth-grade program shift results in savings, is proof that the District acted arbitrarily to eliminate respondent's position for reasons other than budget cuts or declining enrollment.

### LAYOFF A PRETEXT TO RETALIATION FOR POLITICAL ACTIVITIES

21.     Respondent asserts: (1) his constitutionally protected political speech related to C.T. English Middle School's walkout after the February 14, 2018 school shooting at Marjory Stoneman Douglas High School; (2) his vocal political stance against Measure N; and (3) his petition to force a special Board election to fill a Board vacancy, drove an ideological wedge between him and the District's administrators, faculty, staff, and the Board. His unpopular positions caused him to be "singled out" as the only tenured certificated teacher to be subject to layoff.

22.     In support of his pretext argument, respondent submitted an August 16, 2020 email from Sean Rokni, who worked with respondent on the No on Measure N campaign. Mr. Rokni did not testify at hearing, and his email was admitted as administrative hearsay. In his email, Mr. Rokni described a conversation with Board member Ben Abeln who made threats to everyone working on the campaign. Mr. Abeln's statements to Mr. Rokni are inadmissible hearsay and not sufficient to support a finding that respondent was retaliated against by the Board. Mr. Rokni's email is given little weight.

23.     Respondent also asserts that he is protected from viewpoint discrimination under the Federal Civil Rights Act (42 U.S.C. § 1983). He also relies upon Labor Code section 1101, which prohibits an employer to make, adopt, or enforce any

10

rule, regulation, or policy forbidding employees from engaging or participating in political activities, or controlling or directing the political activities of employees. In addition, Labor Code section 1102 prohibits employers from coercing or influencing employees through threats of discharge or loss of employment to follow or refrain from following any particular course of political activity. Respondent argues that his political activities are protected under the Federal Civil Rights Act, and that the District has violated Labor Code sections 1101 and 1102 by attempting to quash his political activities through loss of employment.

24.     Respondent also questioned the timing of the Notice of Intent to Dismiss with Statement of Charges, and the layoff notice, asserting that both occurred immediately after Measure N failed, and after respondent called for a special Board election. Respondent believes that his unpopular political advocacy created resentment and indignation "of the District political class," who retaliated against him by instituting his layoff.

### IMPROPER SKIPPING OF JUNIOR TEACHERS

25.     Respondent asserts that the District improperly "skipped over" junior teachers with less training and experience to lay him off. Citing *Bledsoe v. Biggs Unified School District* (2008) 170 Cal.App.4th 127, 138, (*Bledsoe*) "a district must not only establish a specific need for personnel to teach a specific course of study, but establish the certificated employee it proposes to retain 'has special training and experience necessary to teach' that course or course of study or to provide those services[.]" Respondent asserts that none of the prospective teachers who have been retained to teach sixth-grade math next year have the experience to do so, and they are junior to him on the seniority list. He identified teachers Van Zante, Riccomini, and

11

Dudley, who are multiple subject teaching credential holders, as not qualified or experienced to teach middle school math.

## Analysis

### LAYOFF IS RELATED TO BUDGET REDUCTIONS AND REDUCED ENROLLMENT

26.     Respondent's keen observations into BAC's budget discussions dating back to September 2020 shed light on the BAC's active efforts to balance the budget, pursue revenue-generating opportunities, and mitigate the budgetary impacts of the Measure N defeat. He conceded that the District must reduce its workforce due to declining enrollment and "deficit spending." While respondent may disagree with the BAC and the District regarding their budgetary decisions and management of the deficit, there was no evidence presented, other than respondent's sole testimony and self-generated notes and charts, to show that his layoff was not directly related to budget reductions and reduced enrollment.

Although respondent works with his father as a financial advisor, the job is substantially different from that of a budget analyst or Chief Business Officer in charge of a school district budget. Respondent did not call an expert to opine on the implementation of school budgets, decisions to consider when weighing budget cuts, the establishment of budget cuts, and analysis of the District's FTE reductions and dollar figures. He was not privy to any of the BAC's discussions, including the decision to shift sixth grade to a core program for the welfare of the District and its students. Respondent's mere suspicions that the sixth-grade shift to a core program was never raised until after respondent was served with the Notice of Intent and Statement of Charges, that the District somehow hid this information, and that the District failed to

1 SER 27

explain how the sixth grade shift to a core program would result in savings, is unpersuasive and not supported by the evidence.

### LAYOFF WAS NOT A PRETEXT FOR RETALIATION

27.      There is no question that respondent is entitled to engage in constitutionally-protected political speech. He believes that he was "singled out" for layoff resulting from his political speech activities. He called no witnesses to support this assertion and presented a hearsay document purporting to establish that a Board member made threats against him. Other than respondent's sole testimony, he presented no evidence to support his assertions that the District retaliated against him for opposing Measure N and calling for a special Board election. In addition, he presented no evidence, other than his sole testimony, that the Board engaged in viewpoint discrimination against him. Retaliation and viewpoint discrimination present legal standards that respondent must establish. Respondent's sole subjective and biased testimony is not enough. Respondent failed to establish that the layoff was a pretext to retaliation by the District.

### JUNIOR TEACHERS PROPERLY RETAINED

28.      The District presented the seniority list and the persuasive testimonies of Superintendent Fraser, CBO Vance, and Dr. Martin that support a finding that teachers Van Zante, Riccomini, Dudley, and others similarly situated, who are junior to respondent, possess the "special training and experience necessary to teach" in accordance with *Bledsoe*, despite having less experience than respondent. Their multiple subject teaching credentials authorize them to teach a broad range of subjects that respondent cannot. The evidence supports a finding that respondent

13

does not possess the special training and experience that the junior multiple credentialed teachers possess.

## Welfare of the District and Its Students

29.     The District's layoff was not implemented for purpose of infringing on the private political views and activities of respondent. Rather, the layoff was implemented for the welfare of the District and its students. The Superintendent correctly identified the certificated employees providing the particular kinds of services that the Board directed to be reduced or discontinued. No junior certificated employees are scheduled to be retained to perform services which a more senior employee is certificated and competent to render.

## LEGAL CONCLUSIONS

1.     Jurisdiction for this proceeding exists pursuant to Education Code sections 44949 and 44955. All notices and other jurisdictional requirements of sections 44949 and 44955 were met.

2.     The anticipation of receiving less money from the state for the next school year is an appropriate basis for a reduction in services under section 44955. As stated in *San Jose Teachers Assn v. Allen* (1983) 144 Cal.App.3d 627, 638-639, the reduction of PKS on the basis of financial considerations is authorized under that section, and "in fact, when adverse financial circumstances dictate a reduction in certificated staff, section 44955 is the only statutory authority available to school districts to effectuate that reduction." The District must be solvent to provide educational services, and cost savings are necessary to resolve its financial crisis. The Superintendent's decision to reduce PKS was a proper exercise of her discretion.

14

3.     A District may reduce services within the meaning of Education Code section 44955, subdivision (b), "either by determining that a certain type of service to students shall not, thereafter, be performed at all by anyone, or it may 'reduce services' by determining that proffered services shall be reduced in extent because fewer employees are made available to deal with the pupils involved." (*Rutherford v. Board of Trustees* (1976) 64 Cal.App.3d 167, 178-179.) The burden is on the District to demonstrate that the reduction or elimination of the particular kinds of services is reasonable and that the District carefully considered its needs before laying off any certificated employee. (*Campbell Elementary Teachers Association v. Abbott* (1978) 76 Cal.App.3d 796, 807-808.)

4.     The layoff notice sent to respondent indicated the statutory basis for the elimination of services and, therefore, were sufficiently detailed to provide him due process. (*San Jose Teachers Assn. v. Allen* (1983) 144 Cal.App.3d 627; *Santa Clara Federation of Teachers v. Governing Bd.* (1981) 116 Cal.App.3d 831.) The services identified in PKS Resolution No. 21-XIV are particular kinds of services that may be reduced or discontinued pursuant to Education Code sections 44949 and 44955. The description of services to be reduced, both in the Board's Resolution and in the layoff notice, adequately described particular kinds of services. (*Zalac v. Ferndale USD* (2002) 98 Cal.App.4th 838; see, also, *Degener v. Governing Board* (1977) 67 Cal.App.3d 689.)

5.     Education Code section 44955 provides that when certificated employees face layoffs due to reduction or elimination of PKS, the District has an affirmative obligation to reassign senior teachers who are losing their positions into positions held by junior teachers, if the senior teachers have both the credentials and competence to occupy such positions. The clear intent of the statute is to prevent

15

school districts from laying off senior teachers while retaining junior teachers. Section 44955, subdivision (c) provides in pertinent part:

> Services of such employees shall be terminated in the inverse of the order in which they were employed . . . . The governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render . . . .

6.      The District appropriately considered all positively assured attrition that occurred during the computation period prior to submitting the PKS Resolution to the Board for its approval. In addition, the District appropriately applied bumping and skipping rules, and allowed bumping/skipping based upon the more senior employee's competency (e.g., credential or authorization) to teach the assignment of the less senior teacher.

7.      Legal cause exists to reduce or eliminate 4.0 FTE of particular kinds of services offered by the District as set forth in detail in the Factual Findings. The Board's decision to reduce or discontinue the identified services was neither arbitrary nor capricious and was a proper exercise of its discretion. Cause for the reduction or discontinuance of services relates solely to the welfare of the District's schools and pupils within the meaning of Education Code section 44949. No employee with less seniority than respondent is being retained to render a service that respondent is certificated and competent to render. The District may give final notice to respondent that his services will not be required for the ensuing school year, 2021-2022.

16

## RECOMMENDATION

Cause exists for the reduction of 4.0 full-time equivalent certificated positions at the end of the 2020-2021 school year. Notice shall be given to respondent David Kissner that his services will not be required for the 2021-2022 school year, because of the reduction and/or discontinuance of particular kinds of services.

DATE: May 3, 2021

*Danette C. Brown*
Danette C. Brown (May 3, 2021 14:31 PDT)

DANETTE C. BROWN
Administrative Law Judge
Office of Administrative Hearings

17

**1 SER 32**

**BEFORE A**
**COMMISSION ON PROFESSIONAL COMPETENCE**
**LOMA PRIETA JOINT UNION SCHOOL DISTRICT**
**STATE OF CALIFORNIA**

**In the Matter of the Dismissal of:**

**DAVID KISSNER, A Permanent Certificated Employee,**

**Respondent.**

**OAH No. 2021050291**

**DECISION**

A Commission on Professional Competence (Commission) heard this matter by videoconference on October 4, 5, 6, 8, 11, 12, 13, 14, 15, 25, and 28, 2021. The Commission's members were Katherine Everett, Santa Clara County Office of Education; Scott Guagliardo, Downtown College Prep (San Jose); and Administrative Law Judge Juliet E. Cox, State of California, Office of Administrative Hearings, who presided.

Attorneys Brian D. Bock and Amanda S. Georgino represented the Loma Prieta Joint Union School District.

Attorneys William J. Becker, Jr., and Jeremiah D. Graham represented respondent David Kissner, who was present throughout the hearing.

The Commission received oral opening statements, testimonial and documentary evidence (including audio and video recordings), and oral closing

arguments. The record was held open to permit the Commission to review evidence and to deliberate in executive session. The record closed and the matter was submitted for decision on November 10, 2021, at the conclusion of the Commission's deliberations.

## FACTUAL FINDINGS

1. Respondent David Kissner holds a clear single subject credential authorizing him to teach mathematics.

2. The Loma Prieta Joint Union School District is a small school district in the Santa Cruz mountains, between Los Gatos and Santa Cruz. It includes two schools on a single campus: Loma Prieta Elementary School and C.T. English Middle School. The District serves about 500 students and employs about 30 teachers.

3. Respondent began teaching mathematics and physical science in the District in fall 2012. Except for the assignment described below in Finding 46, respondent taught in the District's C.T. English Middle School.

4. In February 2021, the District's Board of Trustees (Board) received a statement of charges against respondent from District superintendent Lisa Fraser, and voted to seek respondent's dismissal from employment. Respondent timely requested a hearing.

5. In June 2021, the Board approved an amended statement of charges against respondent. The amended statement of charges alleges numerous incidents involving respondent and bearing on his fitness for continuing service. The District characterizes these incidents, separately or together, as cause under the Education

2

Code to dismiss respondent from employment for immoral conduct, for evident unfitness for service, and for persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools.

## Respondent's Education and Professional Experience

6.      Respondent grew up in the San Jose area. After graduating from high school in San Jose, respondent attended the United States Naval Academy.

7.      Respondent graduated from the Naval Academy in 2002, and served five years in the United States Marines.

8.      After completing his military service, respondent traveled extensively. He then decided to pursue a teaching career, and obtained the credential described above in Finding 1.

9.      Respondent started his teaching career with the Santa Clara County Office of Education. He taught mathematics in an alternative community school, and as a long-term substitute in Santa Clara County juvenile incarceration facilities.

10.     In the District, respondent's initial assignment was to teach mathematics and science in sixth grade. He also has taught mathematics to seventh-grade students. The evidence did not establish respondent's science assignments for the District in detail, but did establish that he taught at least one middle school science class each school year except for the 2018–2019 school year. Respondent coached C.T. English Middle School's wrestling team.

3

## Timeline of Investigations and Related Events

11.    In March and April 2018, respondent and the District garnered regional and national media attention because of conflict within the District and the community over a nationwide political event to draw attention to gun violence in schools.

12.    Some witnesses testified that they respected respondent's position in this conflict. Respondent testified, however, that most of his teaching colleagues disagreed with his position, and that several became very unfriendly to him as a result of the conflict and media attention. Respondent's visibility in the news media on this issue also caused him to receive hostile criticism through social media, both from people he knew in the community and from strangers.

13.    The District conducted an investigation into the conflict described in Findings 11 and 12. After this investigation, the District took no disciplinary action against respondent for his actions relating to this conflict.

14.    Also in late March or early April 2018, the Board received an anonymous letter making several serious allegations about respondent's behavior outside the school setting. Respondent believes that he knows who wrote the letter. He testified, plausibly although without corroboration, that the author is a community member who wished to damage his career and his reputation because of the conflict described above in Findings 11 and 12.

15.    Regardless of the author's motive, the allegations stated in the anonymous letter warranted investigation by the District. As described in greater detail in Findings 28, 29, and 71, below, the District's investigation of these allegations revealed evidence supporting some of the allegations. The investigation did not substantiate the letter's most serious allegations.

4

16.     At the end of the 2017–2018 school year, the District's former
superintendent, Corey Kidwell, retired. Fraser became the District's superintendent
beginning July 1, 2018, and Karren Zook became principal of the District's two schools.

17.     District administrators did not conclude that the investigation described
in Finding 15 had revealed misconduct warranting respondent's dismissal from
employment. In October 2018, Fraser delivered a letter to respondent summarizing
what the investigation had shown, and warning respondent that further behavior
similar to the substantiated allegations would result in disciplinary action.

18.     Respondent pressed Fraser during the 2018–2019 school year for further
action or communication about the conflict described above in Findings 11 and 12, but
Fraser told respondent that the District's Board members and administrators preferred
not to "re-hash" that conflict. The evidence did not show that any District
administrator raised further concerns with respondent about his on-campus or
off-campus conduct during the 2018–2019 school year. In April 2019, however,
respondent began an effort to obtain detailed public records from the District
regarding the investigations described above in Findings 13 and 15, and this effort
continued throughout the summer.

19.     On May 9, 2012, the Board adopted Board Policy 4119.21, concerning
professional standards for employees. This policy, which was in evidence, was in effect
during most of respondent's tenure with the District. In February 2020, the Board
adopted revisions to Board Policy 4119.21, but the policy as revised was not in
evidence.

20.     Zook retired as principal of the District's schools on June 30, 2020. Billy
Martin replaced Zook as principal beginning July 1, 2020.

5

**1 SER 37**

21. The Board placed a local tax measure (Measure N) on the ballot for the November 2020 election. In December 2019, respondent had informed Fraser that he intended to oppose any such tax measure. Respondent was prominent in the campaign against Measure N, including by debating the measure in social media and by recording videos and releasing them through social media channels explaining his opposition to the measure. In mid-December 2020, certified election returns confirmed that Measure N had failed.

22. Respondent's advocacy against Measure N drew negative reactions from some community members, including from at least one member of the Board. Respondent experienced these reactions chiefly through social media and through gossip. As described below in Findings 76 and 77, however, the District also received some complaints about respondent's teaching performance during this time from parents whom respondent understood to disagree with his position on Measure N.

23. Respondent's wife ran for the Board in the November 2020 election. She was not elected.

24. Soon after the November 2020 election, a Board member who had won re-election resigned. The remaining Board members voted to appoint a replacement, but respondent and some other members of the community advocated in early 2021 for the District instead to conduct a special election to replace the Board member.

25. On February 22, 2021, because the Board had voted to seek respondent's dismissal from employment, District administrators notified respondent's students' families that respondent would be on leave for the rest of the 2020–2021 school year.

26. In early March 2021, the District received statements in writing regarding the events described below in Findings 30 through 44. After investigation, the District

6

amended the statement of charges against respondent to allege those events as additional grounds to dismiss respondent from employment.

## Alleged Grounds for Dismissal

27.     As amended, the District's statement of charges against respondent includes allegations spanning about three years. The evidence at hearing did not address some allegations at all, and was not conclusive as to others. Any allegations that were in dispute at the hearing but that the Commission has not addressed explicitly in this decision were not proven by a preponderance of evidence, and did not affect the Commission's decision.

### FURNISHING ALCOHOL TO TEENS

28.     The anonymous letter described above in Finding 14 stated that respondent had served alcohol to at least three teenage boys during camping trips.[1] It also stated that respondent had "admitted to doing it one time."

29.     During the investigation described above in Finding 15, respondent repeated his admission that he had served alcohol to a teenage boy during a camping trip. The letter described above in Finding 17 referred to this admission, and warned respondent that "any further report of providing alcohol to a minor will result in

---

[1] The letter described some such trips as having been "through CT English." This description was false. For many years, but never as a District activity, respondent has organized camping trips that sometimes include teens who attend without parents.

7

further corrective action up to and including criminal charges and/or possible termination of your employment."

30.    In April 2019, respondent organized a week-long group camping trip to Death Valley. About 30 people in total were in the group. Some participants were adult friends of respondent's family, who attended with their children. Ten or twelve of the participants were teens who attended without their parents.[2]

31.    The group had organized into several cars and trucks, with a trailer to haul food, water, and cooking and sleeping gear. In Death Valley, the trailer suffered serious damage to a "leaf spring" (part of its suspension). Respondent decided that he needed to obtain a replacement spring, and to repair the trailer, as soon as possible.

32.    Respondent asked four unaccompanied teens, all boys, to come with him on this errand, while the rest of the group continued on to a campsite in the remaining cars and trucks. These boys were Maxwell Cunningham (age 16), Boz Freiling (age 15), Andrew Peck (age 17), and Joey Vierra (age 17).

33.    Earlier in the trip, before the trailer damage, respondent had chastised Peck and Vierra for walking away from the rest of the group to smoke cannabis. They had brought cannabis on the trip despite respondent's explicit pre-trip instruction to

_____

[2] Respondent stated that he maintains a "mailing list" about his trips, and several witnesses used the term "advertise" to describe how respondent distributed information about upcoming trips. The District does not allege that the trips themselves or respondent's general practices in organizing them (such as financial arrangements, insurance, safety protocols, or parental communications and permissions for unaccompanied minors) are cause for his dismissal.

8

them not to bring alcohol or other recreational drugs. Respondent waited until after the group had returned from Death Valley to tell Peck's and Vierra's parents about their sons' misbehavior.

34.    Respondent explained several reasons for having chosen to take these boys along on the trailer repair mission, including that the remaining vehicles would not have space for them, and that he thought he might need their labor to make the repair. He also noted that because Peck and Vierra already had disobeyed his reasonable instructions (as described in Finding 33), he did not want to foist responsibility for supervising them onto the trip's other adults.

35.    After making several telephone calls, respondent determined that the closest place to obtain a replacement leaf spring for the trailer would be in Las Vegas. He also learned, however, that the store would close for the day before he and the boys would be able to get there. Respondent decided to drive with the four boys to Las Vegas, spend the night in a hotel, buy the spring as soon as the store opened the next morning, and then return to Death Valley to repair the trailer.

36.    Respondent did not speak personally to any of the four boys' parents about their new itinerary. He testified that he asked the boys to call their parents on the way, to tell their parents where they were going.

37.    The group arrived in Las Vegas after dark. Respondent had reserved a single room for the group at a hotel on the Las Vegas Strip. Before they checked into the hotel, respondent stopped at a convenience store and bought a bottle of whiskey.

38.    The evidence did not establish that respondent purposely alerted any of the boys that he had stopped at the convenience store for alcohol. At the same time, Peck and Vierra understood correctly that respondent had bought alcohol.

9

39.     When the group arrived in the hotel room, respondent took a shower. The boys took turns showering after respondent. Meanwhile, respondent served himself some whiskey and began either to watch television or to read from bed.

40.     After showering, Cunningham and Freiling got into sleeping bags and went to sleep. Peck and Vierra did not go to bed right away, but neither Cunningham nor Freiling testified to having seen or heard what Peck and Vierra did after showering and before going to bed.

41.     Peck, Vierra, and respondent gave conflicting testimony about what they did next. According to Peck and Vierra, respondent allowed them to share his whiskey, and told them that they could leave the room to see the Las Vegas Strip as long as they returned within 30 minutes. According to respondent, he neither offered the boys whiskey nor left it where they could access it, and told them that they should not leave the room. None of this testimony is completely credible.

42.     Peck and Vierra drank some of respondent's whiskey. The evidence did not establish that respondent encouraged them to drink it, or even that he knew that night that they had taken some. Nevertheless, after bringing whiskey to the hotel room, respondent took no effective steps to stop Peck and Vierra from consuming it.

43.     Peck had never visited Las Vegas before. He and Vierra told respondent that they intended to leave the hotel room whether or not respondent approved. They did leave, and spent between two and four hours exploring the Las Vegas Strip on foot. The evidence did not establish that respondent encouraged or even approved their leaving the room. Nevertheless, respondent did not inform Peck's or Vierra's parents of their sons' plan, and he did not stop Peck and Vierra from going out.

10

44.     Peck and Vierra returned to the hotel room before dawn. In the morning, the group left the hotel, bought the leaf spring, returned to Death Valley, and repaired the trailer.

45.     Peck told his father a few days after returning from the trip that respondent had taken the boys to Las Vegas, and that Peck and Vierra drank whiskey and then walked around the Strip unsupervised at night. Peck's and Vierra's mothers later discussed the matter with one another and among their friends, and eventually brought it to the District's attention as described above in Finding 26.

## 2020–2021 7TH GRADE ALGEBRA COURSE

46.     During the 2018–2019 school year, the District assigned respondent to teach mathematics to fifth-grade students who were ready for more challenging mathematics instruction than the rest of their classmates. He taught these students during their regular class times, in groups separate from the rest of their classes.

47.     During the 2019–2020 school year, respondent continued teaching above-grade-level mathematics to some of his sixth-grade students, most or all of whom were the students he had taught in fifth grade during the previous school year. Until mid-March, respondent offered this enrichment through a combination of before-school meetings and work during their regular class, sometimes with a parent volunteer.

48.     In mid-March 2020, the District began using videoconference learning because of the COVID-19 pandemic. Respondent concluded that because remote

11

learning severely limited his instructional time with students,[3] and also interfered with his ability to separate students into small groups for focused work, he could not continue offering different in-class instruction to subsets of his sixth-grade mathematics students. Instead, until the end of the 2019–2020 school year, respondent taught these students in a separate videoconference class period.

49.    Remote instruction continued for the 2020–2021 school year. Respondent and some of these accelerated students' parents made several proposals to Martin and Fraser about how to serve these students in a videoconference setting without neglecting respondent's other students. Martin and Fraser deemed these proposals either impractical or inadvisable. The District began the 2020–2021 school year by placing these students in respondent's regular seventh-grade math course (Math 7, a pre-algebra curriculum), but encouraging them to undertake additional extracurricular math enrichment activities to prepare them to "test into a year-long Geometry course" for eighth grade.

50.    With respondent's assistance, a Los Gatos High School student who had been respondent's student during middle school set up a videoconference mathematics tutoring program for the 2020–2021 school year. They called this program the Mountain Math Initiative (MMI), and announced that respondent would teach an algebra course through MMI to interested students beginning August 31.

---

[3] Before the COVID-19 pandemic, respondent spent 270 in-person minutes each week with a class, over five sessions. Remote learning offered him and each class only 70 videoconference minutes together per week, in two sessions.

12

51.     Many if not all of respondent's accelerated seventh-grade students signed up for the MMI algebra course. Respondent did not use the District's videoconferencing or virtual classroom services for the MMI course, and he did not use students' District email addresses for day-to-day communication about the MMI course. He taught the course in the mid- to late afternoon, after the C.T. English Middle School instructional day had ended.

52.     Respondent told students who were in his C.T. English Middle School Math 7 course, and who also had signed up for the MMI after-school algebra course, that they did not need to attend both class sessions. He told these students, and their parents, that he would treat the students as having attended their videoconference C.T. English Middle School Math 7 class, even if they had not, if they attended the videoconference MMI class instead. He also told parents and students that students' participation and performance in the MMI algebra course would qualify them for full Math 7 credit at C.T. English Middle School.

53.     Martin struggled at the beginning of the 2020–2021 school year to communicate clear remote-learning attendance requirements to parents and students, and attendance-taking protocols to teachers. By mid-September 2020, however, Martin learned that respondent had given his students and their parents the messages summarized above in Finding 52.

54.     On September 9, 2020, Martin stated to respondent by email, "Students are still expected to adhere to school attendance policies set by current CDE [California Department of Education] guidance and are not to be directed to 'skip' their CT math courses if participating in MMI outside of school." On September 14, 2020, Martin told respondent by email, "A parent contacted me concerned that their student was told they do not have to attend their CT class if they are participating in the MMI program.

13

You and I talked in person about this. I just wanted to make sure this isn't a reocurring issue."

55.    The issue recurred. On October 8, 2020, Martin told respondent by email that Martin had met with several parents about "current attendance/participation concerns," and had explained to those parents that

> 1. All students are required to attend the CTE [C.T. English] courses in which they are enrolled following current CDE guidelines;
>
> 2. All students are required to complete the work assigned to them by their CTE teachers during the course of their CTE classes;
>
> 3. Only work and assessments assigned through the course of CTE classes may count toward grades received at CTE;
>
> 4. Students intending to enroll in Geometry 8 are still required to receive an A/A- in Math 7 as a prerequisite;
>
> 5. Mountain Math Initiative is enrichment and cannot in any way supplant/replace CTE math courses;
>
> 6. Attendance in Mountain Math Initiative does not count as attendance for a student's CTE courses.

Martin also directed respondent to send Martin "a list of students with whom attendance at CTE may have been communicated as optional or who believe

14

participation in Mountain Math Initiative counts as attendance/participation for their CTE classes."

56.     Respondent did not send Martin any such list. Instead, he sent Martin a complete roster of his Math 7 students. Respondent also sent Martin a lengthy email response explaining why he intended to continue treating his MMI algebra class as equivalent to the C.T. English Middle School Math 7 class.

57.     Martin replied by reiterating to respondent on October 14, 2020, "I have been informed by several parents that their child has been told by you that they are not required to attend their CT math course if they are participating in Mountain Math Initiative and that the work done and the grade earned for that after school enrichment course will be applied to their CT math course. . . . This is the action I need to make clear is not acceptable practice."

58.     In mid-October 2020, respondent stopped teaching the after-school MMI algebra course. He continued teaching this course to the same students during the C.T. English Middle School instructional day. Rather than teaching these students during the regular twice-weekly Math 7 time period, however, respondent taught this algebra course three days per week, during a time the District had designated as "office hours" for teachers to meet with students individually or in small groups. He began using a District virtual classroom; but he did not use his District videoconference account for the class sessions, and he continued to communicate with students about the class using personal rather than school email addresses.

59.     Later in 2020, the District offered some seventh-grade students the opportunity to switch from respondent's Math 7 class into a C.T. English Middle School algebra class with a different teacher. Some, but not all, of the students to whom

15

respondent had been teaching algebra through MMI and later during his office hours
made this switch.

60.     Respondent testified, credibly but tangentially, that he "was never
directed to stop teaching algebra." As described above in Findings 54 through 57,
however, Martin directed respondent clearly and repeatedly in fall 2020 to stop telling
parents and students that respondent's extracurricular algebra course was a credit
alternative to Math 7, and to stop treating the course as a Math 7 alternative.
Nevertheless, until the District placed respondent on leave in February 2021,
respondent continued to communicate to students and their parents that his office
hours algebra course was equivalent, and alternative, to Math 7.

### REMOTE TEACHING DURING COVID-19 PANDEMIC

61.     On August 26, 2020, Fraser received a report by email suggesting that
respondent was conducting in-person teaching for District students at one or more
locations outside the District's schools. The email to Fraser stated,

> For older kids (usually 10+ unless accompanied by a
> parent), Kissner is organizing 3 Remote Wilderness School
> camps this fall . . . . "We will provide a structured time and
> place for school on each school day during school hours,
> with electrical power. All locations have strong verizon
> signal for hotspots. Plenty of outdoor activities for after
> school and on the weekends. We will also provide the food,
> shelters, evening campfire routine, opportunity for activities,
> etc. Priority is work and school during these trips—but it is

16

nice to work in these beautiful places and have so many
cool things to do when the homework is done!"

62.    Respondent acknowledged at the hearing having written and circulated
the description that appeared within quotation marks in the email Fraser received. He
testified that the remainder of the report to Fraser paraphrased his announcement,
rather than quoting it. When Fraser received this report, however, she had no way,
other than by asking respondent, to clarify what his announcement had said or what
his remote teaching plans might be.

63.    Fraser emailed respondent to ask these questions. Her email noted that
respondent appeared to be planning group travel "in conflict with regular school hours
for kids and contracted hours of employment for you, which could pose a variety of
complex issues if this is accurate." She asked respondent promptly to "provide a
description of the proposed activities you have planned during school hours such that
we can properly evaluate the legality of your proposition from a district standpoint
and to provide you with advice and counsel such that you are protected from personal
liability as well."

64.    In answer, respondent did not provide any such description. Instead, he
stated simply that he would not "share details" about his "private life" with Fraser.

65.    Fraser provided a further memorandum to respondent regarding this
issue on August 28, 2020. Her memorandum advised respondent that the Board's
pandemic school plan gave him "no permission nor the authority to conduct an out-
of-area, in-person learning cohort which violates state and public health department
regulations." She also stated that "[t]aking **some** students out of the state during
school hours for unsanctioned learning activities that are clearly inaccessible to your

17

other students creates a whole host of instructional inequities that the district will not endorse" (emphasis original).

66.     On November 3, 2020, Fraser and Martin received a further report by email to the effect that respondent was "planning another lengthy (3 week) trip in November." Fraser sent respondent another memorandum on November 5, 2020, about these activities. It stated that the District was "not requiring you to cease such activities, but rather to closely review and provide written responses to the issues raised herein." The memorandum listed 20 questions about respondent's plans, and asked him "to promptly provide us with information" answering the questions. The questions were detailed, and reflected then-common public health anxiety about COVID-19. In substance, however, the questions were reasonable.

67.     Respondent did not answer any of Fraser's questions clearly. Instead, his response by email on November 7, 2020, stated,

> Thank you for your email outlining your concerns. I am
> confident that
>
> • I have been—and will continue to—fully meet (and exceed) my
>   professional obligations equitably to all my students.
>
> • Nothing about my physical location or the people that happen to be in
>   my vicinity have any impact on my performance of my professional
>   duties.
>
> • There is nothing about my physical location or the people that happen
>   to be in my vicinity that has anything to do with the district.
>
> • I am not in violation of any laws or district policies.

18

68.    Respondent testified to the Commission that he organized three group camping trips during fall 2020 during which he taught his District classes from a tent. Each trip included one or more other families, and two of the three trips included high school students who attended without any parent. Respondent testified that no trip included any District students who attended without their parents, but that at least one trip included District students who traveled with one or both of their parents. During the school day, respondent's wife and other adults on the trip supervised and assisted any students in their school activities.

69.    Respondent also testified that he regrets having given Fraser such terse answers to her questions, and believes in hindsight that he should have been more forthcoming in addressing her concerns. He also testified, however, that at the time he considered his remote teaching plans to be "none of Ms. Fraser's business."

70.    The evidence did not establish that respondent's camping trips caused him to neglect or to fail in any of his duties as a District employee. The evidence also did not establish that respondent taught any District student in person on any camping trip, while teaching other students by videoconference. Finally, the evidence did not establish that respondent represented to anyone, or that anyone actually believed, that the District had endorsed his trips or that he was offering supervision to children in his capacity as a District employee.

## RESISTANCE TO SUPERVISION

71.    The October 2018 letter described above in Finding 17 advised respondent that some of the allegations the District had investigated and found true

19

reflected "either a lack of professional boundaries or questionable teaching practices."[4]
It also advised respondent to be mindful of the possibility that parents or children
could misperceive his mentorship as inappropriate sexual interest, and offered "a list
[from the National Education Association] of common-sense pointers for avoiding
false allegations which you may be wise to review and consider in your future
interactions with youth."

72.     Respondent himself testified, credibly and reasonably, that he took great
offense to the implication that his commitment to teaching and mentoring teens
reflects sexual interest. Yet rather than considering Fraser's advice about avoiding even
the appearance of impropriety, respondent answered her October 2018 letter with a
four-page, single-spaced memorandum insisting that he always maintained
appropriate boundaries, that he intended to change nothing about his behavior, and
that every aspect of the anonymous letter and the District's resulting investigation was
"the very definition of a witch hunt."

73.     After October 2018, respondent repeatedly invoked the spring 2018
political controversy and anonymous letter, and the resulting investigations, in
response to Zook's, Martin's, and Fraser's efforts to investigate complaints or concerns
about his activities. For example,

---

[4] Respondent admitted, for example, having offered a "binder clip" to a middle
school boy who had asked permission to leave class to use the restroom. Respondent
did not say that he had told the boy directly to put the clip on his penis, but
acknowledged that he had intended "subtle innuendo."

20

a. Respondent relied on these past conflicts in declining to provide information to Fraser relating to the complaint described below in Finding 81. He reiterated these objections in a memorandum on April 3, 2020, stating "Superintendent Fraser did not have the benefit of hearing from me on this matter because I refused to participate in her inquiry."

b. Respondent relied on these past conflicts in declining to provide information to Zook relating to the complaint described below in Finding 82. He reiterated these objections in a memorandum on April 3, 2020, stating "Principal Zook did not have the benefit of hearing from me on this matter because I refused to meet with her to discuss it."

c. On January 19, 2021, respondent answered email from Martin asking again about respondent's office hours algebra class by stating "I do not participate in any district-led investigations or inquiries based on the district's history of abusing this process and failure to address the issue. Your inquiry fits in this category."

74. In fall 2020, respondent recorded and released on social media a 37-minute video urging viewers to vote against Measure N. He spent much if not most of the video's duration explaining his continuing unhappiness about the spring 2018 political controversy, the anonymous letter, and the resulting investigations, and reiterating his unwillingness to put those conflicts to rest.

75. The matters stated in Findings 42, 43, 52, 56, 58, 60, 64, 67, 69, and 72 through 74, as well as respondent's presentation to the Commission, confirmed that neither respondent's behavioral patterns nor his views about the District's authority to advise or supervise him have changed since October 2018.

21

## PANDEMIC GRADING

76.    During fall 2020, some of respondent's students' parents complained to
him and to Martin that respondent had not provided timely feedback to students on
their class performance.

77.    At the hearing, respondent characterized all of these parents as
community members who disagreed with his political positions, and in particular with
his position on Measure N. No non-hearsay evidence either corroborated or refuted
respondent's belief about these parents' political opinions, or his belief that political
disagreement rather than educational concern had motivated their complaints.

78.    Respondent replied to some of these parents about their concerns. He
told one parent that he was "tardy" in updating students' grades because he also was
busy "answering insane amounts of emails, and [doing] other time-consuming admin
tasks like attendance that take all day." He also blamed some students' poor work
habits for his inability to give the students timely feedback. These answers were
unprofessional in tone, because they deflected parents' concerns about respondent
onto students and onto District administrators.

79.    Many of respondent's colleagues also struggled somewhat to adapt to
remote learning, particularly during the first half of the 2020–2021 school year. The
evidence did not establish that respondent's grading timeliness during this period was
notably worse than that of his colleagues.

## OTHER EVENTS ALLEGED AS GROUNDS FOR DISMISSAL

80.    On September 8, 2020, respondent sent email to his students through
their school email accounts, giving notes and tips about how he planned to use

22

remote learning resources during that school year. The email included an announcement about an "online after school homework center," with a link to a website describing MMI. Respondent had not shown this announcement to Martin before sending it, and had not received permission to send information to students through their school email accounts about a service the District had not screened or approved.

81.      In November 2019, a parent complained to Fraser that respondent had referred, in front of her child and a few other students, to an Asian-ancestry student's "slitty eyes." Fraser investigated this complaint; but as noted above in Finding 73.a, respondent refused to speak to her about it. Respondent denied at the hearing ever having used this phrase, and no non-hearsay evidence established that the parent's report was accurate.

82.      In March 2020, a school staff member reported to Zook that a student had complained about respondent to the staff member. The staff member understood that respondent had displayed anger to the student, in front of other students, by pounding a table with his fist and using profanity. Zook investigated this complaint; but as noted above in Finding 73.b, respondent refused to speak to her about it. Respondent acknowledged at the hearing having criticized the student on this occasion, but denied having pounded his fist or used profanity. Because the Commission received no other first-hand testimony about the incident, the evidence was inconclusive as to whether respondent's behavior on this occasion was or was not professionally appropriate.

83.      In late January 2021, one of respondent's students' parents sent email to respondent, Martin, and Fraser about stories respondent had told, and that the parent feared respondent might continue to tell, to the parent's son. The parent, an officer in

23

the United States Air Force, was preparing for an overseas deployment, and wished to avoid having his son hear stories about "Afghanistan, combat, or the military" at school. Although the parent's email stated that the parent had spoken with respondent during fall 2020 about respondent's "sharing stories of his personal experience with Afghanistan combat fatalities in the classroom," respondent testified that he had not told his class any such stories. The evidence did not establish whether respondent had told his students stories during the 2020–2021 school year about military fatalities in any country, or if so in what context and with what detail.

84.    When the District initiated the investigation described above in Finding 15, it directed respondent to "maintain the confidentiality of both the fact of and information concerning" the investigation. Although many community members became aware of the investigation, the evidence did not establish that respondent violated the District's confidentiality directive.

## Additional Evidence

85.    The Commission heard evidence about several matters that were material to its decision, although the District did not allege them as grounds for respondent's dismissal.

### FALSE STATEMENTS AND TESTIMONY

86.    The District does not allege that the incidents summarized above in Findings 28 and 29 and below in Findings 87 through 93 constitute cause for respondent's dismissal. Respondent volunteered testimony about these incidents, however. This testimony was emphatic, detailed, and in key respects false.

24

87.    The incident in which respondent admitted having given alcohol to a minor occurred during a camping trip in July 2016 that respondent had organized through his church. Fifteen-year-old Aidan Willner participated in the trip. Neither of Willner's parents accompanied him.

88.    Willner had been respondent's student, and he also had gone on one or more previous camping trips with respondent. Willner's mother, Helen O'Dea, is a teacher with the District.

89.    During the trip, respondent and several teenage participants took an overnight backpacking excursion. Respondent testified that he asked Willner to lead some of the other, younger hikers and that Willner did so successfully. Willner testified that he did not take any special role during the hike.

90.    When the backpacking group arrived at its campsite, most of the group decided after the evening meal to walk a short distance away to explore a nearby abandoned cabin. Respondent and Willner stayed behind.

91.    Respondent testified that as he and Willner relaxed at the campsite near a campfire, respondent poured himself a modest amount of whiskey. He congratulated Willner on his leadership during that day's hike, and offered Willner a sip of whiskey from his cup as a toast. Willner accepted it, and respondent did not offer Willner more, either that night or on any other occasion.

92.    Willner testified that as he and respondent relaxed at the campsite near a campfire, respondent poured himself some whiskey and also offered to pour some into Willner's own cup. Willner accepted the whiskey and drank it. Respondent then offered Willner a refill, which Willner accepted and drank. When respondent offered Willner a second refill, Willner declined, and excused himself to sleep.

25

93.     Willner also testified that later in the same trip, at a different campsite in the morning, respondent added something "minty" to Willner's hot chocolate. Willner believed the addition included alcohol, in part because respondent told Willner not to let the other youths know that respondent had added the substance to Willner's cup.

94.     When Willner returned home from the trip, he did not immediately mention the campfire whiskey or the spiked hot chocolate to his parents. Later, when he discussed the matter with his mother, he downplayed the incidents.

95.     O'Dea also testified. She stated that she heard first from respondent's pastor about the possibility that respondent had offered her son alcohol during the July 2016 camping trip.

96.     O'Dea spoke to Willner about the pastor's report, and understood Willner to have told her that respondent had offered him only a sip of alcohol. Later, without Willner's knowledge, O'Dea attended a meeting involving respondent and the pastor in which they discussed the incident. According to O'Dea, respondent grudgingly endorsed her description of her son's account, agreeing that he had given Willner a sip of alcohol as they sat by a campfire and apologizing for his poor judgment. O'Dea does not recall respondent's offering any independent account of the incident during that meeting.

97.     O'Dea considered the matter closed after her meeting with respondent and the pastor. During the District's investigation into the spring 2018 anonymous letter described above in Finding 14, however, the investigator contacted her for information about her son's July 2016 experience. O'Dea confirmed the information she had learned in 2016 from her son and from respondent. She and Willner both

26

testified that Willner was in poor mental health during 2018 and that he did not wish to offer further information to the District's investigator at that time.

98.    Respondent contends that Willner's testimony to the Commission embellished the incident, and that discrepancies between Willner's testimony in 2021 and the stories he told his mother in 2016 confirm that Willner's earlier description was true. Rather than undermining Willner's credibility, however, these discrepancies reflect Willner's improved mental health and his adult maturity. The evidence did not establish that Willner spoke to any adults outside his family in either 2016 or 2018 about respondent's offering him alcohol in July 2016, and it did establish that he felt conflict and shame about the incident when it occurred and for some time afterward. As between Willner's testimony about this incident and respondent's, Willner's testimony is more credible.

99.    Respondent also contends that O'Dea exaggerated his culpability in this incident, and encouraged her son and others to give false information to District administrators and to the Commission, because of her extreme animosity toward him arising from the political conflict described above in Findings 11 and 12. O'Dea testified, in contrast, that she holds no special animosity toward respondent because of that political conflict. Instead, her dislike for respondent stems from her understanding that he offered alcohol to her vulnerable son in July 2016, and from her perception that respondent continues to minimize this conduct's wrongfulness.[5] In

_____

[5] On several occasions, including in his testimony to the Commission, respondent has characterized his error with respect to Willner as a mistake akin to a traffic infraction.

27

light of all the evidence in this matter, O'Dea's testimony about her own motivations is credible, and respondent's is not.

100.    Respondent gave Willner more than a single sip of whiskey at the campfire, and he also gave Willner alcohol on a later morning. On neither occasion did respondent offer Willner alcohol to celebrate a milestone or an unusual success. Instead, respondent served Willner alcohol casually, as if Willner were an adult peer. Respondent's testimony, as summarized in Finding 91, is false.

101.    In response to the District letter described in Finding 14, respondent stated falsely that he had given a minor "a single sip of an alcoholic beverage as a toast after a significant outdoor achievement." Likewise, several witnesses aside from respondent testified that respondent had told them about giving Willner alcohol in July 2016, in terms that were essentially identical to his false statement to the District and his false testimony to the Commission. Some of these witnesses testified specifically that the incident, as they understood it, did not reflect poorly on respondent because it seemed so minimal.

102.    Respondent testified that Willner was the only teen to whom respondent ever has offered alcohol during a camping trip. The Commission heard additional evidence to the effect that respondent had served alcohol to a second teen during the same July 2016 trip. This evidence was inconclusive.

### BOARD POLICY 4119.21

103.    During her tenure as District superintendent, Fraser caused the Board to amend and update many of its adopted Board Policies. She did so generally to ensure that these policies reflected current professional norms.

28

104. As adopted on May 9, 2012, Board Policy 4119.21 called for District employees to behave in a manner that would "enhance the integrity of the district and advance the goals of the district's educational programs." It required employees to "exercise good judgment and maintain professional standards and boundaries when interacting with students both on and off school property." As examples of inappropriate conduct, Board Policy 4119.21 listed "engaging in harassing or discriminatory behavior" and "furnishing tobacco, alcohol, or other illegal or unauthorized substances to a student."

105. At its meeting on February 12, 2020, the Board considered and adopted amendments to Board Policy 4119.21. The Board's printed agenda summarized this action item as, "review the current Board policy to align with current California School Boards Association board Policy." The Board adopted the revised policy, but the evidence did not establish whether the revisions affected any of the statements summarized above in Finding 104.

106. At the same February 12, 2020, meeting, the Board also adopted or revised several other policies that revised Board Policy 4119.21 cross-referenced, including a "Code of Ethics" and policies about "Firearms on School Grounds," "Employee Security," and "Bullying." These other policies were not in evidence.

## TEACHING SKILL

107. The Commission received testimony from several parents who stated credibly that respondent taught and mentored their children very effectively. Some of these parents' children were among the accelerated mathematics students who respondent taught beginning in fifth grade. One parent testified, however, that her child was in the same grade as the accelerated mathematics students but was not

29

among them. That parent and her child believed that separating the accelerated students for instruction also benefited the other students, because it created better opportunities for respondent to teach all students at their appropriate levels.

108.    On September 10, 2020, Martin observed one of respondent's videoconference classes. He believed that respondent interacted well with students. Martin sent respondent email after that observation stating that respondent had shown "astounding" patience, and great skill both in complimenting students' correct answers and in identifying students' mistakes without undermining their confidence.

## LEGAL CONCLUSIONS

1.    The District bears the burden in this matter of proving facts and circumstances constituting cause under the Education Code for respondent's dismissal. A preponderance of the evidence must prove these facts and circumstances. (*Gardner v. Commission on Professional Competence* (1985) 164 Cal.App.3d 1035, 1038-1039.)

2.    The Commission has considered all testimonial and documentary evidence, and weighed all witnesses' credibility, in making the factual findings above. These findings reflect a preponderance of the evidence.

### Cause for Dismissal

3.    The District alleges three statutory causes for respondent's dismissal: immoral conduct (Ed. Code, § 44932, subd. (a)(1)), evident unfitness for service (*id.*, subd. (a)(7)), and persistent violation of, or refusal to obey, reasonable regulations prescribed by the Board (*id.*, subd. (a)(8)).

30

## PERSISTENT VIOLATION OF REGULATIONS

4. The only Board-adopted regulation in evidence was Board Policy 4119.21, as it existed between May 2012 and February 2020.

5. Board Policy 4119.21 forbids District employees from offering alcohol to students, but the matters stated in Findings 30 through 44, 87 through 93, and 102 do not establish that respondent ever offered alcohol to a District student.

6. Aside from its few specific examples, Board Policy 4119.21 makes extremely general references to professionalism and integrity, as summarized in Finding 104. The matters stated in Findings 45 through 84 do not constitute persistent failure or refusal by respondent to follow these vague standards.

### IMMORAL CONDUCT

7. The Education Code further defines "immoral conduct" as "including, but not limited to, egregious misconduct." (Ed. Code, § 44932, subd. (a)(1).) Courts have interpreted this term to mean conduct "indicative of corruption, indecency, depravity, [or] dissoluteness," as "shameless conduct showing moral indifference to the opinions of respectable members of the community," or as "an inconsiderate attitude toward good order and the public welfare." (*Palo Verde Unified Sch. Dist. v. Hensey* (1970) 9 Cal.App.3d 967, 972.)

8. The matters stated in Findings 28 through 84 do not constitute immoral conduct within the meaning of the Education Code.

31

**EVIDENT UNFITNESS FOR SERVICE**

9.      The Education Code authorizes a school district to dismiss a permanent certificated employee who is "clearly not fit, not adapted to, or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies." (*Woodland Joint Unified Sch. Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1444.) Such evident unfitness may exist, for example, when a teacher is repeatedly and incurably insubordinate, or is incapable of maintaining cordial, cooperative relationships with colleagues. (*Id.,* at pp. 1436-1440.)

10.      The Commission must evaluate "unfitness," in this context, with reference to several criteria, including likelihood and degree of adverse impact on students and fellow teachers, proximity or remoteness in time of the relevant conduct, extenuating or aggravating circumstances, praiseworthiness or blameworthiness of the teacher's motives, and likelihood of recurrence. (*Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 229-230.) In addition, the Commission must evaluate whether the conduct demonstrating unfitness "is caused by a defect in temperament." (*Woodland, supra,* 2 Cal.App.4th at p. 1445.) In light of the matters stated below in Legal Conclusions 11 through 19, the conduct described in Findings 30 through 44 (taking four teens to Las Vegas and failing to supervise them properly), 51 through 69 (refusing to follow Martin's and Fraser's directives, and teaching a course that was not in the District's curriculum), 71 through 75 (resisting both supervision and cooperation), and 78 (communicating unprofessionally with parents) establishes respondent's evident unfitness for service.

## Adverse Impact on Students and Fellow Teachers

11.    The matters stated in Findings 33, 36, 42 and 43 threatened adverse impact to Cunningham, Freiling, Peck, and Vierra, and especially to the latter two. In addition, the matters stated in Findings 52 through 60 threatened significant adverse impact to students, who risked missing credit for a key course. The matters stated in Findings 61 through 69 confirm that respondent brushed off warnings from Fraser regarding potential adverse effects on students from his "remote wilderness school camps." Finally, the matters stated in Findings 11, 12, 21, 22, 24, 25, 45, 74, and 78 show that respondent became notorious in the District's small community because of his behavior, undermining his ability to cooperate with fellow teachers and with District administrators to serve students.

12.    Although the evidence did not show actual, serious harm to students from respondent's behavior, the evidence overall showed that respondent created serious risks of such harm. Moreover, the rancor evident before the Commission did reflect damage to the District's educational community, and the matters stated in Findings 11, 12, 18, 21, 22, 24, 25, 74, and 78 show that respondent's conflict-seeking behavior was a significant cause of that damage.

## Proximity or Remoteness in Time

13.    The matters stated in Findings 30 through 44, 51 through 69, 71 through 75, 78, and 98 through 101 confirm that conduct showing respondent's unfitness continued until and even after his suspension from duty.

33

## Extenuating or Aggravating Circumstances

14.    The COVID-19 pandemic was both an extenuating and an aggravating circumstance in this matter. On the one hand, and as shown in Findings 48, 49, 53, and 79, the pandemic disrupted previous teaching practices and forced the entire District community to adapt and compromise. On the other hand, and as shown in Findings 51 through 69, respondent's steadfast refusal to share information with Fraser and to follow Martin's instructions exacerbated uncertainty and anxiety for Fraser and Martin as well as for parents and students.

15.    Respondent's dishonesty, as summarized in Findings 91, 100, and 101, is a significantly aggravating circumstance in this matter.

## Respondent's Motives

16.    The matters stated in Findings 46 through 50 confirm that respondent established his 2020–2021 algebra course with praiseworthy motives. More generally, the matters stated in Findings 46 through 50, 107, and 108 revealed respondent's sincere interest in teaching well, and also in mentoring adolescents outside the classroom.

17.    The matters stated in Findings 18, 52, 56, 58, 60, 64, 67, 69, and 72 through 75, however, reflect respondent's insistence on prolonging conflicts, and his refusal to accept partial victories. These motives are blameworthy.

## Likelihood of Recurrence

18.    The matters stated in Findings 72 through 75 confirm that if the District retained respondent as a teacher, respondent would continue to stoke conflict within

the District and to resist any efforts by District administrators to control or supervise
his teaching.

### Temperament

19.     As summarized in Findings 69, 72, 100, and 101, respondent expressed
minimal remorse before the Commission for any of the conduct showing his unfitness
for service. To the contrary, and as summarized in Findings 14, 56, 74, 77, 98, and 99,
and in Legal Conclusions 20 through 23, respondent presented himself to the
Commission as someone who deserves respect for his moral courage but who instead
faces persecution. These matters, all together, make respondent's unfitness evident.

## Retaliation for Constitutionally Protected Activities

20.     Respondent contends that the District's effort to dismiss him from
employment constitutes unlawful retaliation against him for exercising his rights under
the California and United States Constitutions to express his personal views and to
participate in his community's political life.

21.     Respondent contends specifically that the Board revised Board Policy
4119.21 in February 2020 to target him for dismissal. The matters stated in Findings 19
and 103 through 106, and in Legal Conclusion 6, do not support this contention.

22.     As additional support for his retaliation defense, respondent identified
many examples that he characterized as acts by community members and by fellow
District faculty members arising from their hostility to respondent's views and political
positions. Because such examples, if true, might undermine these people's credibility,
the Commission has addressed credibility where relevant. Such examples would not
establish unlawful retaliation against respondent by the District itself, however,

35

because every community member and District faculty member has the same personal rights respondent has to state opinions and to petition government agencies for action. Whether wise or unwise, respondent's neighbors and colleagues have the right to express disagreement or disrespect to respondent on social media or to his face; to ignore or even to criticize him in faculty meetings; and to ask the District to dismiss him because of real or imagined deficiencies in his performance or his character.

23. Respondent also contends that Board members and administrative staff have displayed animus toward respondent because of his political opinions and activities, and that this animus proves that his dismissal from employment would constitute unlawful retaliation against him for exercising his right to free speech and political participation. This contention ignores two key protections the Education Code gives respondent.

a. First, the District cannot dismiss respondent unilaterally. Rather, under Education Code sections 44943 and 44944, because respondent requested a hearing, this Commission—comprising by law persons who have no prior relationship with respondent, with the District's administrators and elected officials, or with the events at issue—must decide whether or not the District should dismiss respondent from employment.

b. Second, under Education Code section 44932, this Commission may direct the District to dismiss respondent only if statutory cause exists to dismiss him, and not otherwise. As with community members and fellow faculty members, Board members' and administrators' animus toward respondent, if proven, might have affected their credibility before the Commission. Any such animus did not prevent the Commission's finding cause to dismiss respondent, however.

36

24. Although the Commission has found cause to dismiss respondent, the Commission has discretion to decline to dismiss him. (*Fontana Unified Sch. Dist. v. Burman* (1988) 45 Cal.3d 208, 222.) Respondent's contention that his dismissal would constitute unlawful retaliation against him is most relevant to the Commission's exercise of this discretion.

25. The totality of evidence in this matter does not establish an effort by the Board or by District administrators to discipline or to dismiss respondent because of his opinions or his political activity. To the contrary, all evidence in this matter shows that after significant conflict within the District in March and April 2018, the District in October 2018 offered respondent the opportunity to save face and move on. Respondent emphatically rejected this opportunity. Instead, between October 2018 and the hearing, respondent made repeated efforts to reopen and revisit the 2018 conflicts. He also responded to new potential and minor conflicts by amplifying them into major conflicts; he became increasingly insubordinate and uncommunicative regarding school activities, even during the novelty and uncertainty of the COVID-19 pandemic; and he continued to exercise very poor judgment outside school in circumstances involving his supervision of teenagers.

26. The Commission finds the matters stated in Findings 30 through 44, 51 through 69, 71 through 75, and 78, and in Legal Conclusions 9 through 19 to justify respondent's dismissal from employment regardless of his opinions or his participation in political activity within the District.

27. The Commission does not direct the District to dismiss respondent from employment to punish him, or to retaliate against him for having exercised his rights to express his opinions and to participate in the community's political life. The Commission directs the District to dismiss respondent from employment because a

37

preponderance of the evidence before the Commission establishes his evident unfitness to continue teaching District students.

## ORDER

Respondent David Kissner is dismissed from his position as a permanent certificated employee of the Loma Prieta Joint Union School District due to evident unfitness for service.

DATE:  12/07/2021

*Juliet C. Cox*

JULIET E. COX

Commission Member

Administrative Law Judge

Office of Administrative Hearings

DATE:  12/06/2021

*Katherine E. Everett*
Katherine E. Everett (Dec 6, 2021 09:19 PST)

KATHERINE EVERETT, Ed.D.

Commission Member

DATE:  12/07/2021

*Scott Guagliardo*
Scott Guagliardo (Dec 7, 2021 12:33 PST)

SCOTT GUAGLIARDO

Commission Member

1  William J. Becker, Jr., Esq. (SBN: 134545)
   Bill@FreedomXLaw.com
2  Freedom X
   11500 Olympic Blvd., Suite 400
3  Los Angeles, California 90064
   Telephone: (310) 636-1018
4

5  Counsel for *David M. Kissner*

6

7

8              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
9

10 **DAVID M. KISSNER**,                Case No. 22-CV-00949-CRB

                  Plaintiff,
11                                     Hon. Charles R. Breyer

12           vs.                       **PLAINTIFF DAVID M. KISSNER'S
                                       RESPONSE TO DEFENDANT KEVIN
13 **LOMA PRIETA JOINT UNION SCHOOL    GRIER'S REQUESTS FOR ADMISSION,
   DISTRICT, et al.,**                 SET ONE**
14
                  Defendants.          Case Filed: February 16, 2022
15                                     Trial Date: None Set

16

17

18 PROPOUNDING PARTY:      Defendant, Kevin Grier

19 RESPONDING PARTY:       Plaintiff, David M. Kissner

20 SET NO.:                One
21

22        **RESPONSES TO REQUESTS FOR ADMISSION**

23 **Request for Admission No. 1:**

24     Admit that Kevin Grier was not the Superintendent of Loma Prieta Joint Union School

25 District at the time that your employment at Loma Prieta Joint Union School District was

26 terminated.

27 / / /

28
                                   1                    Case No. 22-CV-00949-CRB
**Pl.'s Response To Req. For Admiss. Set One,**
**Propounded By Def. Kevin Grier**

**1 SER 71**

**Response to Request for Admission No. 1:**

Deny. Responding Party's termination was not effective until the OAH decision was issued on December 7, 2021. Grier became Superintendent in June of 2021.

**Request for Admission No. 2:**

Admit that Kevin Grier was not employed at Loma Prieta Joint Union School District at the time that your employment at Loma Prieta Joint Union School District was terminated.

**Response to Request for Admission No. 2:**

Deny. Responding Party's termination was not effective until the OAH decision was issued on December 7, 2021. Grier became Superintendent in June of 2021.

**Request for Admission No. 3:**

Admit that Kevin Grier played no role in the decision to terminate your employment at Loma Prieta Joint Union School District.

**Response to Request for Admission No. 3:**

Deny. Responding Party's termination was not effective until the OAH decision was issued on December 7, 2021. OAH hearing had not begun when Grier became superintendent. Grier participated in board discussions about the dismissal proceedings including settlement offer negotiations related to Responding Party's termination.

**Request for Admission No. 4:**

Admit that Kevin Grier was not the Superintendent of Loma Prieta Joint Union School District at any time between the date you were hired by Loma Prieta Joint Union School District and the date your employment at Loma Prieta Joint Union School District was terminated.

**Response to Request for Admission No. 4:**

Deny. Responding Party's termination was not effective until the OAH decision was issued on December 7, 2021. Grier became Superintendent in June of 2021.

Pl.'s Response To Req. For Admiss. Set One,
Propounded By Def. Kevin Grier

**1 SER 72**

**Request for Admission No. 5:**

Admit that Kevin Grier was not employed at Loma Prieta Joint Union School District at any time between the date you were hired by Loma Prieta Joint Union School District and the date your employment at Loma Prieta Joint Union School District was terminated.

**Response to Request for Admission No. 5:**

Deny. Responding Party's termination was not effective until the OAH decision was issued on December 7, 2021. Grier became Superintendent in June of 2021.

**Request for Admission No. 6:**

Admit that Kevin Grier played no role in any adverse employment action against you, at any time.

**Response to Request for Admission No. 6:**

Deny. Propounding Party supervised over the accepting of the OAH dismissal hearing decision and finalizing Responding Party's termination. Additionally, Propounding Party supervised over two consecutive years in which he did not rescind the layoff, having replaced Responding Party in his position with junior, less experienced teachers.

**Request for Admission No. 7:**

Admit that Kevin Grier was not the Superintendent of Loma Prieta Joint Union School District at the time that you were laid off from your employment at Loma Prieta Joint Union School District.

**Response to Request for Admission No. 7:**

Admit.

**Request for Admission No. 8:**

Admit that Kevin Grier was not employed at Loma Prieta Joint Union School District at the time that you were laid off from your employment at Loma Prieta Joint Union School District.

**Response to Request for Admission No. 8:**

Admit.

**Request for Admission No. 9:**

Admit that Kevin Grier was not employed at Loma Prieta Joint Union School District at any time between the date you were hired by Loma Prieta Joint Union School District and the date that you were laid off from your employment at Loma Prieta Joint Union School District.

**Response to Request for Admission No. 9:**

Admit.

**Request for Admission No. 10:**

Admit that Kevin Grier played no role in the decision to lay you off from your employment at Loma Prieta Joint Union School District.

**Response to Request for Admission No. 10:**

Deny. Propounding Party is obligated under Educ. Code § 45298 to give priority rehire rights to Responding Party for his position for 39 months after a layoff. Because the purported budget cuts and reduction in staff which were claimed to be the reasons supporting Responding Party's layoff never took place, Propounding Party was obligated to rescind the layoff and pay Responding Party's full salary and benefits during the pendency of the dismissal process. Propounding Party failed to rescind the layoff despite Responding Party's priority rehire status in two years of hiring teachers who are junior to and less experienced than Responding Party, violating the Education Code.

Date: March 15, 2023                    FREEDOM X

                        By:   /s/ William J. Becker, Jr.
                              William J. Becker, Jr.
                              Attorneys for Plaintiff, David M. Kissner

Pl.'s Response To Req. For Admiss. Set One,
Propounded By Def. Kevin Grier

## <u>VERIFICATION</u>

STATE OF CALIFORNIA )

COUNTY OF SAN ) ss.

FRANCISCO )

I, David M. Kissner, declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing **PLAINTIFF DAVID M. KISSNER'S RESPONSE TO DEFENDANT KEVIN GRIER'S REQUESTS FOR ADMISSION, SET ONE** and know its contents. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I am informed and believe that they are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 14th day of March, 2023, at Rapid City, South Dakota.

_____
David M. Kissner

Case No. 22-CV-00949-CRB

Verification

```
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3  _____

 4  DAVID M. KISSNER,

 5                    Plaintiff,

 6       vs.                        No.  3:22-cv-00949-CRB

 7  LOMA PRIETA JOINT UNION
    SCHOOL DISTRICT, et al.,
 8
                      Defendants.
 9  _____

10            DEPOSITION OF DAVID M. KISSNER

11  _____

12            BE IT REMEMBERED that on the 9th day of

13  June, 2023, at the hour of 10:00 a.m. the deposition of

14  DAVID M. KISSNER, via Zoom video conference, was taken at

15  the request of the Defendants, before Caryn E. Winters

16  Keller, CRR, RPR, Washington CCR No. 2496, California CSR

17  No. 14512, No. Idaho CSR No. SRL-718, at (city confidential)

18  Wyoming, pursuant to the Federal Rules of Civil Procedure.

19

20

21

22

23

24

25
```

DAVID M. KISSNER - 06/09/2023

Page 49

1  received the Notice of Proposed Intent to Dismiss, there

2  were only four members of the board of trustees for the

3  school district, correct?

4      A   I believe that's correct.

5      Q   As of February of 2021, Charlotte Khandelwal was not

6  on the board, correct?

7      A   That's correct.

8      Q   Is it also correct that Miss Khandelwal was not on

9  the board at the time that the board voted to approve your

10  layoff in March of 2021?

11     A   That's correct.

12     Q   Prior to that in November of 2020, in addition to

13  Measure N there was a board election that was on the ballot,

14  correct?

15     A   That's correct.

16     Q   And there were two open seats on the board that were

17  up for election in November of 2020, correct?

18     A   Correct.

19     Q   And your wife, Stacy Kissner, ran for one of those

20  seats, correct?

21     A   That's correct.

22     Q   The individuals who were elected in November of 2020

23  for those two seats were Erin Ashegian and Alexandra Hall,

24  correct?

25     A   Correct.

DAVID M. KISSNER - 06/09/2023

Page 64

1    for speculation, and in some respect also calls for

2    knowledge beyond the witness' personal knowledge.

3        Q    (By Mr. Modafferi)  Is it your understanding, Mr.

4    Kissner, that at the time resolution number 21-XII was

5    adopted in February of 2021 that Miss Khandelwal was not on

6    the board?

7        A    Correct.

8        Q    Similarly, when the board adopted resolution 21-XIV

9    in March of 2021, Miss Khandelwal was not on the board,

10   correct?

11       A    Correct.

12                MR. BECKER:  Danny, do we have an individual

13   capacity claim against her?

14                MR. MODAFFERI:  As far as I know, yeah.

15                MR. BECKER:  Just to be clear on your

16   questions, you're asking whether when the resolutions were

17   officially adopted whether she was on the board, correct?

18                MR. MODAFFERI:  Correct.

19                MR. BECKER:  Okay.

20       Q    (By Mr. Modafferi)  I'm looking, Mr. Kissner, at the

21   page that starts with Z11.  It's part of Exhibit 12.  Are

22   you with me?

23       A    I am.

24       Q    And this two-paged document that spans from Z11 to

25   Z12, is this a letter that you received from Superintendent

DAVID M. KISSNER - 06/09/2023

Page 65

1    Fraser in March of 2021?

2        A    Yes.

3        Q    And this letter provided you notice of the district's

4    intent to lay you off, correct?

5        A    Correct.

6        Q    You received this notice before the layoff had

7    actually been effected, correct?

8        A    Correct.

9        Q    And upon receiving the notice from Miss Fraser of the

10   district's intent to lay you off, you requested a hearing

11   with the board, correct?

12       A    I believe the hearing that I requested is with an

13   administrative law judge.

14       Q    Was there a hearing with the board that you attended

15   at any point between when you received the notice from Miss

16   Fraser of the intent to lay you off and when you went before

17   the administrative law judge regarding the layoff?

18       A    No.

19       Q    I'm still in Exhibit 12, looking at page Z72.  Is

20   that your signature on this page, sir?

21       A    Yes.

22       Q    And did you write that date, 12 March 2021?

23       A    Yes.

24       Q    This was your acknowledgement that you had received

25   the notice of intent to lay you off from Miss Fraser,

DAVID M. KISSNER - 06/09/2023

Page 67

```
 1      Q   (By Mr. Modafferi)  Do you have a response, sir?

 2                  REPORTER:  Mr. Kissner, you're muted.  So if

 3   you answered, we didn't get it.

 4      A   Is there a question specific for me?

 5      Q   (By Mr. Modafferi)  Sure, I'll repeat it.  The

 6   question was, this notification in March of 2021 that you

 7   would, in fact, be laid off also notified you that you had

 8   the right to request a hearing regarding the layoff,

 9   correct?

10      A   Correct.

11      Q   And you did, in fact, request a hearing regarding the

12   layoff, correct?

13      A   Correct.

14      Q   And you had a hearing before an administrative law

15   judge regarding the layoff?

16      A   Yes.

17      Q   You were represented by counsel during that hearing?

18      A   Yes.

19      Q   And the administrative law judge ultimately upheld

20   your layoff, correct?

21      A   Correct.

22      Q   And then you had the right to appeal the

23   administrative law judge's decision to the Superior Court,

24   correct?

25      A   Correct.
```

DAVID M. KISSNER - 06/09/2023

Page 68

```
 1      Q   And you did, in fact, file an appeal from the ALJ's

 2   decision regarding your layoff, correct?

 3      A   Correct.

 4      Q   And you were represented by counsel during the

 5   Superior Court proceedings regarding your layoff?

 6      A   Yes.

 7      Q   And then the Superior Court upheld your layoff,

 8   correct?

 9      A   Correct.

10      Q   I'm sharing my screen again with you, and I'm showing

11   you what I've marked as Exhibit 13, which starts on

12   Plaintiff's Bates number 778.  Do you see that, sir?

13      A   Yes.

14      Q   And do you recognize this to be the Notice of

15   Proposed Intent to Dismiss with Statement of Charges that

16   Superintendent Fraser issued to you on February 12, 2021?

17      A   Yes.

18      Q   Your termination from Loma did not become effective

19   until the Commission on Professional Competence made its

20   decision in December of 2021, correct?

21          MR. BECKER:  Object.  Vague as to the meaning

22   of termination.

23      A   That is my understanding of when I ceased to be

24   employed by the Loma Prieta, would be -- well, that's not

25   quite true because of the layoff.  But I guess my
```

DAVID M. KISSNER - 06/09/2023

Page 69

1    understanding is that my termination was complete

2    in December, yes.

3        Q    (By Mr. Modafferi)  Prior to your termination

4    actually being legally effective, you received written

5    notice from the school district of its intent to terminate

6    you, correct?

7        A    Correct.

8        Q    And they provided you with a written explanation of

9    the causes for which they proposed to terminate you,

10   correct?

11       A    Correct.

12       Q    And you had the right to request a hearing before

13   your termination became effective, correct?

14       A    Correct.

15       Q    And you did, in fact, request a hearing?

16       A    Yes.

17       Q    That hearing was before a three-judge panel of the

18   Commission on Professional Competence?

19       A    It wasn't three judges, but it was with an

20   administrative panel, yes.

21       Q    Was there a hearing with the board at any time

22   regarding your termination?

23       A    There were a couple of things with the board

24   regarding my termination.

25       Q    When you say "a couple of things," was there actually

DAVID M. KISSNER - 06/09/2023

Page 70

1    a hearing regarding your termination where you were

2    presented with charges and/or you presented defenses to

3    charges?

4        A    No.  No, nothing -- nothing evidentiary.  But I

5    believe it's a required hearing -- after I request a -- a

6    hearing, then the district -- the board then has to decide

7    whether or not they're going to go forward with dismissal

8    charges.  I know Mr. Becker and myself were there remotely

9    for it.  Mr. Becker spoke with the board.  So there was

10   that.

11                And then at some point prior to the long --

12                MR. BECKER:  By the way, we weren't there

13   physically.  We were there appearing remotely, just as we

14   are right now.

15       A    And then some time prior to the commencement of the

16   dismissal hearing the Loma board convened an emergency

17   closed-session hearing, I guess, a meeting to discuss a

18   potential for settlement.

19       Q    (By Mr. Modafferi)  The meeting with the board that

20   you described where you and Mr. Becker appeared remotely,

21   was that in closed session?

22       A    Yes.

23       Q    And I assume you must have received notice ahead of

24   time since you were able to plan to have your counsel there,

25   correct?

DAVID M. KISSNER - 06/09/2023

Page 71

1     A   Yes.

2     Q   At the time of the meeting where you and Mr. Becker

3   appeared remotely in closed session with the board, was Miss

4   Khandelwal on the board?

5     A   I believe so, but I'm not a hundred percent sure.

6     Q   And then ultimately you -- once -- once -- sorry, let

7   me start that all over.  Once the school district decided to

8   move forward with your termination, you had the right to

9   conduct discovery, correct?

10     A   Yes.

11     Q   You had the right to subpoena witnesses?

12     A   Yes.

13     Q   You had the right to depose witnesses?

14     A   Yes.

15     Q   You had the right to request documents from the

16   school district?

17     A   Yes.

18     Q   And you had the right to be represented by counsel

19   throughout that discovery process, correct?

20     A   Correct.

21     Q   And then when you went in front of the three member

22   administrative panel, you had the right to call witnesses to

23   testify at that proceeding, correct?

24     A   Correct.

25     Q   And you had the right to present evidence in your

DAVID M. KISSNER - 06/09/2023

Page 72

 1   defense?

 2      A   Yes.

 3      Q   You had the right to be represented by counsel at

 4   that proceeding in front of the three member administrative

 5   panel?

 6      A   Yes.

 7      Q   Ultimately, the three member administrative panel

 8   upheld your termination -- well, upheld isn't the right

 9   word.  Let me start that over.

10                 Ultimately the three member administrative

11   panel found that the evidence was sufficient to recommend

12   your termination from the district in December of 2021,

13   correct?

14      A   Yes.

15      Q   And then you had the right to appeal that decision to

16   the Superior Court, correct?

17      A   Correct.

18      Q   And you did, in fact, appeal the administrative

19   panel's decision on your termination to the Superior Court,

20   correct?

21      A   Correct.

22      Q   And you were permitted to be represented by counsel

23   in the Superior Court proceedings regarding the termination,

24   correct?

25      A   Correct.

1 SER 85

DAVID M. KISSNER - 06/09/2023

Page 105

1                      C O R R E C T I O N S

2    Page        Line

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21           I have read the foregoing _____ pages of my

22    testimony and believe the same to be true except for

23    correction(s) noted above.

24                                    _____

25    DATED:_____        DAVID M. KISSNER

DAVID M. KISSNER - 06/09/2023

Page 106

1  UNITED STATES DISTRICT COURT)
                                    ss:   REPORTER'S CERTIFICATE
2  NORTHERN DISTRICT OF CALIFORNIA)

3          I, Caryn E. Winters Keller, a certified court

4  reporter in and for the states of Washington, California,

5  and Idaho, do hereby certify:

6          That the foregoing deposition of DAVID M.

7  KISSNER, via Zoom video conference, was taken on the date

8  and at the time and place as shown on Page 1 hereto;

9          That the witness was sworn upon their oath to

10  tell the truth, the whole truth and nothing but the

11  truth, and did thereafter make answers as appear herein.

12          That the foregoing is a true and correct

13  transcription of my shorthand notes of the requested

14  deposition transcribed by me or under my direction;

15          That the witness reserved reading and

16  signing.

17          WITNESS my hand this 21st day of June, 2023.

18

19          _____
            CARYN E. WINTERS KELLER, CRR, RPR
            CA CSR 14512
20

21  (This transcript and billing have been prepared/submitted
    for final preparation and delivery in accordance with all
    California state laws, rules, regulations, and applicable
22  court rules regulating formatting and equal-terms
    requirements.  Alterations, changes, fees, or charges that
23  violate any of these provisions are not authorized by me and
    are not at my direction or with my knowledge.)

24

25

Admitted 11

Z1

1

2

3

4                              **BEFORE THE**
                          **BOARD OF TRUSTEES OF THE**
5                 **LOMA PRIETA JOINT UNION SCHOOL DISTRICT**
                 **COUNTY OF SANTA CLARA, STATE OF CALIFORNIA**
6

7

8   In the Matter of the District's Reduction in        **OAH NO. 2021040076**
9   Force of
                                                        **STIPULATION OF JURISDICTIONAL**
10      **David Kissner,**                              **FACTS**

11  Respondent.                                         **Presiding ALJ:** Jill Schlichtmann

12                                                      **Remote Hearing Date:** 4/26/2021
                                                        **Remote Hearing Time:** 9:00 a.m.
13                                                      **Telephone Call In:** (916)245-8850
                                                        **Conference ID:** 224 937 466#
14

15          The parties in the above-captioned matter, through their undersigned counsel, hereby

16  stipulate to the following facts:

17          1.      The parties agree that David Kissner is the Respondent in the District's reduction in

18  force proceeding.

19          2.      On February 10, 2021 the District's Governing Board of Trustees adopted Board

20  Resolution No. 21-XII which sets forth "Criteria for Order of Certificated Layoff with Equal

21  Seniority" and procedure for determining the order of seniority of the District's certificated

22  employees who have the same credential and who first rendered paid service to the Dsitrict on the

23  same date.  A true and correct copy of the District's "Criteria for Order of Layoff with Equal

24  Seniority" is attached as Exhibit B to **Exhibit 1.**

25          3.      On March 10, 2021, the District's Governing Board of Trustees adopted Board

26  Resolution No. 21-XIV recommending a reduction in particular kinds of services provided by the

27  District for the 2021-2022 school year.  A true and correct copy of said Resolution is attached

28  hereto as **Exhibit 2.**

Z1

**Kissner 6-9-23**
**EX. 12**

- 1 -
**STIPULATION OF JURISDICTIONAL FACTS**

**1 SER 88**

Case: 24-1261, 07/24/2024, DktEntry: 15.2, Page 89 of 136
Case 3:22-cv-08519-CRB   Document 97-17   Filed 06/23/23   Page 2 of 49   (89 of 136)

Admitted 11

Z2

1     4.     The District timely served Respondent, David Kissner with a Notice of

2  Recommendation that Services Be Terminated informing him that the Superintendent had

3  recommended not to re-employ him in the upcoming 2021-2022 school year. A true and correct

4  copy of said Notices is attached hereto as **Exhibit 3**.

5     5.     Respondent David Kissner timely requested a hearing.

6     6.     The District timely served a District Statement of Reduction in Force, Statement to

7  Respondent, and blank Notice of Participation in Reduction in Force Hearing form, accompanied by

8  relevant sections of the Education Code and Government Code (collectively, "RIF Packet"), upon

9  Respondent David Kissner. The RIF Packet was served and filed by the District's Superintendent

10  in her official capacity. A true and correct copy of said RIF Packet is attached hereto as **Exhibit 4**.

11     7.     The District timely served a Notice of Reduction in Force Hearing on Respondent

12  David Kissner. The Reduction In Force Hearing was set by OAH for the hearing date for April 26,

13  2021 at 9:00 a.m. via telephonic conference call per Office of Administrative Hearings' orders of

14  April 12, 2021 in light of the ongoing COVID-19 public health and safety pandemic. A true and

15  correct copy of said Notice of Reduction in Force Hearing is attached hereto as **Exhibit 5**.

16     8.     On March 25, 2021, the District received a signed Notices of Participation in

17  Reduction in Force Hearing from Respondent David Kissner. A true and correct copies of said

18  Notice of Participation from David Kissner is attached hereto as **Exhibit 6**.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

- 2 -

**STIPULATION OF JURISDICTIONAL FACTS**

Case: 24-1261, 07/24/2024, DktEntry: 15.2, Page 90 of 136
Case 3:22-cv-06849-CRB   Document 97-17   Filed 06/23/23   Page 3 of 49          (90 of 136)

Admitted 11

Z3

1        9.    The Parties agree that David Kissner is the Respondent in this proceeding.

2    DATED: April 19, 2021                          Proactive Legal-Bock Law Group

3

4                                                   Amanda S. Georgino
                                                    Attorneys for Loma Prieta Joint
5                                                   Union School District

6

7                                                   Freedom X

8

9                                                   William J. Becker, Jr.
10                                                  Attorneys for Respondent
                                                    David Kissner
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION OF JURISDICTIONAL FACTS**

Admitted 11

Z4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

Z4

STIPULATION OF JURISDICTIONAL FACTS

Admitted 11

Z5

# LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

## RESOLUTION No. 21-XII

### ESTABLISHMENT OF CRITERIA FOR ORDER OF CERTIFICATED
### LAYOFF AND REEMPLOYMENT FOR EMPLOYEES WITH EQUAL SENIORITY

WHEREAS: The Board of Trustees of the Loma Prieta Joint Union School District will be determining reduction or elimination of particular kinds of service, resulting in a reduction of the number of certificated employees for the 2021-2022 school year, and

WHEREAS: In order to implement this reduction in force, it may be necessary to apply tie-breaker criteria to distinguish among permanent or probationary employees who first rendered paid service to the District on the same date. Pursuant to Education Code section 44955 (b), the Board of Trustees has determined that the order of termination between employees who first rendered paid service to the District on the same date shall be established on the basis of the following criteria in order to meet the needs of the District and students thereof, and

WHEREAS: The Board of Trustees has determined that the same criteria shall be applicable to determine the order of reappointment of permanent and probationary employees who first rendered paid service to the District on the same date pursuant to Education code section 44956, and

WHEREAS: These criteria will be used in the event of a tie to determine which permanent or probationary certificated employees will be retained in lieu of layoff and the order of reappointment when the number of employees is later increased or the discontinued service is reestablished, and

WHEREAS: The Superintendent, or her designee, shall determine the order of termination or reappointment solely on the basis of the needs of the District and the students considering one or more of the following criteria:

1.  Multiple Authorization Credentials;

2.  Experience teaching different subjects;

3.  Possession of a preliminary, clear, standard, or life teaching credential;

4.  Possession of a CLAD/BCLAD/CTEL certificate;

5.  Experience teaching at different grade levels;

6.  NCLB Teacher Requirement: Certificate of Compliance;

7.  Experience teaching in the District;

8.  Experience teaching outside the District;

Z5

Admitted 11

Z6

LOMA PRIETA JOINT UNION SCHOOL DISTRICT
RESOLUTION No. 21-XII
Establishment of Criteria For Order of Certificated
Layoff and Reemployment For Employees with Equal Seniority
Page 2 of 2

NOW THEREFORE BE IT RESOLVED: The Superintendent, or her designee, has the discretion to determine which criteria are most relevant to serve the needs of the District and students in each tie-breaker situation.

PASSED AND ADOPTED by the Board of Education of the Loma Prieta Joint Union School District on February 10, 2021, by the following vote:

| | |
|---|---|
| AYES | 4 |
| NOES | 0 |
| ABSENT | 0 |
| ABSTAIN | 0 |

I, Lisa Fraser, Superintendent of the Loma Prieta Joint Union School District, do hereby certify and declare that the foregoing is a full, true and complete copy of a Resolution duly passed and adopted by the Board of Trustees of the Loma Prieta Joint Union School District at a meeting of said Board duly and regularly called at Loma Prieta School District, Los Gatos, California on the 10th day of February, 2021.

By: _____
Lisa Fraser
Superintendent

Admitted 11

Z7



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2

- 4 -

**STIPULATION OF JURISDICTIONAL FACTS**

Z7

Admitted 11

Z8

## LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

### RESOLUTION No. 21-XIV

### REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE

WHEREAS, the Superintendent of the Loma Prieta Joint Union Elementary School District has recommended to the Board of Trustees that the District reduce or eliminate particular kinds of service(s) no later than the beginning of the 2021-22 school year; and

WHEREAS, the Board of Trustees is required by law under California Education Code section 44949 and 44955 to take action and give notice to all certificated employees affected by any decision to reduce or to eliminate particular kinds of services prior to March 15.

### NOW, THEREFORE, BE IT RESOLVED THAT:

A.      The Board of Trustees of the Loma Prieta Joint Union Elementary School District hereby determines to reduce or eliminate the following particular kinds of service of the District no later than the beginning of the 2021-22 school year:

4.0 FTE grades K-8 Classroom Teaching

B.      The Board of Trustees has determined to retain the following particular kinds of service:

1.  Mild to Moderate and Moderate to Severe Special Education Services
2.  Language, Speech and Hearing Special Education Services
3.  Resource Specialist Special Education Services
4.  Multiple Subject Teaching Credential

C.      Because of the above-listed elimination and reduction of particular kinds of service, it will be necessary to reduce or to terminate, at the end of the 2020-21 school year, the employment of certain certificated employees of the District as a result of this reduction of service.

D.      The Board has considered anticipated certificated employee attrition (resignation, retirement, non-reelection, temporary teacher release, etc.). Nevertheless, it is still necessary to terminate the above referenced certificated positions.

E.      The Superintendent or designee is directed to send appropriate notices to all employees affected by the above-listed reduction and elimination of particular kinds of services in accordance with the provisions of the California Education Code and to afford the employees all rights to which they are entitled under the law and, if applicable, the Collective Bargaining Agreement.

Z8

Admitted 11

Z9

LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT
RESOLUTION No. 21-XIV
REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE
Page 2 of 2

Adopted by the Loma Prieta Joint Union Elementary School District Board of Trustees on March 10, 2021, by the following vote:

AYES:  4
NOES:  0
ABSENT:  0
ABSTENTIONS: 0

Deana Arnold, Board President
March 10, 2021

Z9

Admitted 11

Z10



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 3

Z10

1 SER 97

Admitted 11

Z11



23800 Summit Road, Los Gatos California 95033
Phone: (408) 353-1101    Fax: (408) 353-8051
www.loma.k12.ca.us
Lisa Fraser, Superintendent
Dr. Billy Martin, Principal

March 12, 2021

David Kissner
25059 Skyland Road
Los Gatos, CA. 95033

Re:    Notice of Intent to Layoff

Dear David:

It is with regret that I, as Superintendent, provide you with this layoff notice.
Unfortunately, I found it necessary to recommend, and the Board of Education approved,
a certificated employee layoff for the 2021-2022 school year that affects your employment.
Please be assured that this layoff is not indicative of your abilities or performance. The
reduction in particular kinds of certificated services relates solely to the welfare of the
District's schools and students, given the economic realities of the District.

Specifically, on March 10, 2021, the Governing Board approved the reduction of particular
kinds of services at the conclusion of the 2020-2021 school year. A copy of the Board
Resolution is attached here for your convenience.

Please be assured that your receipt of this notice is not based on your performance or
abilities but is based on your seniority with the District. There is no probationary or
permanent certificated employee with less seniority retained who is rendering service for
which you are credentialed and competent to render.

You may request a hearing to determine whether there is cause for not re-employing you
for the 2021-2022 school year. A request for a hearing must be made in writing and
received by me personally or by mail at the address below on or before 4:00 p.m., March
22, 2021.

Lisa Fraser
Superintendent
23800 Summit Road
Los Gatos, CA. 95033

Board of Trustees:
Deana A. Arnold, President    Ron Hourque, Vice-President
Ben Abeln, Member    Erin Asheghian, Member

Z11

Admitted 11

Z12

If you fail to request a hearing on or before the date specified above, your failure to do so shall constitute a waiver of your right to a hearing. Attached is a request for a hearing form and copies of Education Code sections 44949 and 44955.

Your name will be placed on a 39-month reemployment list, and when openings arise, teachers affected by this reduction in force will be recalled in seniority order to fill openings in positions for which they are credentialed and competent to serve.

If you have any questions, please contact your local association representative or the personnel office. I appreciate everything you do for the students of our District, and thank you for your service.

Sincerely,

Lisa Fraser
Superintendent

Enclosures: California Education Code Sections 44949 and 44955
Request for Hearing Form
Board Resolution - PKS
Board Resolution - Tie Breaking Criteria

Z12

Admitted 11

Z13

**44949.**

(a) (1) No later than March 15 and before an employee is given notice by the governing board that his or her services will not be required for the ensuing year for the reasons specified in Section 44955, the governing board and the employee shall be given written notice by the superintendent of the district or his or her designee, or in the case of a school district that has no superintendent by the clerk or secretary of the governing board, that it has been recommended that the notice be given to the employee, and stating the reasons therefor.

(2) Until the employee has requested a hearing as provided in subdivision (b) or has waived his or her right to a hearing, the notice and the reasons therefore shall be confidential and shall not be divulged by any person, except as may be necessary in the performance of duties. However, the violation of this requirement of confidentiality, in and of itself, shall not in any manner be construed as affecting the validity of any hearing conducted pursuant to this section.

(b) The employee may request a hearing to determine if there is cause for not reemploying him or her for the ensuing year. A request for a hearing shall be in writing and shall be delivered to the person who sent the notice pursuant to subdivision (a), on or before a date specified in that subdivision, which shall not be less than seven days after the date on which the notice is served upon the employee. If an employee fails to request a hearing on or before the date specified, his or her failure to do so shall constitute his or her waiver of his or her right to a hearing. The notice provided for in subdivision (a) shall advise the employee of the provisions of this subdivision.

(c) If a hearing is requested by the employee, the proceeding shall be conducted and a decision made in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code and the governing board shall have all the power granted to an agency in that chapter, except that all of the following shall apply:

(1) The respondent shall file his or her notice of participation, if any, within five days after service upon him or her of the District Statement of Reduction in Force and he or she shall be notified of this five-day period for filing in the District Statement of Reduction in Force.

(2) The discovery authorized by Section 11507.6 of the Government Code shall be available only if request is made therefor within 15 days after service of the District Statement of Reduction in Force, and the notice required by Section 11505 of the Government Code shall so indicate.

(3) The hearing shall be conducted by an administrative law judge who shall prepare a proposed decision, containing findings of fact and a determination as to whether the charges sustained by the evidence are related to the welfare of the schools and the pupils of the schools. The proposed decision shall be prepared for the governing board and shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition. However, the governing board shall make the final determination as to the sufficiency of the cause and disposition. None of the findings, recommendations, or determinations contained in the proposed decision prepared by the administrative law judge shall be binding on the governing board. Nonsubstantive procedural errors committed by the school district or governing board of the school district shall not

Z13

Admitted 11

Z14

constitute cause for dismissing the charges unless the errors are prejudicial errors. Copies of the proposed decision shall be submitted to the governing board and to the employee on or before May 7 of the year in which the proceeding is commenced. All expenses of the hearing, including the cost of the administrative law judge, shall be paid by the governing board from the district funds.

(d) Any notice or request shall be deemed sufficient when it is delivered in person to the employee to whom it is directed, or when it is deposited in the United States registered mail, postage prepaid and addressed to the last known address of the employee.

(e) If after a request for hearing pursuant to subdivision (b) a continuance is granted pursuant to Section 11524 of the Government Code, the dates prescribed in subdivision (c) that occur on or after the date of granting the continuance and the date prescribed in subdivision (c) of Section 44955 that occurs after the date of granting the continuance shall be extended for a period of time equal to the continuance.

(f) The governing board may adopt from time to time rules and procedures not inconsistent with this section as may be necessary to effectuate this section.

*(Amended by Stats. 2013, Ch. 90, Sec. 1. (SB 546) Effective January 1, 2014.)*

Z14

Admitted 11

Z15

**44955.**

(a) No permanent employee shall be deprived of his or her position for causes other than those specified in Sections 44907 and 44923, and Sections 44932 to 44947, inclusive, and no probationary employee shall be deprived of his or her position for cause other than as specified in Sections 44948 to 44949, inclusive.

(b) Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, whenever the governing board determines that attendance in a district will decline in the following year as a result of the termination of an interdistrict tuition agreement as defined in Section 46304, whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, or whenever the amendment of state law requires the modification of curriculum, and when in the opinion of the governing board of the district it shall have become necessary by reason of any of these conditions to decrease the number of permanent employees in the district, the governing board may terminate the services of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render.

In computing a decline in average daily attendance for purposes of this section for a newly formed or reorganized school district, each school of the district shall be deemed to have been a school of the newly formed or reorganized district for both of the two previous school years.

As between employees who first rendered paid service to the district on the same date, the governing board shall determine the order of termination solely on the basis of needs of the district and the students thereof. Upon the request of any employee whose order of termination is so determined, the governing board shall furnish in writing no later than five days prior to the commencement of the hearing held in accordance with Section 44949, a statement of the specific criteria used in determining the order of termination and the application of the criteria in ranking each employee relative to the other employees in the group. This requirement that the governing board provide, on request, a written statement of reasons for determining the order of termination shall not be interpreted to give affected employees any legal right or interest that would not exist without such a requirement.

(c) Notice of such termination of services shall be given before the 15th of May in the manner prescribed in Section 44949, and services of such employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 44844 and 44845. In the event that a permanent or probationary employee is not given the notices and a right to a hearing as provided for in Section 44949, he or she shall be deemed reemployed for the ensuing school year.

Z15

Admitted 11

Z16

The governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render. However, prior to assigning or reassigning any certificated employee to teach a subject which he or she has not previously taught, and for which he or she does not have a teaching credential or which is not within the employee's major area of postsecondary study or the equivalent thereof, the governing board shall require the employee to pass a subject matter competency test in the appropriate subject.

(d) Notwithstanding subdivision (b), a school district may deviate from terminating a certificated employee in order of seniority for either of the following reasons:

(1) The district demonstrates a specific need for personnel to teach a specific course or course of study, or to provide services authorized by a services credential with a specialization in either pupil personnel services or health for a school nurse, and that the certificated employee has special training and experience necessary to teach that course or course of study or to provide those services, which others with more seniority do not possess.

(2) For purposes of maintaining or achieving compliance with constitutional requirements related to equal protection of the laws.

*(Amended by Stats. 1983, Ch. 1302, Sec. 15.2. Effective September 30, 1983.)*

Z16

Admitted 11

Z17

# REQUEST FOR HEARING

To:

Lisa Fraser
Superintendent
23800 Summit Road
Los Gatos, CA  95033

This letter serves to notify you that I, _____, request a
hearing to determine if there is cause for not reemploying me pursuant to Education Code
sections 44949 and 44955.

_____          _____
Date                                          Employee Signature

Admitted 11

Z18

# LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

## RESOLUTION No. 21-XIV

### REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE

WHEREAS, the Superintendent of the Loma Prieta Joint Union Elementary School District has recommended to the Board of Trustees that the District reduce or eliminate particular kinds of service(s) no later than the beginning of the 2021-22 school year; and

WHEREAS, the Board of Trustees is required by law under California Education Code section 44949 and 44955 to take action and give notice to all certificated employees affected by any decision to reduce or to eliminate particular kinds of services prior to March 15.

**NOW, THEREFORE, BE IT RESOLVED THAT:**

A.     The Board of Trustees of the Loma Prieta Joint Union Elementary School District hereby determines to reduce or eliminate the following particular kinds of service of the District no later than the beginning of the 2021-22 school year:

   4.0 FTE grades K-8 Classroom Teaching

B.     The Board of Trustees has determined to retain the following particular kinds of service:

   1. Mild to Moderate and Moderate to Severe Special Education Services
   2. Language, Speech and Hearing Special Education Services
   3. Resource Specialist Special Education Services
   4. Multiple Subject Teaching Credential

C.     Because of the above-listed elimination and reduction of particular kinds of service, it will be necessary to reduce or to terminate, at the end of the 2020-21 school year, the employment of certain certificated employees of the District as a result of this reduction of service.

D.     The Board has considered anticipated certificated employee attrition (resignation, retirement, non-reelection, temporary teacher release, etc.). Nevertheless, it is still necessary to terminate the above referenced certificated positions.

E.     The Superintendent or designee is directed to send appropriate notices to all employees affected by the above-listed reduction and elimination of particular kinds of services in accordance with the provisions of the California Education Code and to afford the employees all rights to which they are entitled under the law and, if applicable, the Collective Bargaining Agreement.

Z18

Admitted 11

Z19

LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

RESOLUTION No. 21-XIV

REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE

Page 2 of 2

Adopted by the Loma Prieta Joint Union Elementary School District Board of Trustees on March 10, 2021, by the following vote:

AYES: 4
NOES: 0
ABSENT: 0
ABSTENTIONS: 0

Deana Arnold, Board President
March 10, 2021

Admitted 11

Z20

# LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

## RESOLUTION No. 21-XII

### ESTABLISHMENT OF CRITERIA FOR ORDER OF CERTIFICATED
### LAYOFF AND REEMPLOYMENT FOR EMPLOYEES WITH EQUAL SENIORITY

WHEREAS: The Board of Trustees of the Loma Prieta Joint Union School District will be determining reduction or elimination of particular kinds of service, resulting in a reduction of the number of certificated employees for the 2021-2022 school year, and

WHEREAS: In order to implement this reduction in force, it may be necessary to apply tie-breaker criteria to distinguish among permanent or probationary employees who first rendered paid service to the District on the same date. Pursuant to Education Code section 44955 (b), the Board of Trustees has determined that the order of termination between employees who first rendered paid service to the District on the same date shall be established on the basis of the following criteria in order to meet the needs of the District and students thereof, and

WHEREAS: The Board of Trustees has determined that the same criteria shall be applicable to determine the order of reappointment of permanent and probationary employees who first rendered paid service to the District on the same date pursuant to Education code section 44956, and

WHEREAS: These criteria will be used in the event of a tie to determine which permanent or probationary certificated employees will be retained in lieu of layoff and the order of reappointment when the number of employees is later increased or the discontinued service is reestablished, and

WHEREAS: The Superintendent, or her designee, shall determine the order of termination or reappointment solely on the basis of the needs of the District and the students considering one or more of the following criteria:

1. Multiple Authorization Credentials;

2. Experience teaching different subjects;

3. Possession of a preliminary, clear, standard, or life teaching credential;

4. Possession of a CLAD/BCLAD/CTEL certificate;

5. Experience teaching at different grade levels;

6. NCLB Teacher Requirement: Certificate of Compliance;

7. Experience teaching in the District;

8. Experience teaching outside the District;

Z20

Admitted 11

Z21

LOMA PRIETA JOINT UNION SCHOOL DISTRICT
RESOLUTION No. 21-XII
Establishment of Criteria For Order of Certificated
Layoff and Reemployment For Employees with Equal Seniority
Page 2 of 2

NOW THEREFORE BE IT RESOLVED: The Superintendent, or her designee, has the discretion to determine which criteria are most relevant to serve the needs of the District and students in each tie-breaker situation.

PASSED AND ADOPTED by the Board of Education of the Loma Prieta Joint Union School District on February 10, 2021, by the following vote:

AYES          4
NOES          0
ABSENT        0
ABSTAIN       0

I, Lisa Fraser, Superintendent of the Loma Prieta Joint Union School District, do hereby certify and declare that the foregoing is a full, true and complete copy of a Resolution duly passed and adopted by the Board of Trustees of the Loma Prieta Joint Union School District at a meeting of said Board duly and regularly called at Loma Prieta School District, Los Gatos, California on the 10th day of February, 2021.

By_____
        Lisa Fraser
        Superintendent

Z21

Admitted 11

Z22

I hereby acknowledge receipt of the Notice of Intent to Layoff addressed to me dated March 12, 2021.

12 MARCH, 2021

**Date**

**Employee Signature**

Z22

Admitted 11



EXHIBIT 4

- 4 -

**STIPULATION OF JURISDICTIONAL FACTS**

Admitted 11

Z24



23800 Summit Road, Los Gatos California 95033
Phone: (408) 353-1101    Fax: (408) 353-8051
www.loma.k12.ca.us
Lisa Fraser, Superintendent
Dr. Billy Martin, Principal

## BEFORE THE BOARD OF TRUSTEES OF THE
## LOMA PRIETA JOINT UNION SCHOOL DISTRICT

| | |
|---|---|
| In the Matter of the Reduction in Force of: | **OAH Case No. To Be Determined** |
| David Kissner, | **STATEMENT TO RESPONDENT** (Gov. Code § 11505) |
| Respondent. | |

To:   **David Kissner**

YOU ARE HEREBY NOTIFIED that on March 23, 2021, a written Statement of Reduction in Force ("Statement") against you as Respondent was filed with the Board of Trustees of Loma Prieta Joint Union School District ("District"), charging that there exists cause or causes for not re-employing you as a certificated employee pursuant to Education Code section 44955.

Served on you together with this Statement to Respondent are the following:

1.  A copy of the District Statement;

2.  Copies of sections 44949 and 44955 of the Education Code and sections 11505, 11506, 11507.5, 11507.6, 11507.7, and 11520 of the Government Code;

*Board of Trustees:*
*Deana A. Arnold, President    Ron Bourque, Vice-President*
*Ben Abeln, Member    Erin Asheghian, Member    Charlotte Boisvert-Khandelwal*

Z24

Admitted 11

Z25

3.  Notice of Participation in Reduction in Force Hearing form ("Notice of
    Participation"); and

4.  Notice of Reduction in Force Hearing.

**YOU ARE FURTHER NOTIFIED that unless a written request for hearing signed
by or on behalf of you as Respondent is delivered or mailed to the Superintendent or her
designee within five (5) calendar days after the Statement was personally served on you, or
mailed to you, the District may proceed upon the Statement without a hearing pursuant to
Government Code section 11520.  (\*Note the Notice of Participation requesting a hearing is
different from the hearing request previously filed by Respondent and must be filed in
addition to any prior request for hearing in this matter.)**

You may request a hearing by delivering or mailing the enclosed "Notice of
Participation," a notice of defense, or, as applicable, a notice of participation, as provided by
Government Code section 11506, to:

Lisa Fraser
Superintendent
Loma Prieta Joint Union School District
23800 Summit Road
Los Gatos, CA 95033

You should note that section 44949(c) of the Education Code provides for only five (5)
days within which to file a Notice of Participation rather than the 15-day period specified in
section 11506 of the Government Code.

You may, but need not, be represented by counsel at any or all stages of these
proceedings.

If you desire the names and addresses or an opportunity to inspect and copy the items
mentioned in section 11507.6 of the Government Code in the possession, custody or control of
the District, you may contact:

Amanda Georgino
Or
Brian D. Bock, Esq.
Proactive Legal, The Bock Law Group PC
31610 Railroad Canyon Road, Suite 2
Canyon Lake, CA 92587

- 2 -

Z25

**1 SER 112**

Admitted 11

Z26

The hearing may be postponed for good cause.  If you have good cause, you are obliged
to notify the District or the Office of Administrative Hearings, 1515 Clay Street, Suite 206,
Oakland, California 94612, within ten (10) working days after you discover the good cause.
Failure to give notice within ten (10) working days will deprive you of a postponement.


Date:  March 23, 2021

Lisa Fraser
Superintendent
Loma Prieta Joint Union School District

Z26

1 SER 113

Admitted 11

Z27

BEFORE THE BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT

| | |
|---|---|
| In the Matter of the Reduction in Force of: ) | **OAH Case No. To Be Determined** |
| ) | |
| ) | **STATEMENT OF REDUCTION IN** |
| David Kissner, ) | **FORCE** |
| ) | (Gov. Code § 11503) |
| Respondent. ) | |

To:    **David Kissner**

The undersigned, Lisa Fraser, Superintendent, alleges as follows:

**II.**

I am the Superintendent of the Loma Prieta Joint Union School District ("District"), and make and file this Statement of Reduction in Force ("Statement") in my official capacity.

**III.**

At all times mentioned herein, David Kissner ("Respondent") has been employed by the District as a certificated employee.

**IV.**

On or about March 10, 2021, it was recommended to the Board of Trustees of the Loma Prieta Joint Union School District ("Board"), pursuant to Education Code sections 44949 and 44955 and other applicable provisions of law, that notice be given to Respondent that Respondent's services would not be required for the 2021-2022 school year and stating the reasons therefor.

**V.**

On or before March 15, 2021, Respondent was given written notice, pursuant to Education Code sections 44949 and 44955, that Respondent's services would not be required for the 2021-2022 school year and stating the reasons therefor.

**VI.**

Pursuant to Education Code section 44949(b), Respondent, in writing, has duly requested a hearing to determine if there is cause for Respondent's non-reemployment for the 2021-2022

- 4 -

Z27

Admitted 11

Z28

school year.  Pursuant to Government Code sections 11505 and 11506 and Education Code

section 44949(c), if Respondent desires to participate in the District's reduction in force hearing,

Respondent must file a notice of participation within five (5) days of service of this Statement.

## VII.

Cause exists within the meaning of Education Code sections 44949 and 44955 for not

reemploying Respondent for the ensuing school year because, by Resolution of the Board dated

March 10, 2021, a copy of which is attached hereto as **Exhibit A** and incorporated herein as

though fully set forth, the Board determined that it was necessary to reduce the number of

certificated employees because of a reduction of particular kinds of services.

## VIII.

The cause for not re-employing Respondent relates solely to the welfare of the District's

schools, programs, and the pupils thereof within the meaning of Education Code sections 44949

and 44955.

## IX.

Considering the certificated staff requirements of the District, the certificated staff

reductions found necessary by the Board's Resolution, and the seniority and qualifications of

each certificated employee, it is necessary that Respondent's services be terminated at the end of

the 2020-2021 school year.  Except as otherwise provided by law, no permanent or probationary

certificated employee having less seniority than Respondent will be retained to render a service

which Respondent is certificated, competent, and legally entitled to render.

WHEREFORE, the undersigned prays that this Statement, including all attachments

which are incorporated herein, be given by the District to Respondent, pursuant to Education

Code sections 44949 and 44955, as notification that Respondent's services will not be required

by the District for the 2021-2022 school year.

Date: March 23, 2021

Lisa Fraser
Superintendent
Loma Prieta Joint Union School District

Z28

Admitted 11

Z29

# EXHIBIT A

Z29

Admitted 11

Z30

# LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT

## RESOLUTION No. 21-XIV

### REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE

WHEREAS, the Superintendent of the Loma Prieta Joint Union Elementary School District has recommended to the Board of Trustees that the District reduce or eliminate particular kinds of service(s) no later than the beginning of the 2021-22 school year; and

WHEREAS, the Board of Trustees is required by law under California Education Code section 44949 and 44955 to take action and give notice to all certificated employees affected by any decision to reduce or to eliminate particular kinds of services prior to March 15.

### NOW, THEREFORE, BE IT RESOLVED THAT:

A.  The Board of Trustees of the Loma Prieta Joint Union Elementary School District hereby determines to reduce or eliminate the following particular kinds of service of the District no later than the beginning of the 2021-22 school year:

    4.0 FTE grades K-8 Classroom Teaching

B.  The Board of Trustees has determined to retain the following particular kinds of service:

    1.  Mild to Moderate and Moderate to Severe Special Education Services
    2.  Language, Speech and Hearing Special Education Services
    3.  Resource Specialist Special Education Services
    4.  Multiple Subject Teaching Credential

C.  Because of the above-listed elimination and reduction of particular kinds of service, it will be necessary to reduce or to terminate, at the end of the 2020-21 school year, the employment of certain certificated employees of the District as a result of this reduction of service.

D.  The Board has considered anticipated certificated employee attrition (resignation, retirement, non-reelection, temporary teacher release, etc.). Nevertheless, it is still necessary to terminate the above referenced certificated positions.

E.  The Superintendent or designee is directed to send appropriate notices to all employees affected by the above-listed reduction and elimination of particular kinds of services in accordance with the provisions of the California Education Code and to afford the employees all rights to which they are entitled under the law and, if applicable, the Collective Bargaining Agreement.

Z30

Admitted 11

Z31

**LOMA PRIETA JOINT UNION ELEMENTARY SCHOOL DISTRICT**
**RESOLUTION No. 21-XIV**
**REDUCTION OR ELIMINATION OF PARTICULAR KINDS OF SERVICE**
Page 2 of 2

Adopted by the Loma Prieta Joint Union Elementary School District Board of Trustees on March 10, 2021, by the following vote:

AYES: 4
NOES: 0
ABSENT: 0
ABSTENTIONS: 0

Deana Arnold, Board President
March 10, 2021

Z31

**1 SER 118**

Admitted 11

Z32

## CALIFORNIA EDUCATION CODE SECTIONS

### § 44949. Cause, notice, and right to hearing required for dismissal

(a) (1) No later than March 15 and before an employee is given notice by the governing board that his or her services will not be required for the ensuing year for the reasons specified in Section 44955, the governing board and the employee shall be given written notice by the superintendent of the district or his or her designee, or in the case of a school district that has no superintendent by the clerk or secretary of the governing board, that it has been recommended that the notice be given to the employee, and stating the reasons therefor.

(2) Until the employee has requested a hearing as provided in subdivision (b) or has waived his or her right to a hearing, the notice and the reasons therefor shall be confidential and shall not be divulged by any person, except as may be necessary in the performance of duties. However, the violation of this requirement of confidentiality, in and of itself, shall not in any manner be construed as affecting the validity of any hearing conducted pursuant to this section.

(b) The employee may request a hearing to determine if there is cause for not reemploying him or her for the ensuing year. A request for a hearing shall be in writing and shall be delivered to the person who sent the notice pursuant to subdivision (a), on or before a date specified in that subdivision, which shall not be less than seven days after the date on which the notice is served upon the employee. If an employee fails to request a hearing on or before the date specified, his or her failure to do so shall constitute his or her waiver of his or her right to a hearing. The notice provided for in subdivision (a) shall advise the employee of the provisions of this subdivision.

(c) If a hearing is requested by the employee, the proceeding shall be conducted and a decision made in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code and the governing board shall have all the power granted to an agency in that chapter, except that all of the following shall apply:

(1) The respondent shall file his or her notice of participation, if any, within five days after service upon him or her of the District Statement of Reduction in Force and he or she shall be notified of this five-day period for filing in the District Statement of Reduction in Force.

(2) The discovery authorized by Section 11507.6 of the Government Code shall be available only if request is made therefor within 15 days after service of the District Statement of Reduction in Force, and the notice required by Section 11505 of the Government Code shall so indicate.

(3) The hearing shall be conducted by an administrative law judge who shall prepare a proposed decision, containing findings of fact and a determination as to whether the charges sustained by the evidence are related to the welfare of the schools and the pupils of the schools. The proposed decision shall be prepared for the governing board and shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition. However, the governing board shall make the final determination as to the sufficiency of the cause and disposition. None of the findings, recommendations, or determinations contained in the proposed decision prepared by the administrative law judge shall be binding on the governing board. Nonsubstantive procedural errors committed by the school district or governing board of the school district shall not constitute cause for dismissing the charges unless the errors are prejudicial errors. Copies of the proposed decision shall be submitted to the governing board and to the employee on or before May 7 of the year in which the proceeding is commenced. All expenses of the hearing, including the cost of the administrative law judge, shall be paid by the governing board from the district funds.

Z32

Admitted 11

Z33

(d) Any notice or request shall be deemed sufficient when it is delivered in person to the employee to whom it is directed, or when it is deposited in the United States registered mail, postage prepaid and addressed to the last known address of the employee.

(e) If after a request for hearing pursuant to subdivision (b) a continuance is granted pursuant to Section 11524 of the Government Code, the dates prescribed in subdivision (c) that occur on or after the date of granting the continuance and the date prescribed in subdivision (c) of Section 44955 that occurs after the date of granting the continuance shall be extended for a period of time equal to the continuance.

(f) The governing board may adopt from time to time rules and procedures not inconsistent with this section as may be necessary to effectuate this section.

## § 44955. Reduction in number of employees

(a) No permanent employee shall be deprived of his or her position for causes other than those specified in Sections 44907 and 44923, and Sections 44932 to 44947, inclusive, and no probationary employee shall be deprived of his or her position for cause other than as specified in Sections 44948 to 44949, inclusive.

(b) Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, whenever the governing board determines that attendance in a district will decline in the following year as a result of the termination of an interdistrict tuition agreement as defined in Section 46304, whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, or whenever the amendment of state law requires the modification of curriculum, and when in the opinion of the governing board of the district it shall have become necessary by reason of any of these conditions to decrease the number of permanent employees in the district, the governing board may terminate the services of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render.

In computing a decline in average daily attendance for purposes of this section for a newly formed or reorganized school district, each school of the district shall be deemed to have been a school of the newly formed or reorganized district for both of the two previous school years.

As between employees who first rendered paid service to the district on the same date, the governing board shall determine the order of termination solely on the basis of needs of the district and the students thereof. Upon the request of any employee whose order of termination is so determined, the governing board shall furnish in writing no later than five days prior to the commencement of the hearing held in accordance with Section 44949, a statement of the specific criteria used in determining the order of termination and the application of the criteria in ranking each employee relative to the other employees in the group. This requirement that the governing board provide, on request, a written statement of reasons for determining the order of termination shall not be interpreted to give affected employees any legal right or interest that would not exist without such a requirement.

(c) Notice of such termination of services shall be given before the 15th of May in the manner prescribed in Section 44949, and services of such employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 44844 and 44845. In the event that a permanent or probationary

Z33

Admitted 11

Z34

employee is not given the notices and a right to a hearing as provided for in Section 44949, he or she shall be deemed reemployed for the ensuing school year.

The governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render. However, prior to assigning or reassigning any certificated employee to teach a subject which he or she has not previously taught, and for which he or she does not have a teaching credential or which is not within the employee's major area of postsecondary study or the equivalent thereof, the governing board shall require the employee to pass a subject matter competency test in the appropriate subject.

(d) Notwithstanding subdivision (b), a school district may deviate from terminating a certificated employee in order of seniority for either of the following reasons:

(1) The district demonstrates a specific need for personnel to teach a specific course or course of study, or to provide services authorized by a services credential with a specialization in either pupil personnel services or health for a school nurse, and that the certificated employee has special training and experience necessary to teach that course or course of study or to provide those services, which others with more seniority do not possess.

(2) For purposes of maintaining or achieving compliance with constitutional requirements related to equal protection of the laws.

Z34

Admitted 11

Z35

## CALIFORNIA GOVERNMENT CODE SECTIONS

### § 11505.  District statement of reduction in force

(a) Upon the filing of the accusation or District Statement of Reduction in Force the agency shall serve a copy thereof on the respondent as provided in subdivision (c). The agency may include with the accusation or District Statement of Reduction in Force any information that it deems appropriate, but it shall include a postcard or other form entitled Notice of Defense, or, as applicable, Notice of Participation, that, when signed by or on behalf of the respondent and returned to the agency, will acknowledge service of the accusation or District Statement of Reduction in Force and constitute a notice of defense, or, as applicable, notice of participation, under Section 11506. The copy of the accusation or District Statement of Reduction in Force shall include or be accompanied by (1) a statement that respondent may request a hearing by filing a notice of defense, or, as applicable, notice of participation, as provided in Section 11506 within 15 days after service upon the respondent of the accusation or District Statement of Reduction in Force, and that failure to do so will constitute a waiver of the respondent's right to a hearing, and (2) copies of Sections 11507.5, 11507.6, and 11507.7.

(b) The statement to respondent shall be substantially in the following form:

Unless a written request for a hearing signed by or on behalf of the person named as respondent in the accompanying accusation or District Statement of Reduction in Force is delivered or mailed to the agency within 15 days after the accusation or District Statement of Reduction in Force was personally served on you or mailed to you, (here insert name of agency) may proceed upon the accusation or District Statement of Reduction in Force without a hearing. The request for a hearing may be made by delivering or mailing the enclosed form entitled Notice of Defense, or, as applicable, Notice of Participation, or by delivering or mailing a notice of defense, or, as applicable, notice of participation, as provided by Section 11506 of the Government Code to: (here insert name and address of agency). You may, but need not, be represented by counsel at any or all stages of these proceedings.

If you desire the names and addresses of witnesses or an opportunity to inspect and copy the items mentioned in Section 11507.6 of the Government Code in the possession, custody, or control of the agency, you may contact: (here insert name and address of appropriate person).

The hearing may be postponed for good cause. If you have good cause, you are obliged to notify the agency or, if an administrative law judge has been assigned to the hearing, the Office of Administrative Hearings, within 10 working days after you discover the good cause. Failure to give notice within 10 days will deprive you of a postponement.

(c) The accusation or District Statement of Reduction in Force and all accompanying information may be sent to the respondent by any means selected by the agency. But no order adversely affecting the rights of the respondent shall be made by the agency in any case unless the respondent shall have been served personally or by registered mail as provided herein, or shall have filed a notice of defense, or, as applicable, notice of participation, or otherwise appeared. Service may be proved in the manner authorized in civil actions. Service by registered mail shall be effective if a statute or agency rule requires the respondent to file the respondent's address with the agency and to notify the agency of any change, and if a registered letter containing the accusation or District Statement of Reduction in Force and accompanying material is mailed, addressed to the respondent at the latest address on file with the agency.

(d) For purposes of this chapter, for hearings involving a reduction in force that are conducted pursuant to Section 44949 of the Education Code, a "Notice of Participation" shall have the same meaning as a "Notice of Defense."

Z35

1 SER 122

Admitted 11

Z36

### § 11506. Notice of defense;  grounds;  right to hearing

(a) Within 15 days after service of the accusation or District Statement of Reduction in Force the respondent may file with the agency a notice of defense, or, as applicable, notice of participation, in which the respondent may:

(1) Request a hearing.

(2) Object to the accusation or District Statement of Reduction in Force upon the ground that it does not state acts or omissions upon which the agency may proceed.

(3) Object to the form of the accusation or District Statement of Reduction in Force on the ground that it is so indefinite or uncertain that the respondent cannot identify the transaction or prepare a defense.

(4) Admit the accusation or District Statement of Reduction in Force in whole or in part.

(5) Present new matter by way of defense.

(6) Object to the accusation or District Statement of Reduction in Force upon the ground that, under the circumstances, compliance with the requirements of a regulation would result in a material violation of another regulation enacted by another department affecting substantive rights.

(b) Within the time specified the respondent may file one or more notices of defense, or, as applicable, notices of participation, upon any or all of these grounds but all of these notices shall be filed within that period unless the agency in its discretion authorizes the filing of a later notice.

(c) The respondent shall be entitled to a hearing on the merits if the respondent files a notice of defense or notice of participation, and the notice shall be deemed a specific denial of all parts of the accusation or District Statement of Reduction in Force not expressly admitted. Failure to file a notice of defense or notice of participation shall constitute a waiver of respondent's right to a hearing, but the agency in its discretion may nevertheless grant a hearing. Unless objection is taken as provided in paragraph (3) of subdivision (a), all objections to the form of the accusation or District Statement of Reduction in Force shall be deemed waived.

(d) The notice of defense or notice of participation shall be in writing signed by or on behalf of the respondent and shall state the respondent's mailing address. It need not be verified or follow any particular form.

(e) As used in this section, "file", "files," "filed," or "filing" means "delivered or mailed" to the agency as provided in Section 11505.

### § 11507.5. Discovery;  exclusive provisions

The provisions of Section 11507.6 provide the exclusive right to and method of discovery as to any proceeding governed by this chapter.

### § 11507.6. Request for discovery;  statements;  writings;  investigative reports

After initiation of a proceeding in which a respondent or other party is entitled to a hearing on the merits, a party, upon written request made to another party, prior to the hearing and within 30 days after service by the agency of the initial pleading or within 15 days after the service of an additional pleading, is entitled to (1) obtain the names and addresses of witnesses to the extent known to the other party, including, but not limited to, those intended to be called to testify at the hearing, and (2) inspect and make a copy of any of the following in the possession or custody or under the control of the other party:

Z36

Admitted 11

Z37

(a) A statement of a person, other than the respondent, named in the initial administrative pleading, or in any additional pleading, when it is claimed that the act or omission of the respondent as to this person is the basis for the administrative proceeding;

(b) A statement pertaining to the subject matter of the proceeding made by any party to another party or person;

(c) Statements of witnesses then proposed to be called by the party and of other persons having personal knowledge of the acts, omissions or events which are the basis for the proceeding, not included in (a) or (b) above;

(d) All writings, including, but not limited to, reports of mental, physical and blood examinations and things which the party then proposes to offer in evidence;

(e) Any other writing or thing which is relevant and which would be admissible in evidence;

(f) Investigative reports made by or on behalf of the agency or other party pertaining to the subject matter of the proceeding, to the extent that these reports (1) contain the names and addresses of witnesses or of persons having personal knowledge of the acts, omissions or events which are the basis for the proceeding, or (2) reflect matters perceived by the investigator in the course of his or her investigation, or (3) contain or include by attachment any statement or writing described in (a) to (e), inclusive, or summary thereof.

For the purpose of this section, "statements" include written statements by the person signed or otherwise authenticated by him or her, stenographic, mechanical, electrical or other recordings, or transcripts thereof, of oral statements by the person, and written reports or summaries of these oral statements.

Nothing in this section shall authorize the inspection or copying of any writing or thing which is privileged from disclosure by law or otherwise made confidential or protected as the attorney's work product.

### § 11507.7.  Motion to compel discovery

(a) Any party claiming the party's request for discovery pursuant to Section 11507.6 has not been complied with may serve and file with the administrative law judge a motion to compel discovery, naming as respondent the party refusing or failing to comply with Section 11507.6. The motion shall state facts showing the respondent party failed or refused to comply with Section 11507.6, a description of the matters sought to be discovered, the reason or reasons why the matter is discoverable under that section, that a reasonable and good faith attempt to contact the respondent for an informal resolution of the issue has been made, and the ground or grounds of respondent's refusal so far as known to the moving party.

(b) The motion shall be served upon respondent party and filed within 15 days after the respondent party first evidenced failure or refusal to comply with Section 11507.6 or within 30 days after request was made and the party has failed to reply to the request, or within another time provided by stipulation, whichever period is longer.

(c) The hearing on the motion to compel discovery shall be held within 15 days after the motion is made, or a later time that the administrative law judge may on the judge's own motion for good cause determine. The respondent party shall have the right to serve and file a written answer or other response to the motion before or at the time of the hearing.

(d) Where the matter sought to discovered is under the custody or control of the respondent party and the respondent party asserts that the matter is not a discoverable matter under the provisions of Section 11507.6, or is privileged against disclosure under those provisions, the administrative law judge may order lodged with it matters provided in subdivision (b) of Section 915 of the Evidence Code and examine the matters in accordance with its provisions.

Z37

Admitted 11

Z38

(e) The administrative law judge shall decide the case on the matters examined in camera, the papers filed by the parties, and such oral argument and additional evidence as the administrative law judge may allow.

(f) Unless otherwise stipulated by the parties, the administrative law judge shall no later than 15 days after the hearing make its order denying or granting the motion. The order shall be in writing setting forth the matters the moving party is entitled to discover under Section 11507.6. A copy of the order shall forthwith be served by mail by the administrative law judge upon the parties. Where the order grants the motion in whole or in part, the order shall not become effective until 10 days after the date the order is served.

Where the order denies relief to the moving party, the order shall be effective on the date it is served.

### § 11520. Defaults and uncontested cases

(a) If the respondent either fails to file a notice of defense, or, as applicable, notice of participation, or to appear at the hearing, the agency may take action based upon the respondent's express admissions or upon other evidence and affidavits may be used as evidence without any notice to respondent; and where the burden of proof is on the respondent to establish that the respondent is entitled to the agency action sought, the agency may act without taking evidence.

(b) Notwithstanding the default of the respondent, the agency or the administrative law judge, before a proposed decision is issued, has discretion to grant a hearing on reasonable notice to the parties. If the agency and administrative law judge make conflicting orders under this subdivision, the agency's order takes precedence. The administrative law judge may order the respondent, or the respondent's attorney or other authorized representative, or both, to pay reasonable expenses, including attorney's fees, incurred by another party as a result of the respondent's failure to appear at the hearing.

(c) Within seven days after service on the respondent of a decision based on the respondent's default, the respondent may serve a written motion requesting that the decision be vacated and stating the grounds relied on. The agency in its discretion may vacate the decision and grant a hearing on a showing of good cause. As used in this subdivision, good cause includes, but is not limited to, any of the following:

(1) Failure of the person to receive notice served pursuant to Section 11505.

(2) Mistake, inadvertence, surprise, or excusable neglect.

Z38

Admitted 11

Z39

BEFORE THE BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT

In the Matter of the Reduction in Force
of:                                          )   **OAH Case No. To Be Determined**
                                             )
                                             )   **NOTICE OF PARTICIPATION IN**
David Kissner,                               )   **REDUCTION IN FORCE HEARING**
                                             )   (Gov. Code § 11506)
            Respondent.                      )

To:   Lisa Fraser
      Superintendent
      Loma Prieta Joint Union School District
      23800 Summit Road
      Los Gatos, CA 95033

      I hereby acknowledge service upon me of the following documents:

      1.   A copy of the Statement to Respondent;

      2.   A copy of the ROP Statement of Reduction in Force;

      3.   Copies of sections 44949 and 44955 of the Education Code and sections 11505,

           11506, 11507.5, 11507.6, 11507.7, and 11520 of the Government Code;

      4.   Notice of Participation in Reduction in Force Hearing form; and

      5.   Notice of Reduction in Force Hearing.

      By the return of this document to the District, I hereby notify the District of my intent to

participate in the District's Reduction in Force Hearing.

Date:_____          _____
                                Signature

                                _____
                                Address

                                _____
                                City, State, Zip Code

Z39

**1 SER 126**

Admitted 11

Z40

BEFORE THE BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT

In the Matter of the Reduction in       )      **OAH Case No. To Be Determined**
Force of:                               )
                                        )      **NOTICE OF REDUCTION IN**
David Kissner,                          )      **FORCE HEARING**
                                        )      (Gov. Code § 11509)
            Respondent.                 )
                                        )

To:    David Kissner

YOU ARE HEREBY NOTIFIED that a telephonic/virtual hearing will be held before an
Administrative Law Judge of the Office of Administrative Hearings, State of California, as
provided in Education Code section 44949, on a time and date to be determined by the
Office of Administrative Hearings upon the charges made in the Statement of Reduction in
Force.  Dial-in/connection instructions will be provided when available.

If you object to the place of hearing, you must notify the Presiding Officer designated by
the Office of Administrative Hearings within 10 days after this notice is served on you.
Failure to notify the Presiding Officer within 10 days will deprive you of a change in the
place of hearing.

You are advised that:

1.    You may be present at the hearing;
2.    You are entitled to represent yourself without legal counsel;
3.    You have the right to be represented by an attorney at your own expense;
4.    You are not entitled to the appointment of an attorney to represent you at public
      expense;
5.    You may present any relevant evidence and will be given full opportunity to cross-
      examine all witnesses testifying against you;
6.    You are entitled to the issuance of subpoenas to compel the attendance of witnesses
      and the production of books, documents, or other things by applying to the Office of
      Administrative Hearings, Office of Administrative Hearings, 1515 Clay Street, Suite
      206, Oakland, California 94612, with service to; Amanda Georgino or Brian D.
      Bock, Esq., Proactive Legal, The Bock Law Group PC, 31610 Railroad Canyon
      Road, Suite 2, Canyon Lake, CA 92587; and
7.    Should you fail to timely file a Notice of Participation in Reduction in Force
      Hearing, the hearing will be handled as a default matter pursuant to Government
      Code section 11520.

Z40

Admitted 11

Z41

Date:  March 23, 2021

Lisa Fraser
Superintendent
Loma Prieta Joint Union School District

Z41

Admitted 11

Z42

## PROOF OF SERVICE BY CERTIFIED MAIL

STATE OF CALIFORNIA )
)
SANTA CLARA COUNTY )

I am now, and at all times herein mentioned have been, a citizen of the United States, over the age of eighteen (18) years, a resident of Santa Cruz County, California, and not a party to the within action or cause; my business address is Loma Prieta Joint Union School District, 23800 Summit Road, Los Gatos, CA 95033; and I placed a true copy of the enclosed:

### STATEMENT TO RESPONDENT

### STATEMENT OF REDUCTION IN FORCE
### AND RELATED ATTACHMENTS

### CALIFORNIA EDUCATION CODE SECTIONS 44949 AND 44955 AND CALIFORNIA GOVERNMENT CODE SECTIONS 11505, 11506, 11507.5, 11507.6, 11507.7, AND 11520

### NOTICE OF PARTICIPATION IN REDUCTION IN FORCE HEARING (form)

### NOTICE OF REDUCTION IN FORCE HEARING

in a sealed envelope with postage thereon fully prepaid, in the United States certified mail at Los Gatos, California, addressed as follows:

David Kissner
25059 Skyland Road
Los Gatos, CA. 95033

I declare under penalty of perjury that the foregoing is true and correct and that this proof of service was executed at Los Gatos, California on March 23, 2021.

_Eileen Bevans-Franks_
Signature

_Eileen Bevans-Franks_
Printed Name

Z42

**1 SER 129**

Admitted 11

Z43

## PROOF OF PERSONAL SERVICE

STATE OF CALIFORNIA     )
                        )
SANTA CLARA COUNTY    )

    I am now, and at all times herein mentioned have been, a citizen of the United States, over the age of eighteen (18) years, a resident of Santa Cruz County, California, and not a party to the within action or cause; my business address is; and I personally served a copy of the attached:

### STATEMENT TO RESPONDENT

### ROP STATEMENT OF REDUCTION IN FORCE AND RELATED ATTACHMENTS

### CALIFORNIA EDUCATION CODE SECTIONS 44949 AND 44955 AND CALIFORNIA GOVERNMENT CODE SECTIONS 11505, 11506, 11507.5, 11507.6, 11507.7, AND 11520

### NOTICE OF PARTICIPATION IN REDUCTION IN FORCE HEARING (form)

### NOTICE OF REDUCTION IN FORCE HEARING

by delivering said copies to:

                23800 Summit Road
                Los Gatos, CA. 95033

    I declare under penalty of perjury that the foregoing is true and correct and that this proof of service was executed at Los Gatos, California on March 23, 2021.

_____
Signature

JETTE KINSELLA
Printed Name

Z43

Admitted 11

Z44

EXHIBIT 5

Z44

Admitted 11

Z45

BEFORE THE BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT

| | | |
|---|---|---|
| In the Matter of the Reduction in Force of: | ) ) ) | **OAH Case No. To Be Determined** |
| | ) | **NOTICE OF REDUCTION IN** |
| David Kissner, | ) | **FORCE HEARING** |
| | ) | (Gov. Code § 11509) |
| Respondent. | ) | |

To: David Kissner

YOU ARE HEREBY NOTIFIED that a telephonic/virtual hearing will be held before an Administrative Law Judge of the Office of Administrative Hearings, State of California, as provided in Education Code section 44949, on a time and date to be determined by the Office of Administrative Hearings upon the charges made in the Statement of Reduction in Force. Dial-in/connection instructions will be provided when available.

If you object to the place of hearing, you must notify the Presiding Officer designated by the Office of Administrative Hearings within 10 days after this notice is served on you. Failure to notify the Presiding Officer within 10 days will deprive you of a change in the place of hearing.

You are advised that:

1. You may be present at the hearing;
2. You are entitled to represent yourself without legal counsel;
3. You have the right to be represented by an attorney at your own expense;
4. You are not entitled to the appointment of an attorney to represent you at public expense;
5. You may present any relevant evidence and will be given full opportunity to cross-examine all witnesses testifying against you;
6. You are entitled to the issuance of subpoenas to compel the attendance of witnesses and the production of books, documents, or other things by applying to the Office of Administrative Hearings, Office of Administrative Hearings, 1515 Clay Street, Suite 206, Oakland, California 94612, with service to; Amanda Georgino or Brian D. Bock, Esq., Proactive Legal, The Bock Law Group PC, 31610 Railroad Canyon Road, Suite 2, Canyon Lake, CA 92587; and
7. Should you fail to timely file a Notice of Participation in Reduction in Force Hearing, the hearing will be handled as a default matter pursuant to Government Code section 11520.

Z45

Admitted 11

Date: March 23, 2021

Lisa Fraser
Superintendent
Loma Prieta Joint Union School District

Admitted 11

Z47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 6

Z47

Admitted 11

Z48

BEFORE THE BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT

In the Matter of the Reduction in Force )
of: )
                            )
David Kissner, )
                            )
      Respondent. )

**OAH Case No. To Be Determined**

**NOTICE OF PARTICIPATION IN
REDUCTION IN FORCE HEARING**
(Gov. Code § 11506)

To:    Lisa Fraser
       Superintendent
       Loma Prieta Joint Union School District
       23800 Summit Road
       Los Gatos, CA 95033

I hereby acknowledge service upon me of the following documents:

1.    A copy of the Statement to Respondent;

2.    A copy of the ROP Statement of Reduction in Force;

3.    Copies of sections 44949 and 44955 of the Education Code and sections 11505,

       11506, 11507.5, 11507.6, 11507.7, and 11520 of the Government Code;

4.    Notice of Participation in Reduction in Force Hearing form; and

5.    Notice of Reduction in Force Hearing.

By the return of this document to the District, I hereby notify the District of my intent to

participate in the District's Reduction in Force Hearing.

Date: _25 March, 2021_

_____
Signature

_25059 Skyland Rd._
Address

_Los Gatos, CA 95033_
City, State, Zip Code

Z48

**1 SER 135**

Admitted 11

Z49

## NOTICE OF PARTICIPATION

To:   Governing Board of _Loma Prieta_ School District

_CT English Middle School_ (School Site)

Address:   _23800 Summit Rd._

_Los Gatos_, California _95033_

In response to the District Statement of Reduction in Force, dated _23 Mar_, 20_21_,

I _David Kissner_,

1.   Request a hearing.

2.   Object to the District Statement of Reduction in Force upon the ground that it does not state acts or omissions upon which you may proceed.

3.   Object to the form of the District Statement of Reduction in Force on the ground that it is so indefinite or uncertain that I cannot identify the transaction or prepare my defense.

This constitutes my notice of participation pursuant to Government Code Section 11506.

_____
Signature

_David Kissner_
Printed Name

_25059 Skyland Rd._
Address

_Los Gatos_ California, _95033_

_25 March, 2021_
Date

Z49