No. 24-1261

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DAVID M. KISSNER, an individual,

*Plaintiff-Appellant*,

v.

LOMA PRIETA JOINT UNION SCHOOL DISTRICT; ET AL.,

*Defendants-Appellees*.

On Appeal from the United States Defendants Court
for the Northern Defendants of California, San Francisco
No. 5:22-cv-00949-CRB
Hon. Charles R. Breyer

**APPELLANT'S REPLY BRIEF**

WILLIAM J. BECKER, JR., ESQ.
Bill@FreedomXLaw.com
FREEDOM X
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Attorneys for Appellant
DAVID M. KISSNER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................3

ARGUMENT .................................................................................................5

    I.      Introduction.........................................................................5

    II.     The District Court Erred in Finding That Defendants Met Their
           Burden of Proving They Would Have Punished Kissner Regardless
           of His Protected Activities ....................................................7

          A.    Defendants Failed To Submit Evidence From The Record
                Sufficient To Show They Would Have Dismissed Kissner
                Regardless Of His Protected Activities .....................................7

          B.    The District Court's List Of Reasons Justifying Kissner's
                Dismissal Do Not Satisfy A Summary Judgment Standard........9

              1.   The District Court's "evidence" fails to demonstrate that
                   Defendants would have dismissed Kissner ...........................9

              2.   The District Court diverged from its duty to determine
                   whether a triable issue exists..............................................10

               3.   Kissner was denied an opportunity to respond to the
                 District Court's evidence because Defendants never
                 offered it ..........................................................................12

               4.   The District Court failed to consider Kissner's tenure as
                 a factor in the dismissal decision.........................................12

    III.    Kissner Presented Sufficient Evidence Of Pretext To Survive
           Summary Judgment ..........................................................13

          A.    Temporal Proximity As Evidence Of Retaliation ....................14

              1.   Mischaracterization of Temporal Proximity's Role ...........14

               2.   Inadequate Consideration of All Circumstantial
                 Evidence .........................................................................15

               3.   Reliance on Alleged Performance Issues ...........................16

               4.   Summary Judgment Standard Misapplied...........................16

          B.    Inconsistent and Implausible Justifications .............................17

C.     Revival of Stale Allegations .......................................................18

D.     Unprecedented Dual Proceedings.............................................19

E.     Misapplication of the Law by the District Court......................20

IV.     Under Either *Mt. Healthy* Or *McDonnel Douglas*, The Court Must Scrutinize The Governing Board's Motives, Not The Motives Of Disinterested Administrative Law Judges ..........................................21

A.     Applicability of the *Mt. Healthy* Standard ...............................21

B.     Applicability of the *McDonnell Douglas* Framework..............22

V.     The "Cat's Paw" Argument is Inapposite in Kissner's Case .............24

A.     Procedural Impropriety...............................................................25

B.     Substantive Flaws ......................................................................25

1.   The Governing Board's Decision is the Relevant Factor......................................................................................26

2.   The Commission's Role ........................................................26

3.   Defendants' Mischaracterization .........................................27

VI.     Kissner Has Not Waived His Right To Appeal The Judgment On His First Amendment Retaliation Claim Relating To His Layoff.......27

VII.     Board Defendants Do Not Enjoy Legislative Immunity ...................29

VIII.     A Triable Issue Exists Regarding Martin's And Fraser's Liability For Kissner's Layoff And Dismissal.................................................33

CONCLUSION ...............................................................................................34

CERTIFICATE OF COMPLIANCE .........................................................36

CERTIFICATE OF SERVICE.....................................................................37

# TABLE OF AUTHORITIES

## Cases

*Bell v. Clackamas County*
    341 F.3d 858 (9th Cir. 2003) ........................................................................14

Bello-*Reyes v. Gaynor*
    985 F.3d 696 (9th Cir. 2021) ...................................................................7, 22

*Bogan v. Scott-Harris*
    523 U.S. 44 (1998) ...............................................................................30, 31

*Bolker v. Comm'r*
    760 F.2d 1039 (9th Cir. 1985) ...................................................................25

*Canary v. Osborn*
    211 F.3d 324 (6th Cir. 2000) ......................................................................32

*Goldstein v. City of Long Beach*
    715 F.3d 750 (9th Cir. 2013) ......................................................................25

*Hooker v. Parker Hannifin Cor*p.
    548 F. App'x 368 (9th Cir. 2013) ...............................................................15

*Howard v. City of Coos Bay*
    871 F.3d 1032 (9th Cir. 2017) ....................................................................27

*Kaahumanu v. County of Maui*
    315 F.3d 1215 (9th Cir. 2003) ....................................................................29

*McGinest v.* GTE *Serv. Corp.*
    360 F.3d 1103, 1124 (9th Cir. 2004) .....................................................20, 21

*Nieves v. Bartlett*
    587 U.S. 391 398 (2019)................................................................................5

*Oregon Natural Resources Council v. Allen*
    476 F.3d 1031 (9th Cir. 2007) ....................................................................25

*Palumbo Design, LLC v. 1169 Hillcrest*, LLC
    484 F. Supp. 3d 852 (C.D. Cal. 2020)........................................................10

*Rateree v. Rockett*
        852 F.2d 946 (7th Cir. 1988) .......................................................32

*Stegall v. Citadel Broadcasting Co*.
        350 F.3d 1061 (9th Cir. 2003) .....................................................14

*Takahashi v. Bd. of Educ*.
        202 Cal. App. 3d 1464 (Cal. App. 5th Dist. 1988)........................28

*United* States *v. Elias*
        921 F.2d 870 (9th Cir. 1990) .......................................................25

*Warren v. City of Carlsbad*
        58 F.3d 439 (9th Cir. 1995) .........................................................24

*Whittaker Corp. v. Execuair Corp*.
        953 F.2d 510 (9th Cir. 1992) .......................................................25

## Statutes

Cal. Educ. Code § 44949.................................................................28

## Rules

Fed. R. App. P. 32(a)(5)................................................................36

Fed. R. App. P. 32(a)(6)................................................................36

Fed. R. App. P. 32(a)(7)(B) ..........................................................36

Fed. R. App. P. 32(a)(7)(C) ..........................................................36

# ARGUMENT

## I.   Introduction

Plaintiff/Appellant, David Kissner ("Kissner"), contends that his termination was in retaliation for engaging in protected speech in violation of his First Amendment rights. "As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up). Kissner presented sufficient circumstantial evidence to establish a triable issue that the school district Defendants/Appellees (hereinafter "Defendants") were motivated by his political speech activities in their decision to both terminate him and lay him off and that but for this retaliatory motive he would not have been fired. When viewing the evidence in the light most favorable to Kissner, as required for the non-moving party, summary judgment should have been denied.

The reply brief responds to the following issues:

1. The District Court's Erroneous Finding That Defendants Met Their Burden By A Preponderance Of The Evidence: The District Court erroneously found that Defendants had met their burden of proof by a preponderance of the evidence concerning Kissner's First Amendment retaliation claim even though Defendants produced no evidence that they would have terminated and laid off Kissner absent his protected activity. Defendants' Answering Brief fails to address this central issue.

2.    <u>Evidence of Pretext for Retaliation</u>: Kissner presented sufficient evidence to raise a triable issue that the Defendants' reasons for his layoff and dismissal were pretextual and motivated by retaliatory animus due to his engagement in protected activities.

3.    <u>Inapplicability of the "Cat's Paw" Theory</u>: The Defendants' "cat's paw" theory, suggesting that Kissner has argued that the Commission on Professional Competence ("Commission") was used as a tool to carry out the Board's retaliatory motive, is both procedurally and substantively flawed.

4.    <u>Appropriate Legal Standards</u>: Under *Mt. Healthy*, the District Court should have scrutinized the motives of the Board, not those of the Commission, a disinterested administrative law tribunal. But in light of the circumstances in this case, which materially differ from those examined in *Mt. Healthy*, *McDonnell Douglas'* burden-shifting pretext test may provide a better framework.

5.    <u>Preservation of Right to Appeal</u>: Kissner has not waived his layoff retaliation claim because there is no final judgment corresponding to it in the lower proceedings.

6.    <u>Legislative Immunity Defense</u>: Board Defendants are not shielded by legislative immunity because the Board's actions were administrative rather than legislative; they specifically targeted Kissner and lacked broader policy implications.

7.   <u>Liability of Martin and Fraser</u>: There is a triable issue regarding the liability of Martin and Fraser, who, despite not being Board members, were key figures in orchestrating Kissner's layoff and dismissal and were directly involved in those decisions.

Due to these errors and the misapplication of legal standards, the District Court's decision should be reversed and remanded for further proceedings.

## II. The District Court Erred in Finding That Defendants Met Their Burden of Proving They Would Have Punished Kissner Regardless of His Protected Activities

### A. <u>Defendants Failed To Submit Evidence From The Record Sufficient To Show They Would Have Dismissed Kissner Regardless Of His Protected Activities</u>

"Under *Mt. Healthy*, once a petitioner has made a showing of a First Amendment retaliation claim, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct." *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021). (Cleaned up; citations omitted.) "The Government must show more than that they could have punished the plaintiffs in the absence of the protected speech; instead, <u>the burden is on the Defendants to show through evidence</u> that they would have punished the plaintiffs under those circumstances." *Id*. (Emphasis added.) (Cleaned up; citations omitted.) In other words, (1) the burden is on the Defendants to produce evidence, and (2) the evidence must show that Defendants <u>would</u> have dismissed Kissner regardless of his

7

protected activities, not merely that they <u>could</u> have dismissed him. This critical rule was not followed in this case. In the first place, the Defendants did not produce evidence but merely cited to the Commission's decision finding Kissner to be unfit, a decision unconnected to Kissner's First Amendment retaliation defense. (II ER 238, 255-257; Answering Brief, pp. 22-25). Second, the evidence credited by the court does not demonstrate that Defendants would have dismissed Kissner notwithstanding his protected activities; it merely catalogues alleged grievances presented by the Defendants to Kissner.

Defendants contend that Kissner failed to meet his prima facie burden of presenting evidence of a retaliatory motive. As discussed in the Opening Brief and hereinbelow, Kissner presented circumstantial evidence that the Board possessed a retaliatory motive sufficient to meet his burden when viewed in a light favorable to him. Defendants abandoned any attempt to show that once the burden shifted to them, they had presented evidence sufficient to refute Kissner's circumstantial evidence. Specifically, Defendants completely overlooked their burden of production by failing to present any evidence from the administrative record concerning Kissner's First Amendment retaliation claim showing that they would have punished Kissner irrespective of his protected activities.

B.   <u>The District Court's List Of Reasons Justifying Kissner's Dismissal Do Not Satisfy A Summary Judgment Standard</u>

1.   The District Court's "evidence" fails to demonstrate that Defendants would have dismissed Kissner

At summary judgment, Defendants did not proffer evidence refuting the retaliation claim, only the stigma plus defamation claim. (*See* II ER 259-264.) The District Court nevertheless concluded that Defendants had met their burden of production ("Given the evidence in the record, the Court concludes that Defendants have met their burden of establishing that they would have terminated Kissner even in the absence of his political activities.") (I ER 22). The court reached this conclusion even while noting that Defendants are required to demonstrate more than just the possibility that they could have disciplined Kissner if the protected speech had not occurred ("They must 'show more than that they <u>could</u> have punished [Kissner] in the absence of the protected speech; instead, the burden is on the Defendants to show through evidence that they <u>would</u> have punished [Kissner] under those circumstances.") (I ER 20, quoting *Bello-Reyes*, 985 F.3d at 702) (emphasis in original). The court neglected to analyze the "evidence" it compiled as a list and failed to explain how it demonstrated that Defendants would have dismissed Kissner regardless of his protected activities.

2. The District Court diverged from its duty to determine whether a triable issue exists

The court's role is to merely determine if there is evidence presenting a triable issue. A triable issue exists when there is conflicting evidence, and such evidence cannot be disregarded. This circuit has emphasized that "summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *See*, *e.g.*, *Palumbo Design, LLC v. 1169 Hillcrest*, LLC, 484 F. Supp. 3d 852 (C.D. Cal. 2020):

> [A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." [Citation omitted.] "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" [Citation omitted.] Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. [Citation omitted.]).

*Id*. at 857.

The District Court cherry-picked evidence from Kissner's submission of evidence in support of his stigma-plus defamation claim, not his retaliation claim. By cherry-picking (and by disregarding Defendants' failure to submit and argue evidence), the court weighed the evidence while overlooking divergent ultimate inferences, which, when viewed in the light most favorable to Kissner, would have defeated summary judgment.

A couple of examples demonstrate this point. The first item on the court's list of evidence purporting to show that Defendants would have (rather than could have) fired Kissner regardless of his protected activities is an October 18, 2018, letter from Defendant Fraser, the District superintendent, to Kissner. (I ER 21, 19:4.) The court simply identifies the letter while failing to explain its probative value. (I ER 21, 19:2-4.) Notably, the court egregiously disregarded Kissner's four-page, single-spaced recrimination from October 28, 2018, repudiating Fraser's letter and specifically suggesting it was motivated by retaliatory intent:

> The contents of this disciplinary letter are the result of a personal character attack perpetrated by anonymous cowards who sought retribution for my stance in the March 14th, 2018 walkout. I am surprised that the district would like to go on record here that it is giving credence to an anonymous letter full of false and unsubstantiated accusations. Does the timing of such allegations, the unprincipled broadening of the district's investigation, and now this disciplinary letter not show evidence of retaliation for my position during the school sponsored political walkout?

(II ER 99-102.) (Emphasis added.) Had the court considered this memo, it would have been compelled to recognize a triable issue, as a reasonable inference that Fraser (and the District) were retaliating against Kissner for his walkout grading decision could be made.

Another example is helpful to show the how the court's balance sheet of wrongs omits the plus column where the court identifies a "letter from Kissner counsel addressing charges of unsatisfactory performance in connection with failure

to file grades in a timely manner or communicate with parents, failure to attend all synchronous classes on Zoom, and failure to attend required office hours." (I ER 21, 19:6-9; II ER 224-29 (letter).) Counsel's letter addresses a number of issues, but the court hasn't specified any in particular nor even acknowledged that its content potentially presents exculpatory evidence absolving Kissner of the District's charges against him and thus creating a triable issue.

> 3.     Kissner was denied an opportunity to respond to the District Court's evidence because Defendants never offered it

Unlike Fred Doyle, the *Mt. Healthy* teacher who took his case to trial, Kissner was never afforded the opportunity to present his evidence to a jury—a critical distinction that highlights the court's error. Kissner was denied the chance to respond to the court's summary of evidence because the Defendants neither introduced nor argued that evidence. A summary judgment ruling means that the court decides the case based solely on legal issues and the evidence presented in pre-trial motions, without a jury or a full trial. Had Doyle lost on summary judgment and not had the opportunity to present his case before a jury, he would have been denied the chance to argue that his termination was motivated by his exercise of free speech rights.

> 4.     The District Court failed to consider Kissner's tenure as a factor in the dismissal decision

Additionally, Doyle's lack of tenure was significant to the court in *Mt. Healthy* because it affected the level of job protection he had as a public school teacher. In

most legal contexts, tenured employees enjoy greater procedural protections against termination, often requiring a showing of "just cause" for dismissal. Non-tenured employees, like Doyle, have fewer protections, meaning they can be terminated for a broader range of reasons, provided those reasons are not illegal (e.g., retaliation for exercising constitutional rights).

In *Mt. Healthy*, the court had to assess whether Doyle's lack of tenure diminished his claim of wrongful termination based on First Amendment retaliation. However, because Doyle was non-tenured, his job security was weaker, making it easier for the employer to argue that he would have been terminated regardless of his protected speech. This factual element allowed the court to focus on whether Doyle's protected conduct was a substantial or motivating factor in his termination.

## III. Kissner Presented Sufficient Evidence Of Pretext To Survive Summary Judgment

Kissner has presented substantial evidence that raises genuine issues of material fact regarding whether the Defendants' decisions to lay him off and dismiss him were motivated by retaliatory animus. Despite Defendants' attempts to discredit this evidence, a careful assessment reveals that Kissner's claims are supported by circumstantial evidence that courts routinely recognize as indicative of pretext. The District Court's failure to acknowledge the strength of this evidence and its misapplication of the relevant legal standards warrants reversal.

A.    <u>Temporal Proximity As Evidence Of Retaliation</u>

Kissner presented evidence that the adverse actions against him—his layoff and subsequent dismissal—occurred shortly after he engaged in protected activities, including his opposition to Measure N and his political actions related to the school board. (II ER 78). While Defendants attempt to downplay the significance of temporal proximity by arguing it is legally insufficient to prove pretext (Answering Br. p. 33-34), their argument fails to adequately address the broader legal context and implications of circumstantial evidence in retaliation cases.

1.    Mischaracterization of Temporal Proximity's Role

Defendants misconstrue the role of temporal proximity in proving retaliation. While it is true that temporal proximity alone may not be sufficient to prove pretext, it is a well-established principle that temporal proximity can provide strong circumstantial evidence of retaliatory intent, particularly when coupled with other facts that raise questions about the employer's stated motives. *See*, *e.g.*, *Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) (temporal proximity can be used as circumstantial evidence of retaliatory motive) and *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

In *Stegall v. Citadel Broadcasting Co*., 350 F.3d 1061 (9th Cir. 2003), the court held that temporal proximity between the employee's protected action and the

adverse employment action, combined with other circumstantial evidence, could support an inference of retaliation. The case underscores that while timing alone may not always be enough, it significantly bolsters a retaliation claim when paired with other suspicious circumstances. The single case cited by Defendants, *Hooker v. Parker Hannifin Cor*p., 548 F. App'x 368, 370  (9th Cir. 2013), does not negate this principle; rather, it suggests that temporal proximity must be considered alongside other evidence.

2.      Inadequate Consideration of All Circumstantial Evidence

Defendants argue that Kissner's opposition to the parcel tax was known over a year before his termination, thereby attempting to sever the connection between the protected activity and the adverse action. However, temporal proximity should be assessed considering the entire context, including any ongoing retaliatory animus. Significantly, Defendants fail to address the fact that the actual defeat of Measure N took place in December, 2020, a mere two months before the District moved to dismiss and lay off Kissner. (II ER 69). Additionally, Kissner publicly opposed the school board by organizing a petition campaign to invalidate the Board's provisional appointment in January 2021, only one month before the District served him with its Intent to Dismiss, and two months before notifying him of his layoff. (III ER 366-367). Defendants fail to address the fact that other adverse actions or disciplinary measures taken against Kissner were similarly timed close to his protected activities

15

(II ER 70), which would strengthen the inference of a retaliatory motive. Defendants' argument does not account for the likelihood that a retaliatory motive could have continued to influence their decisions over time.

### 3. Reliance on Alleged Performance Issues

Defendants' emphasis on Kissner's alleged insubordination and performance issues as justification for his termination is insufficient to rebut the inference of retaliation without further examination. Kissner argues that these purported performance issues are themselves pretextual, exaggerated, or false, and that they arose for the first time only after Kissner engaged in protected activities. A jury could find that these purported issues were not the real reasons for his termination, but rather a cover for retaliation. The fact that disciplinary actions and performance criticisms escalated following Kissner's opposition to Measure N supports this inference. (*See* I ER 21) ("Here, the record is replete with evidence of Kissner's errors in judgment, refusals to abide by school policy, and insubordination, <u>escalating in late 2020 and early 2021</u>.") (Emphasis added.)

### 4. Summary Judgment Standard Misapplied

Defendants' arguments improperly assume the role of fact-finding at the summary judgment stage. The District Court's task at summary judgment is not to weigh the evidence or decide factual disputes, but rather to determine whether there is sufficient evidence from which a reasonable jury could find in favor of the

plaintiff. Kissner has presented evidence of temporal proximity and shown inconsistencies in the Defendants' explanations for his termination. This is sufficient to create a genuine issue of material fact as to whether retaliation was a motivating factor in the adverse actions against him. The District Court should not have resolved these disputed issues against Kissner at the summary judgment stage.

### B. Inconsistent and Implausible Justifications

Defendants claim Kissner's layoff was due to budget concerns and declining enrollment, but Kissner presents evidence challenging this. Defendants' own Chief Business Official testified that eliminating Kissner's position yielded no actual cost savings (II ER 69-70, 80; Opening Br., pp. 17-18). Additionally, Kissner's role was not initially considered for reduction, and budget constraints didn't impact the need for his position. *Id*.

Despite these contradictions, Defendants argue their actions were justified. However, this Circuit holds that when an employer's rationale is contradicted by evidence, it can create a triable issue of pretext. The inconsistency between Defendants' reasoning and their officials' testimony casts doubt on their justification, which the District Court overlooked.

Defendants also claim the reduction in force (RIF) was uniformly applied across K-8 teaching positions to address the budget shortfall (Answering Br., pp. 14-21). Yet, Kissner's 6th-grade math and science position was neither reduced nor

17

eliminated (Opening Br., pp. 17-18). If the RIF was truly based on financial need, evidence should show a connection between Kissner's layoff and budget savings. His role's retention after the layoff suggests the RIF wasn't uniformly applied and may have been a pretext for retaliation. *Id*. The District's reversal of all layoffs except Kissner's further weakens their budgetary claim. *Id*.

Moreover, Defendants haven't clearly explained how positions were chosen for elimination or addressed the proximity between Kissner's protected activities (such as opposing Measure N and the Board appointment) and his dismissal. The lack of clear RIF criteria, inconsistent explanations, and evidence of retaliatory motive strengthen the argument that the layoff was not due to budget concerns but retaliation.

C.   Revival of Stale Allegations

The inclusion of 2016 and 2018 misconduct allegations in Defendants' Statement of Charges suggests the later charges were pretextual. The District Court relied on the 2018 disciplinary letter (II ER 97-98) to justify Kissner's dismissal (I ER 20, 18:3-4, 21-24). Defendants claim the 2018 investigation, which led to the disciplinary letter, warned Kissner that further misconduct could result in termination. They argue this context was crucial as the 2020-2021 incidents followed the warning (Answering Br., p. 35). However, the court erred in giving undue weight to the letter, ignoring Kissner's evidence challenging its credibility. The 2016 and

18

2018 allegations lacked factual details, context, or citations. Kissner responded with a detailed 4-page rebuttal, calling the charges politically motivated and retaliatory (II ER 99-102), yet the court accepted the letter without addressing this response.

The letter was, in fact, retaliatory due to Kissner's stance against the 2018 student walkout, influenced by an anonymous individual. By ignoring Kissner's response, the court failed to consider the potential bias. The court's role was not to weigh evidence but to determine if the letter and Kissner's response raised a triable issue of retaliation. Defendants argue the letter provides context for later misconduct. While it may offer some context, it also supports Kissner's claim that Defendants were building a case against him due to his protected activities—a matter for the jury to decide.

D.    Unprecedented Dual Proceedings

Kissner also highlighted the highly unusual decision by the Defendants to subject him to both layoff and dismissal procedures within a short time frame. (Opening Br., p. 33) The Defendants dismiss this as a routine administrative action, but the record shows that no other employee has ever been subjected to such dual proceedings in the same year. *Id*. This anomaly suggests a concerted effort to ensure Kissner's removal by any means necessary.

Defendants argue that this dual approach was justified by Kissner's alleged misconduct and the Defendants' financial needs. However, this explanation is

undermined by the lack of precedent for such actions and by evidence showing that the budgetary justification was not credible. The unusual nature of these proceedings and the timing of their implementation strongly indicate that they were pretextual.

E.    Misapplication of the Law by the District Court

The District Court's dismissal of Kissner's circumstantial evidence as "unpersuasive" (I ER 20) reflects a misunderstanding of the legal standards governing pretext in retaliation cases. The court improperly weighed the evidence at the summary judgment stage, a role that should be reserved for the jury. The Ninth Circuit has consistently emphasized that questions of motive and intent, especially in retaliation cases, are fact-intensive inquiries that are not appropriate for resolution on summary judgment. For example, in *McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004), this Circuit reversed summary judgment in a discrimination and retaliation case, reiterating that intent and motivation are questions of fact that should not be decided at the summary judgment stage when there is evidence from which a jury could infer discriminatory or retaliatory intent. The court emphasized:

> We have held that "very little[ ] evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a fact-finder." [Citation omitted.] "When [the] evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." [Citations omitted.] As the District Court recognized, this is a close case. Such uncertainty at the summary judgment stage must be resolved in favor of the plaintiff. *Id.* ("We require very little evidence to survive summary judgment

20

precisely because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the fact finder, upon a full record.") [Citation omitted.].

*McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1124 (9th Cir. 2004).

## IV. Under Either *Mt. Healthy* Or *McDonnel Douglas*, The Court Must Scrutinize The Governing Board's Motives, Not The Motives Of Disinterested Administrative Law Judges

### A. Applicability of the *Mt. Healthy* Standard

The Defendants assert that the Court must apply the *Mt. Healthy* standard to evaluate whether Kissner's protected conduct was a "substantial" or "motivating factor" in the Board's decision to terminate his employment. Indeed, the *Mt. Healthy* standard typically applies to cases where a governing board is the final decisionmaker, requiring proof that an employee's protected conduct was the predominant factor motivating the Board's adverse employment decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). This context-specific application underscores that the standard is formulated under the assumption that the governing board is the entity responsible for the ultimate decision.

However, the Defendants argue that in this case, the final decisionmaker was the impartial administrative Commission on Professional Competence. If this is indeed the case, then *Mt. Healthy* may not provide the appropriate test. The Defendants' attempt to shift the focus from the Board to the Commission appears to

be a strategic maneuver to avoid a *Mt. Healthy* analysis. This shift is akin to an analytical shell game, where substituting the governing board with a supposedly "disinterested" administrative tribunal effectively nullifies the standard's applicability. If *Mt. Healthy* is regarded as "the default rule for First Amendment retaliation claims," then its assumption of the governing board as the final decisionmaker is crucial to its application. In this scenario, the *Mt. Healthy* framework is designed to evaluate whether the board's decision was predominantly influenced by the plaintiff's protected conduct. Applying this analysis to the Commission, however, does not align with the standard's intended scope.

In this case, the Board's decision to terminate Kissner was the initial trigger for his dismissal, and but for that decision, the Commission would not have been involved. Evaluating the Board's decision through the lens of *Mt. Healthy* harmonizes with its framework, yet replacing this evaluation with the Commission's decision stretches the standard beyond its intended application. Even with the "default rule" designation in *Bello-Reyes v. Gaynor*, *supra*, 985 F.3d at 702, the context-specific nature of *Mt. Healthy* requires careful consideration of the final decisionmaker's identity and role in the adverse employment action.

B.    Applicability of the *McDonnell Douglas* Framework

If the Court determines that *Mt. Healthy* is not the appropriate standard for evaluating the causal link between Kissner's protected conduct and his termination,

then the *McDonnell Douglas* framework provides a viable alternative. *McDonnell Douglas* is particularly relevant in employment retaliation cases, focusing on the broader actions of the employer rather than narrowly on the decisions of a governing board. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In employment retaliation claims, *McDonnell Douglas* shifts the burden of proof between the plaintiff and the employer. Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. The plaintiff must then demonstrate that the employer's stated reasons are pretextual. *See Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002). This framework aligns with *Mt. Healthy's* burden-shifting approach but is more broadly applicable to cases involving complex employment relationships where the final decisionmaker may not be a governing board.

In the context of Kissner's case, circumstantial evidence plays a critical role in establishing a triable issue of fact regarding the Defendants' motivation for his termination. Direct evidence of retaliatory intent is often unavailable, making circumstantial evidence essential to challenge the Defendants' explanations. Kissner has provided sufficient evidence to raise questions about the Defendants' stated reasons for his termination, particularly in light of the timing of the Board's actions and the sudden increase in grievances against him during the Measure N parcel tax campaign.

On summary judgment, the court is required to view the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The Defendants' own arguments, as addressed in their brief, further confirm the existence of triable issues regarding whether the Board's decisions were influenced by Kissner's protected conduct. Given the presence of these disputed factual issues, the trial court should have denied summary judgment and allowed the case to proceed to trial, where a full examination of the evidence could occur.

## V. The "Cat's Paw" Argument is Inapposite in Kissner's Case

Defendants attempt to bolster their position by introducing on appeal a "cat's paw" theory not raised below, falsely arguing that Kissner has suggested that the Commission on Professional Competence was misled by school officials attempting to dupe it. This argument is both procedurally improper, as it was not raised before the trial court, and substantively flawed. As argued above, the relevant inquiry under either *Mt. Healthy* or *McDonnell Douglas* is whether the governing board's decision to initiate termination proceedings was motivated by retaliatory animus. The Commission's actions, even if influenced by the Board, do not absolve the Defendants of liability if the Board's motives were retaliatory.

A.    Procedural Impropriety

Defendants raise the "cat's paw" argument for the first time on appeal, which is procedurally improper. This theory was not argued before the trial court, and there is no evidence in the record that the trial court considered this argument when granting summary judgment.[1] Introducing new legal theories on appeal is generally disfavored, as it deprives the opposing party of the opportunity to address the argument in the lower court and prevents the trial court from fully evaluating the issue. *See*, *e.g.*, *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013), *Oregon Natural Resources Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007), *Whittaker Corp. v. Execuair Corp*., 953 F.2d 510 (9th Cir. 1992), *United States v. Elias,* 921 F.2d 870 (9th Cir. 1990), and *Bolker v. Comm'r*, 760 F.2d 1039 (9th Cir. 1985). Therefore, the "cat's paw" argument should be disregarded as it was not properly preserved for appellate review.

B.    Substantive Flaws

Even if the "cat's paw" argument were properly before this Court, it is inapplicable to the facts of this case. Defendants argue that the Commission on Professional Competence, which made the final decision to terminate Kissner, was

---

[1] Without citing to the record, Defendants falsely state: "As the District Court correctly concluded, however, the evidence does not support plaintiff's "cat's paw" theory." This conclusion does not appear in the record.

influenced or manipulated by the Defendants to carry out their retaliatory intent. However, this argument misconstrues the relevant legal standards and the facts of the case.

1.    <u>The Governing Board's Decision is the Relevant Factor</u>

As argued in connection with *Mt. Healthy* and *McDonnell Douglas*, the focus should be on the motivation of the governing board when it decided to initiate termination proceedings against Kissner. The Board's decision to pursue Kissner's termination is the critical action, not the subsequent procedural steps taken by the Commission. The Commission merely acted on the charges brought before it, which were initiated and influenced by the Board's decision. Thus, the relevant inquiry is whether the Board's decision was motivated by retaliatory animus, not whether the Commission was manipulated.

2.    <u>The Commission's Role</u>

The Commission serves as an administrative adjudicatory body that evaluates the charges brought against an employee. However, the Commission's role and motives are irrelevant to the central issue—whether the governing board's decision to initiate the termination proceedings was based on retaliatory intent. The Commission's involvement does not change the focus from the board's initial motivation to terminate Kissner, which remains the primary concern under *Mt. Healthy* and *McDonnell Douglas*.

26

3. Defendants' Mischaracterization

Defendants' reliance on the "cat's paw" theory is an attempt to shift focus away from the Board's initial decision to terminate Kissner. The real issue is whether the Board's decision to initiate termination proceedings was motivated by Kissner's protected speech. The Commission's actions, regardless of any alleged manipulation, do not alter the fundamental question of the Board's intent. The Commission's decision should not be viewed as an independent source of potential bias or motivation; instead, the court's analysis should focus on the Board's original decision to terminate.

## VI. Kissner Has Not Waived His Right To Appeal The Judgment On His First Amendment Retaliation Claim Relating To His Layoff

Defendants erroneously argue that Kissner has waived his right to appeal the judgment on his First Amendment retaliation claim related to his layoff, asserting that the "Proposed Decision" by the Administrative Law Judge (ALJ) in the layoff hearing has preclusive effect, thereby barring him from pursuing his First Amendment retaliation claim in federal court. Collateral estoppel only applies to issues that have been litigated and determined in a prior proceeding where a final judgment was rendered. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) ("Under California law, collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. The issue must have been actually litigated

in the former proceeding, and it must have been necessarily decided <u>as part of the</u> <u>judgment</u> in that earlier action." (emphasis added)).

While Kissner did litigate the retaliation claim before the ALJ during the layoff proceedings, the ALJ issued only a <u>proposed</u> decision and did not enter a judgment. The ALJ's decision in the layoff proceedings was not a final judgment; it was a proposed decision, as specified under California Education Code § 44949:

> The hearing shall be conducted by an administrative law judge <u>who</u> <u>shall prepare a proposed decision</u>, containing findings of fact and a determination as to whether the charges sustained by the evidence are related to the welfare of the schools and the pupils of the schools. The proposed decision shall be prepared for the governing board and shall contain a determination as to the sufficiency of the cause and a recommendation as to disposition. However, the governing board shall make the final determination as to the sufficiency of the cause and disposition. <u>None of the findings, recommendations, or determinations</u> <u>contained in the proposed decision prepared by the administrative law</u> <u>judge shall be binding on the governing board</u>.

Cal. Educ. Code § 44949. (Emphasis added.) *Takahashi v. Bd. of Educ.*, 202 Cal. App. 3d 1464, 1474 (Cal. App. 5th Dist. 1988), supports this position. In that case, the court dealt with a state court proceeding that had reached a final judgment, which served as the basis for res judicata. In contrast, the ALJ's proposed decision in Kissner's case did not reach that stage and was not a final adjudication.

Following the Board's acceptance of the proposed decision, Kissner filed a petition for writ of mandate in the Superior Court challenging his layoff. During the

Superior Court proceedings, Kissner did not seek a ruling on his retaliation claim and the Superior Court did not issue any order or judgment related to the claim.

Because the ALJ's proposed decision was not final and the Superior Court did not enter a judgment on Kissner's retaliation claim, he is not collaterally estopped from pursuing his First Amendment retaliation claim in another venue. The federal court proceedings represent the first opportunity for this claim to be fully litigated. Accordingly, the trial court erred in finding that Kissner waived or abandoned his First Amendment retaliation claim.

## VII. Board Defendants Do Not Enjoy Legislative Immunity

Defendants erroneously argue that their decisions regarding Kissner's layoff were legislative acts, thereby granting them absolute legislative immunity and shielding them from liability. However, their actions lack the characteristics of traditional legislative functions, such as establishing policy or enacting laws that impact the general public. Instead, the actions in question were specific personnel decisions targeting Kissner individually, which do not involve broader policy considerations or affect a larger group. As such, these decisions were administrative in nature, focusing solely on Kissner's employment situation.

To determine whether an action is legislative, this Circuit in *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003), identified four key factors:

29

1.     Whether the act involves ad hoc decision-making or the formulation of policy;

2.     Whether the act applies to a few individuals or to the public at large;

3.     Whether the act is formally legislative in character; and

4.     Whether it bears all the hallmarks of traditional legislation.

The actions taken by the Board in this case were ad hoc decisions specific to Kissner and did not involve broader policy considerations or changes affecting the public at large. The actions lacked the prospective implications typically associated with legislative acts. The Supreme Court in *Bogan v. Scott-Harris*, 523 U.S. 44, 56 (1998), distinguished between legislative acts, such as eliminating a government position (which can have broader implications), and administrative acts, such as hiring or firing a specific employee. The latter are considered administrative because they do not have the wide-reaching effects characteristic of legislative decisions. *Id.* at 45.

The Answering Brief argues that the Board's adoption of the layoff resolutions was legislative because it involved District-wide reductions in services and was formally enacted through resolutions. However, this argument conflates the formal process with the substantive effect of the decision.

1.     <u>Ad Hoc Decision-Making</u>

While the Responding Brief emphasizes the formal legislative process, the layoff resolution was, in essence, an ad hoc decision specifically targeting Kissner.

It did not reflect a broad policy shift but rather a targeted personnel decision. In fact, no legislative record exists that would implicate Kissner's position teaching 6th-grade math and science. (II ER 69-70).

### 2. Applicability to the Public

Although the answering brief asserts that the layoff impacted all students and families within the District, the resolution's effect, primarily, not incidentally, targeted Kissner's specific employment situation. Sixth-grade math and science were still taught, but the only change was who taught them. *Id*. This targeted nature makes the act administrative rather than legislative.

### 3. Formal Legislative Character

The mere fact that the layoff was effectuated through formal resolutions does not inherently make the act legislative. The resolution itself, specifying a reduction of 4.0 full time teachers across the District, does not begin to implicate a change in Kissner's position that would result in no reduction of teaching staff. The substance of the act—targeting a single employee—indicates it was administrative. *Id*.

### 4. Hallmarks of Traditional Legislation

Traditional legislative acts involve policy decisions with broad, prospective implications. The layoff resolution in this case lacked such characteristics and was instead a specific administrative decision focused solely on Kissner.

The Board Defendants' reliance on *Bogan* is misplaced. In *Bogan*, the Supreme Court granted legislative immunity because the decision to eliminate a

31

government position had "prospective implications that reach well beyond the particular occupant of the office." *Bogan v. Scott-Harris*, 523 U.S. at 56. However, in Kissner's case, the decision to lay him off had no such prospective implications; it was an ad hoc decision limited to his employment.

The case of *Canary v. Osborn*, 211 F.3d 324 (6th Cir. 2000), provides a strong counterpoint. In *Canary*, the Sixth Circuit found that a school board's decision not to renew a specific individual's contract was administrative, not legislative, because it targeted one person and did not have broader policy implications. Similarly, Kissner's layoff was an administrative action focused on his individual employment status rather than a legislative act with broader public consequences.

Moreover, employment decisions, particularly those affecting only one individual, are generally administrative. For instance, in *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988), the court distinguished between administrative actions, such as firing an employee, and legislative actions, such as eliminating a position through a budgetary decision. The former is not protected by legislative immunity because it lacks the policy-driven nature of legislative acts. There is no legislative act in the record that would implicate Kissner's position teaching 6th-grade math and science (and Defendants have not cited to any).

The Board Defendants' actions were administrative rather than legislative. The decisions to lay off and dismiss Kissner were specific to him and lacked the

broader policy implications necessary to qualify as legislative acts. Even if the formal process resembled legislative activity, the substance of the actions—targeted and ad hoc—remains administrative. As such, these actions do not warrant the protection of absolute legislative immunity. Therefore, the Board Defendants are not entitled to summary judgment based on legislative immunity, as their actions were not inherently legislative. Their reliance on the formal legislative process does not alter the fundamentally administrative nature of the decisions regarding Kissner's employment, which were specific, targeted, and lacked the broader public impact characteristic of true legislative acts.

## VIII. A Triable Issue Exists Regarding Martin's And Fraser's Liability For Kissner's Layoff And Dismissal

Defendants argue Martin and Fraser cannot be held liable for Kissner's layoff because they were not Board members and lacked authority to adopt or rescind the layoff resolutions. However, this overlooks key evidence and misrepresents their roles.

First, the Board resolution cited by Defendants (21-XIV), reducing four unspecified full-time positions, was unrelated to Kissner's position (II ER 172-173). Kissner's role wasn't considered for reduction, couldn't be reduced due to its unique requirements, and had no connection to the broader staffing cuts (II ER 69-70). This raises questions about the true motivations behind the layoff and Martin and Fraser's involvement.

33

Second, evidence shows Martin and Fraser orchestrated Kissner's layoff. Fraser admitted her responsibility for the layoff process (II ER 87-88, 137), and Martin acknowledged his involvement, stating that while Kissner was qualified to continue teaching, his role didn't align with Martin's "core vision" for the 6th-grade model (II ER 88, 165). This suggests personal preferences, not legitimate staffing needs, influenced the layoff.

These facts create a genuine dispute about Martin and Fraser's liability. Although not Board members, they were central to the layoff strategy, making them liable for any constitutional violations. Defendants also fail to address their potential liability for Kissner's dismissal, a separate adverse action that further supports a triable issue.

The evidence indicates Martin and Fraser's decisions targeted Kissner based on personal and strategic motives, not neutral or legislative considerations. Therefore, the claims against them should proceed to trial.

## CONCLUSION

The trial court made multiple errors by failing to fully assess the evidence, neglecting to draw inferences in Kissner's favor, overlooking substantial evidence of pretext and retaliatory animus, and misapplying legal standards. Additionally, Defendants' "cat's paw" argument is procedurally improper and flawed, while the District Board's claim of legislative immunity is baseless, as their actions were

administrative and specifically targeted Kissner. These factors create a genuine dispute of material fact, warranting reversal of the summary judgment and a remand for trial.

Date: September 12, 2024        FREEDOM X

/s/ William J. Becker, Jr.
WILLIAM J. BECKER, JR.
Bill@FreedomXLaw.com
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Attorneys for Appellant,
DAVID M. KISSNER

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,778 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii.)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: September 12, 2024

FREEDOM X


/s/ William J. Becker, Jr.
WILLIAM J. BECKER, JR
Attorneys for Appellant,
DAVID M. KISSNER

36

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 12, 2024

FREEDOM X


/s/ William J. Becker, Jr.
WILLIAM J. BECKER, JR
Attorneys for Appellant,
DAVID M. KISSNER